IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| EARL PARRIS, JR., individually, and on behalf of a Class of persons similarly situated,<br><br>    *Plaintiff*,<br><br> v.<br><br>3M COMPANY, et al.,<br><br>    *Defendants*. | Civil Action No. 4:21-cv-40-TWT |

**PLAINTIFF'S RESPONSE TO DEFENDANTS 3M'S AND DAIKIN AMERICA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants 3M and Daikin, America, Inc. ("PFAS Manufacturing/Supplier Defendants")[1] point to the recent Order in *Johnson v. 3M, et al.*, Civ. No. 4:20-cv-00008-AT, 2021 WL 4745421 (Sep. 20, 2021 N.D. Ga.) as supplemental authority in support of their motions to dismiss Plaintiff's negligence claim against them in this case on the question of whether they owe a duty to Plaintiff as a matter of law. The *Johnson* Order, however, is not persuasive on this issue, because: (1) unlike the First Amended Complaint in the instant case, the *Johnson* complaint did not include

---

[1] Plaintiff refers to these Defendants as the "PFAS Manufacturing Defendants" because they manufactured and/or supplied PFAS chemicals to Defendant Mount Vernon Mills.

a failure-to-warn claim, which provides an additional basis for the PFAS Manufacturers' duty; and (2) the *Johnson* decision failed to fully analyze Georgia law on the duty issue and distinguish the recent precedent from other courts finding a duty to avoid contaminating drinking water by the same defendants selling the same chemicals to polluting defendants.

In contrast to the duty question, however, several other rulings of the *Johnson* Order provide supplemental authority for denying the motions to dismiss, and Plaintiff requests this Court to consider the Order in regard to Judge Totenberg's rejection of Defendants' economic loss rule arguments, the holding that the similar allegations in *Johnson* support a public nuisance claim against the PFAS Manufacturers, and the Court's rejection of Daikin's filed-rate arguments. On those issues, the facts and the law in *Johnson* are sufficiently similar to render Judge Totenberg's reasoning and conclusions persuasive here, providing further support to deny the PFAS Manufacturing/Supplier Defendants' motions to dismiss.

## I.  THE *JOHNSON* ORDER IS NOT PERSUASIVE ON THE QUESTION OF THE PFAS MANUFACTURING/SUPPLIER DEFENDANTS' DUTIES.

### A.  The Order Did Not Address a Manufacture's Duty to Warn of Its Products' Nonobvious Dangers.

In *Johnson*, Judge Totenberg dismissed the plaintiff's negligence claim against the defendants, including 3M and Daikin, who manufactured and supplied the PFAS chemicals to the carpet companies because the plaintiff "failed to point to any authority from Georgia establishing a duty on the part of chemical supplier to protect an unknown third-party, rather than its consumer, from harm resulting from the negligent use or disposal of the chemical." [Doc. 629 at 111-12]. However, the *Johnson* plaintiff did not assert a failure-to-warn claim, and Judge Totenberg therefore did not address whether Defendants 3M or Daikin have a duty to warn. As such, Judge Totenberg's conclusion on issue of duty is inapplicable.

In contrast, Plaintiff here has proffered ample Georgia authority in his response to 3M's and Daikin's arguments that recognizes the well-established common law principle imposing a duty on the PFAS Manufacturing/Supplier Defendants under the facts of this case. [See Plaintiff's Response in Opposition to Defendant 3M Company's Motion to Dismiss, Doc. 99 at 5-10; Plaintiff's Response in Opposition to Defendant Daikin America, Inc.'s Motion to Dismiss, Doc. 100]. Specifically, "[u]nder Georgia law, a manufacturer has a duty to warn of nonobvious

foreseeable dangers from the normal use of its product." *Reichwaldt v. Gen. Motors LLC*, 304 F. Supp. 3d 1312, 1316 (N.D. Ga. 2018) (quoting *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994) (applying Georgia law); *see also Certainteed Corp. v. Fletcher*, 300 Ga. 327, 330, 794 S.E.2d 641, 645 (2016); *Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994) (manufacturers' duty to warn arises "whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product," including "post-sale knowledge acquired months, years, or even decades after the date of the first sale of the product"); *United States v. Aretz*, 248 Ga. 19, 25, 280 S.E.2d 345, 350–51 (1981). Thus, Georgia appellate courts have long recognized a manufacturer's duty to warn of its product's nonobvious, foreseeable dangers, as well as the broader principle—equally applicable here—that, "where one by his own act, although without negligence on his part, creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger to prevent others from being injured where it is reasonably foreseeable that this will occur." *Aretz*, 280 S.E.2d at 350–51.

Because this case involves a manufacturer's duty to warn, Georgia authority holding that there is no duty to control the conduct of third persons does not apply here. *See Maynard v. Snapchat, Inc.*, 851 S.E.2d 128, 131-32 (Ga. Ct. App. 2020)

(holding that Georgia law does not impose a general duty to prevent people from committing torts while intentionally misusing a manufacturer's product and therefore Snapchat did not owe a duty to prevent users of its speed filter from driving at excessively fast speeds) and *Stanley v. Garrett*, 848 S.E.2d 890, 894 (Ga. Ct. App. 2020) (holding that there is no duty to control the conduct of third persons to prevent them from causing harm to others, and so doctor who was treating patient for alcoholism had no duty, when patient came to doctor's office after drinking alcohol, to civilly commit patient or take other steps to protect motorist who was killed in driving accident). Neither *Maynard* nor *Stanley* involved a manufacturer's duty to warn of its product's nonobvious dangers.[2] Therefore, as the U.S. Supreme Court recently concluded, the argument that there is no duty to control the conduct of third persons is "beside the point" when it comes to a manufacturer's duty to warn under section 388 of the Restatement and federal maritime law. *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 994, 203 L. Ed. 2d 373 (2019).

The same reasoning likewise applies here. The rule that there is no duty to control the conduct of third persons is "a special application" of the general rule that there is no duty to act for the protection of others, even if one realizes that action is

---

[2] In fact, it was undisputed in *Maynard* that Snapchat had provided adequate warnings and the driver's intentional misuse of the smartphone application violated Snapchat's user agreement. *Maynard,* 375 Ga. App. at 500, n. 12.

5

necessary for another's aid or protection. *See* Restatement (Second) of Torts §§ 314 (no duty to act for the protection of others), 315 (no duty to control conduct of third persons). But these rules apply "only where the peril in which the [defendant] knows that the [plaintiff] is placed is not due to any active force which is under the [defendant's] control." *Id.,* § 314, cmt d. In other words, a defendant may not rely on these rules if he caused or contributed to the harm sustained by the plaintiff. *See id; see also Aretz*, 280 S.E.2d at 350–51 ("where one by his own act . . . creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger . . .").

Here, Plaintiff's factual allegations permit the inference that the PFAS contamination was due to Defendants' continuous sale of PFAS to Mount Vernon without adequate warnings, which was an "active force" fully within Defendants' control. Accordingly, as the U.S. Supreme Court held, the general rule that there is no duty to control the conduct of others does not apply where, as here, the harm resulted from a manufacturer's breach of its duty to warn. *See Air & Liquid Sys. Corp.,* 139 S. Ct. at 994.

Because *Johnson* did not assert a failure-to-warn claim, Judge Totenberg did not address the applicability of the long-standing Georgia authority recognizing a

duty to warn, and the *Johnson* Order is therefore inapplicable and unpersuasive on the issue of duty.

### B. The Johnson Decision Failed to Fully Analyze Georgia Law on The Duty Issue.

The *Johnson* Order is not persuasive on the question of duty for the additional reason that the *Johnson* Court failed to fully analyze relevant Georgia authority and misapplied the law. First, the Court misapplied the law in failing to accept Plaintiff's factual allegations as true for purposes of a Rule 12(b)(6) motion to dismiss. The Court apparently adopted, without further analysis, the PFAS Supplier Defendants' argument that they did not owe the plaintiff a duty because they were not alleged to have discharged PFAS-laden wastewater, characterizing the PFAS Supplier Defendants as "mere sellers of PFAS-containing products to the carpet manufacturers." [Doc. 629 at 110-11]. But this mischaracterization ignores the numerous factual allegations in the *Johnson* Complaint—which must be accepted as true—showing the PFAS Supplier Defendants' superior knowledge of PFAS' dangers, their intimate involvement in the Carpet Manufacturers' use and disposal of their PFAS, and their actual knowledge of the resulting contamination.

In light of these factual allegations, the *Johnson* plaintiff proffered relevant Georgia authority that recognizes applicable common law principles imposing a duty upon the Supplier Defendants under the circumstances. Specifically, the

Restatement (Second) of Torts § 389 sets forth the duty owed by suppliers of chattels, providing for liability for physical harm caused by the chattel's use when the supplier: (1) knows or has reason to know the chattel is unlikely to be made reasonably safe for its expected use; and (2) should have expected the injured party to be endangered by the chattel's use.

Yet, the Johnson Court failed to explain why the duty principles enunciated in the Restatement did not apply there, which is problematic considering Georgia courts have endorsed that section of the Restatement.[3] The *Johnson* Court also failed to explain why decisions from other jurisdictions did not constitute persuasive authority, considering they applied the same principles to nearly identical facts involving the same defendants (3M and/or Daikin) to conclude that the PFAS Suppliers owed plaintiffs a duty based on their long-running, superior knowledge of PFAS' dangers.[4]

---

[3] *See Moody v. Martin Motor Co.,* 46 S.E.2d 197, 199-200 (Ga. Ct. App. 1948) (adopting Restatement (First) of Torts §§ 389, 388 (1934); *Dupree v. Keller Indus., Inc.,* 404 S.E.2d 291, 295-96 (Ga. Ct. App. 1991) (applying substantially similar version from the Second Restatement); *Ogletree v. Navistar Intern. Transp. Corp.,* 390 S.E.2d 61, 67 (Ga. Ct. App. 1989) (same), *overruled on other grounds by Weatherby v. Honda Motor Co., Ltd.,* 393 S.E.2d 66 (Ga. Ct. App. 1990).

[4] *See Weirton Area Water Bd. v. 3M Co.,* No. 5:20-CV-102, 2020 WL 7479974, at *4 (N.D. W.Va. Dec. 18, 2020); *Menkes v. 3M Co.*, No. CV 17-0573, 2018 WL 2298620, at *5 (E.D. Pa. May 21, 2018).

Moreover, the *Johnson* plaintiff's factual allegations permitted the inference that the PFAS Supplier Defendants created the PFAS contamination, as Judge Totenberg found in upholding the nuisance claim against them. [Doc. 629 at 149 (Plaintiff has adequately pled that the Supplier Defendants' actions . . . were a 'cause or concurrent cause' of the creation and continuance of the nuisance")]. Yet, despite finding they were a cause of the PFAS contamination, the *Johnson* Court failed to address the applicability of the general principle set forth by the Georgia Supreme Court in *Aretz*: "where one by his own act, although without negligence on his part, creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger to prevent others from being injured where it is reasonably foreseeable that this will occur." *Aretz*, 280 S.E.2d at 350–51.

Instead, the *Johnson* Court erroneously concluded that "Plaintiff has not cited any authority from Georgia courts that supports a duty on behalf of the Supplier Defendants." *Id.* at 111. But as the foregoing analysis shows, the *Johnson* Plaintiff provided applicable Georgia authority on the duty question, and the *Johnson* Court's failure to accept the *Johnson* plaintiff's factual allegations as true and to address why the plaintiff's authority did not apply to their factual allegations, renders the *Johnson* Court's conclusion incorrect and unpersuasive on the duty issue.

## II. AS IN *JOHNSON*, THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFF'S CLAIMS BECAUSE HE HAS ALLEGED INJURY TO HIS PERSON AND PROPERTY ARISING FROM THE PFAS CONTAMINATION OF HIS HOUSEHOLD DRINKING WATER.

In denying the defendants' motion to dismiss based on the economic loss rule, Judge Totenberg found that "Plaintiff's damages for water rate surcharges—which are, as alleged, accompanied by other property injury and risk to personal health—are not economic losses within the meaning of the rule." *Id.* at 80. Here, as in *Johnson*, Plaintiff alleges that the PFAS contamination has: (1) caused water rate increases and surcharges to remove the chemicals (which also pose a risk to his health), *see, e.g.,* [Doc. 73, ¶ 201]; (2) injured his property interest in his household water supply, *id.*, ¶ 88; (3) diminished the value of his property, *id.,* ¶ 89; (4) interfered with his use and enjoyment of his property, and (5) caused him upset, annoyance and inconvenience. *Id. Johnson* therefore provides compelling on-point authority that the economic loss rule likewise does not apply here.

In fact, Judge Totenberg rejected many of the same arguments that Defendants make here. First, Judge Totenberg rejected the defendants' argument that Johnson's water was not damaged because PFAS was removed before the water reached his property, observing that these assertions were outside of, and contradicted by, the complaint, which, as here, alleges that short-chain PFAS remain in the water and

10

that the City requires a new, permanent filtration system to effectively remove all of the PFAS. [Doc. 629 at 74-75].

Next, Judge Totenberg rejected another argument that Defendants also raise here—that allegations of harm to the water supply do not harm Plaintiff's property, but rather, the City's property. As Judge Totenberg concluded, not only does this argument lack "justification or legal support," but the assumption that "Plaintiff never has a property right in the household water he has paid for, even when it comes out of the faucet in his kitchen . . . strains credulity." *Id.* at 73 (discussing Georgia case law in support).

Judge Totenberg further found that the same authority that Defendants rely on here is readily distinguishable. In *Lowe's,* Judge Totenberg observed that "the economic loss rule barred Lowe's from recovering lost profits resulting from damage to property that it did not own . . .," whereas, as here, the plaintiff "has adequately alleged damage to his own property—his household water—and the use and enjoyment thereof." *Id.* at 75. Similarly, Judge Totenberg observed that *City of Atlanta v. Benator*, 714 S.E.2d 109 (Ga. Ct. App. 2011), is inapposite on the grounds that that case did not involve the "contamination of [the plaintiff's] household water, in which he has a property right, and also personal harm in the form of ingestion of PFAS that causes concern, inconvenience, and harm to the Plaintiff and constitutes

a continuous threat to his health." *Id.* at 74-75 (internal quotation marks and citation omitted).  Because Defendants make the same arguments here and there is no factual basis to distinguish *Johnson*, the *Johnson* Order provides persuasive authority that the economic loss rule does not apply here.

### III. AS IN *JOHNSON*, PLAINTIFF SUFFICIENTLY ALLEGED SPECIAL HARM AND THAT THE PFAS MANUFACTURING/SUPPLIER DEFENDANTS CONTROLLED THE CAUSE OF THE NUISANCE.

In *Johnson*, Judge Totenberg denied the defendants' motion to dismiss the public nuisance claim, concluding that the plaintiff had adequately alleged he had sustained special harm and that the PFAS Manufacturing/Supplier Defendants exercised sufficient control over the cause of the nuisance under Georgia law.  The same reasoning likewise applies here.

#### A. Special Damages

As Judge Totenberg observed, "[o]ver a century ago, the Georgia Supreme Court thoroughly discussed the distinction between public harm and special harm sufficient to allow a plaintiff to bring a public nuisance claim," explaining that damage to a plaintiff's health or property constitutes special harm. [Doc. 629 at 143 (discussing *Savannah, F. & W. Ry. Co. v. Parish*, 45 S.E.280, 28081 (Ga. 1903)]. Under this authority, Judge Totenberg found that the plaintiff had sufficiently alleged special damages in the form of having to "pay the added costs of attempting

to remove the PFAS contamination by way of increased rated and surcharges they incur as ratepayers." *Id.* at 144. Those damages, Judge Totenberg observed, are special and distinct from the harm to the general public, which consists of "the contamination of [public waters] and the interference with the use and enjoyment of those waters, including the provision of safe drinking water." *Id.* at 144; *see also id.* at 143-45 (discussing relevant case law distinguishing public harm from special harm for purposes of a public nuisance claim).

As in *Johnson,* Plaintiff here alleges that the PFAS contamination constitutes a public nuisance that harms the general public insofar as it interferes with the public's use and enjoyment of the waters at issue, including the provision of safe drinking water. *Compare* [Doc. 73, ¶ 199] *with* [Doc. 629 at 144]. And, as in *Johnson*, Plaintiff alleges special damages in the form of having to pay the added costs of attempting to remove the PFAS by way of water rate increases and surcharges. Plaintiff further alleges property damages in the form of the diminished value of his property, interference with his use and enjoyment of his property and upset, annoyance and inconvenience, [Doc. 73, ¶ 202], which constitute additional special damages authorizing Plaintiff's public nuisance claim.

Defendants argue that Plaintiffs damages are "no different than those allegedly suffered by all ratepayers of Summerville." [Doc. 89-1 at 26]. But, as Judge

Totenberg found, the general public is not limited to the putative class of ratepayers. Instead, the general public harm consists more broadly of the contamination of federal and state waters, which harms the general public's right to use and enjoy those waters free from PFAS pollution.[5]

### B. Control of the Cause of the Nuisance

In *Johnson*, as here, Defendants 3M and Daikin argued that because they did not control their chemicals beyond the point of sale, Plaintiff had failed to adequately allege control for purposes of stating a nuisance claim. Judge Totenberg, however, rejected this argument because it is "clearly not an accurate representation of Georgia law." [Doc. 629 at 150 (discussing *Citizens & S. Tr. Co. v. Phillips Petroleum Co., Inc.,* 385 S.E.2d 426 (Ga. Ct. App. 1989) and *State of Georgia v. Teva Pharmaceutical Indus. Ltd., et al.,* 19-A-00060-4, (Gwinett Cnty. Sup. Ct. Oct. 9, 2019)].

Under Georgia law, "it is the continued manufacturing and selling of the harmful substances (PFAS), with knowledge of the consequences, that supports Plaintiff's nuisance claim." *Id.* at 150. In so holding, Judge Totenberg distinguished

---

[5] Judge Totenberg also distinguished the sole case Defendants rely on here—*Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 756 (W.D. Va 2009)—based on the procedural posture of that decision (on a motion for summary judgment) and because the plaintiff there "argued that they were not required to show special damages at all, effectively conceding the point." [Doc. 629 at 145-46].

the same authority that Defendants rely on here, specifically, *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 1986 WL 12447 (M.D. Ga. Mar. 9, 1986) and *Jordan v. Southern Wood Piedmont Co*., 805 F. Supp. 1575 (S.D. Ga. 1992). Unlike those cases, Judge Totenberg concluded that "the [PFAS] Suppliers clearly had a legal right to abate the nuisance—for example, by refusing to sell their chemicals to manufacturers until those manufacturers established and complied with proper disposal methods." [Doc. 629 at 151].

As in *Johnson*, Plaintiff here alleges that the PFAS Manufacturing/Supplier Defendants manufactured and supplied PFAS to another defendant and continued to do so, even though they knew or should have known of the dangers of PFAS and of the resulting environmental contamination. *See, e.g,* [Doc. 73, ¶ 197]. Therefore, as Judge Totenberg found, the PFAS Manufacturing/Supplier Defendants' actions in continuously selling and supplying the PFAS chemicals, while knowing of the dangers, was a cause of the nuisance, [Doc. 629 at 149], and the PFAS Manufacturing/Supplier Defendants "clearly had a legal right to abate the nuisance—for example, by refusing to sell their chemicals to manufacturers until those manufacturers established and complied with proper disposal methods." *Id.* at 151. The *Johnson* Order thus provides persuasive authority to support the conclusion

that the PFAS Manufacturing/Supplier Defendants exercised sufficient control over the cause of the nuisance.

## IV. THE *JOHNSON* ORDER PROVIDES PERSUASIVE AUTHORITY THAT THE FILED-RATE DOCTRINE DOES NOT APPLY HERE.

Finally, Judge Totenberg rejected Daikin's argument that the filed-rate doctrine applies here. [Doc. 629 at 156-59]. As Judge Totenberg concluded, "the filed-rate doctrine does not apply to municipal water rates," *id.* at 156, because "municipalities operating public utility facilities in Georgia are not subject to the regulations of the Georgia Public Service Commission . . ." *Id.* at 158. As Judge Totenberg further observed, "Daikin provides no legal authority to support the extension of the doctrine to municipal rates," *id.* at 158, and the main rational undergirding the filed-rate doctrine—to protect administrative decision-making over regulated utility rates—has no applicability to unregulated municipal water rates. *Id.* at 158-59.[6] The *Johnson* Order thus provides persuasive and compelling authority on this issue as well.

---

[6] Judge Totenberg further noted that "Plaintiff also persuasively argues the filed-rate doctrine does not apply because Plaintiff is not challenging his municipal water rates, pointing out that he is not suing the City of Rom, his water provider." But "[b]ecause the Court determines that the filed-rate doctrine does not apply at all under the present circumstances, it need not address Plaintiff's second argument." *Id.* at 159, n. 28. The same reasoning and conclusion likewise apply here.

16

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the *Johnson* Order is not persuasive on the question of Defendants' duty because it did not involve a failure-to-warn claim. However, *Johnson* is sufficiently similar on the law and the facts to provide persuasive authority with respect to Defendants' arguments pertaining to the economic loss rule, public nuisance, and Daikin's filed-rate arguments. As in *Johnson*, Plaintiff respectfully requests that the Court deny Defendants' motions to dismiss on those grounds as well.

This the 21st day of October, 2021.

Respectfully Submitted,

**DAVIS & WHITLOCK, P.C.**

*/s/ Gary A. Davis*
Gary A. Davis (*phv*)
James S. Whitlock (*phv*)
Davis & Whitlock, P.C.
Attorneys at Law
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Jeffrey J. Dean
Ga. Bar #006890
Thomas Causby
Ga. Bar # 968006

>Morris & Dean, LLC
>101 E. Crawford St.
>Dalton, GA 30720
>jeff@morrisanddean.com
>tom@morrisanddean.com
>Phone: 706-226-0300
>Fax: 706-229-4363
>
>***Attorneys for Plaintiffs***

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

This the 21st day of October, 2021.

*/s Gary A. Davis*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS 3M'S AND DAIKIN AMERICA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY** has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record.

This the 21st day of October, 2021.

/s Gary A. Davis