IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| EARL PARRIS, JR., individually, and on behalf of a Class of persons similarly situated, )<br>)<br>)<br>)<br>*Plaintiff*,  )<br>)<br>vs )<br>)<br>3M COMPANY, et al., )<br>)<br>*Defendants*. ) | Civil Action No. 4:21-cv-00040-TWT |

## MOUNT VERNON MILLS, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS NOTICE OF SUPPLEMENTAL AUTHORITY

COMES NOW Defendant Mount Vernon Mills, Inc. ("Mount Vernon" or "MVM") and files this Reply to Plaintiff's Response to Defendants 3M's and Daikin America, Inc.'s Notice of Supplemental Authority by stating the following:

### I. **Plaintiff Fails to State A Duty To Warn Claim For Which Relief Can Be Granted Against Mount Vernon.**

Plaintiff suggests *Johnson v. 3M, et al.*, Civ. No. 4:20-cv- 00008-AT, 2021 WL 4745421 (Sep. 20, 2021 N.D. Ga.) should not be read to excuse the manufacturer defendants from shouldering a duty to warn about the use of their products, contending instead that the district court in *Johnson* did not consider a duty to warn of non-obvious dangers. (Pl's Resp. at 3.) He points to case law in Georgia

governing when a manufacturer of a product may assume such a duty and concludes that the Court should give effect to a duty in this case. (Pl's Resp. at 4.) And yet, Plaintiff's arguments to convince the Court to find a duty to warn in this case do not hold for a mere user of the product such as Mount Vernon.

In *Coosa Valley Tech. College v. West*, 299 Ga. App. 171 (2009), a child was injured when his mother, a cosmetology student, brought home a nail kit that she purchased in connection with classes at the college. *Id.* at 174. The college acquired the kit from a third-party instructor teaching an elective class and arranged for the purchase by the child's mother. *Id.* Despite these circumstances, the Court concluded that the college's instructors owed no duty to the plaintiffs saying, "The Wests . . . fail to cite authority for the proposition that the instructors, who neither sold nor manufactured the nail kit Nicole purchased, assumed a duty to provide warnings about a product purchased from a guest lecturer. Without establishing that the Coosa Valley instructors owed a duty to warn, the Wests cannot establish that the instructors were independently negligent." *Id*. at 178.

Neither is this a novel concept. In *Silver v. Bad Boy Enters., LLC*, 907 F. Supp. 2d 1351 (M.D. Ga. 2012), a plaintiff sought to hold a successor manufacturer liable for harms that arose under the practices of a prior owner. The plaintiff contended the successor manufacturer had a duty to warn as to products

manufactured prior to the change in ownership as well as during the successor entity's supervision of a recall program for those goods. The Court rejected both theories. The district court said:

> Significantly, the Textron Defendants neither manufactured nor sold the Vehicle in question. Plaintiffs have cited no authority for the proposition that a party who neither manufactured nor sold a product has a duty to warn of dangers associated with the product. Plaintiffs make a novel argument that this duty arises in this case because Defendants continued the manufacture of these vehicles upon the purchase of BBE's assets and because they assumed responsibility for the recalls. The Court finds Plaintiffs' argument unsupported by any legal authority and unpersuasive.

*Silver v. Bad Boy Enters., LLC*, 907 F. Supp. 2d at 1358. Similarly, this Court rejected an effort to hold employees had a duty to warn where they had no role in connection with the instrumentality that injured a plaintiff. In *Thurmond v. Federal Signal Corp.*, Case No. 1:16cv1520-ELR, 2016 U.S. Dist. LEXIS 200739 (N.D. Ga., Nov. 29, 2016), the Court addressed a question of fraudulent joinder and had to determine if two non-diverse employee defendants were properly named in the action. The employees worked in the parts department for a company that manufactured a sewer cleaning truck upon which the plaintiff had been injured. In concluding that the employees did not have an independent duty to warn the plaintiff, the Court recognized that in the absence of interaction with the plaintiff, or a tortious act, the employee plaintiffs could not be held to have had a duty to warn. *Id*. at *9.

Notably, Plaintiff alleges no act of Mount Vernon that directly affected any plaintiff during the intervening time between Mount Vernon's use of a product and the disposal of any byproduct pursuant to lawful means.  Mount Vernon is further removed from any alleged harm than the manufacturing defendants in *Johnson* where Plaintiff concedes the existence of an activated sludge treatment method, not solely a direct discharge system, is in place. (Am. Compl. Doc. No. 73 at ¶35.)

## II. The Economic Loss Rule Bars Plaintiff's Claims Related to Damages to Plaintiff's Household Water, Which Was A Product He Purchased.

Plaintiff's efforts to use *Johnson* to escape the reach of the economic loss rule are ineffective. (Pl's Resp. at 10-12.) "In cases where the losses resulting from a defective product are purely economic in nature, the economic loss rule bars the plaintiff from seeking recovery under strict liability or negligence theories." *Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*, 314 Ga. App. 360, 366 (2012) (citations omitted).  "Economic loss" means "damages for the loss of the value or use of the defective product itself, costs of repair or replacement of the defective product, or the consequent loss of profits, unaccompanied by any claim of personal injury or damage to other property." *See*; *Home Depot U.S.A.*, 314 Ga. App. at 366; *Vulcan*

*Materials Co. v. Driltech*, 251 Ga. 383, 384 (1983); *Henderson v. Gen. Motors Corp.*, 152 Ga. App. 63, 64 (1979).[1]

A. *Alleged Damage to Plaintiff's Household Water.*

Plaintiff alleges that "the PFAS contamination has injured Plaintiff's property interest in his household water supply." (Am. Compl. Doc. 73 at ¶ 88.) That Plaintiff used the term "property interest" in his allegations does not save the fact that, at bottom, Plaintiff seeks to recover damages for the reduced value of a product he purchased, Plaintiff's household water supply, which failed to perform as he expected. Costs associated with the repair of this product, devoid from any other damages to person or property, are not recoverable under the economic loss rule. "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986) (holding that where

---

[1] Mount Vernon respectfully disagrees with the *Johnson* Court's statement that "Plaintiff's household water, allegedly contaminated with PFAS, is not a product he purchased that failed to perform as expected, for which he seeks damages "consequent to qualitative defects," such as reduced value, return of purchase price, or lost profits—typical economic losses. *Vulcan*, 306 S.E.2d at 256." Order at 79. Plaintiff Parris indisputably takes issue with the value of the product – household water – that he purchased. (Am. Compl. Doc. 73 at ¶ 88.) And Plaintiff does not contend he had no contract with the City of Summerville to purchase water. *Compare D. J. Powers Co. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 255 (2018)(rejecting efforts to disclaim contract terms).

5

defective parts caused a ship to malfunction and the only damages were to the ship itself, the economic loss rule barred negligence claims against the ship manufacturer reasoning the ship manufacturer had "no duty under a products-liability theory based on negligence to avoid causing purely economic loss.")  The Supreme Court has explained that "damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value'." *Id.* at 872 (*quoting* J. White and R. Summers, Uniform Commercial Code 406 (2d ed. 1980).)

    B.    *Alleged "Personal Injury" or "Property Damage."*

Plaintiff alleges that "[t]he continued presence of this toxic sludge also threatens to further contaminate the Summerville water supply with PFAS, creating a risk of harm to human health or the environment, including to Plaintiff and others who consume or have consumed water from the City of Summerville." (Am. Compl. Doc. 73 at ¶ ¶ 87, 201.)  However, a "risk of harm" is not a "personal injury;" and it is only a personal injury that escapes the ambit of the economic loss rule.[2]  *Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*, 314 Ga. App. 360, 366 (2012).

---

[2] Plaintiffs in *Johnson* expressly alleged injury based on exposure as noted by the Court at p.72 of its Order (citing Paragraphs 167-168 of the *Johnson* Complaint).

Alternatively, Plaintiff alleges "Plaintiff and the Proposed Class Members have suffered real property damages, including, but not limited to: (1) the diminution in value of their property as a result of the provision of PFAS-contaminated water to their homes; (2) interference with and loss of use and enjoyment of their property; and (3) upset, annoyance and inconvenience." (Am. Compl. Doc. 73 at ¶ 89.) But this mere allegation, even if characterized as more than a threadbare recital insufficient to withstand a motion to dismiss, is not the end of the inquiry.

In *GE v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 79 (2005), the Georgia Supreme Court addressed the issue in the negative of whether property not owned by the plaintiff could be included in a calculation of damages within the scope of an economic loss. However, the court did not address the scope of the economic loss doctrine within owned property.[3] In ascertaining whether "other property" is involved so as to trigger the exclusion from the bar of the economic loss rule, courts

---

[3] Another division of this Court waded into these waters last month in *Elder v. Worldwide Reliance Corp.*, 2021 U.S. Dist. LEXIS 194414 (N.D. Ga. Case No. 1:20cv1596-AT, Sept. 27, 2021). In that case, however, the district court erroneously concluded that the Georgia courts would take an expansive view of the economic loss rule citing a Middle District of Florida decision and a misreading of *Mike Bajalia, Inc. v. Amos Constr. Co.*, 142 Ga. App. 225 (1977). *Id.* at *25-26. *Bajalia* dealt with components supplied by other manufacturers, not a single product and an integrated system as here. Further, an expansive view is inconsistent with what the Georgia Supreme Court held in *GE v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 80 (2005).

have employed an "integrated system" test to see whether the allegedly defective product is a component in a larger system holding that once a part becomes integrated into a completed product or system, the entire product or system ceases to be 'other property' for purposes of the economic loss doctrine. *Foremost Farms USA Coop. v. Performance Process, Inc.*, 726 N.W. 2d 289, 294 (Wi. App. 2006). Here, the allegedly contaminated household water about which Plaintiff complains is merely a component of the larger plumbing system in Plaintiff's home, and any loss of use of that system, or indeed, diminution in value to the property as a whole due to that system does not escape the economic loss rule. *See Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 344 F.3d 1136, 1147 (11th Cir. 2003) (holding landing gear to be an integrated part of an aircraft).

Even were Plaintiff's claims of loss of use or diminution in value of real property deemed other property, they would still not survive the economic loss bar where they arise out of the very product Plaintiff purchased. Courts have employed a "disappointed expectations" test to determine whether the purchaser should have anticipated the need to seek protection against loss through contract. The test addresses the expected function of the product and whether, from the purchaser's perspective, it was reasonably foreseeable that the product could cause the resulting damage. *Foremost Farms USA Coop.*, 726 N.W.2d at 295. Plainly here, allegedly

contaminated water is at the heart of both Plaintiff's loss of use and diminished value claims, and the quality of that water could have been dealt with as a matter of contract between Plaintiff and his water supplier.

Policy considerations favor adopting Mount Vernon's position and disfavor Plaintiff's position. Plaintiff's position would significantly expand the reach of Georgia tort law and would also be murky and could give rise to substantial litigation. In contrast, Mount Vernon's position provides the certainty of a bright-line test, and affords predictability to courts and parties alike. The Georgia Supreme Court embraced these precise principles in *GE v. Lowe's Home Ctrs., Inc.*, 279 Ga. 77, 80 (2005). Consequently, the economic loss rule bars Plaintiff's claims contrary to their efforts to leverage the language in *Johnson* to support them.

## CONCLUSION

For the foregoing reasons, and those expressed in its opening and reply briefs, MVM respectfully urges the Court to dismiss Plaintiff's Complaint against MVM. Mount Vernon relies upon its existing briefing as to any matters set forth in Plaintiff's Supplemental Authority filing not addressed herein.

This 28th day of October, 2021.

                                       */s/ William M. Droze*
                                       WILLIAM M. DROZE
                                       Georgia Bar No. 231039

KATHRYN E. HOPKINS
Georgia Bar No. 617429
Troutman Pepper Hamilton Sanders, LLP
600 Peachtree Street, N.E. Suite 3000
Atlanta, GA 30308
william.droze@troutman.com
kate.hopkins@troutman.com
(404) 885-3468
(404) 885-3750

*Attorneys for Defendant Mount Vernon Mills, Inc.*

## LOCAL RULE 7.1D CERTIFICATION

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1B.

This 28th day of October, 2021.

                                        */s/ William M. Droze*
                                        William M. Droze
                                        Georgia Bar No. 231039
                                        william.droze@troutman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a copy of the within and foregoing **MOUNT VERNON MILLS, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS NOTICE OF SUPPLEMENTAL AUTHORITY** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 28th day of October, 2021.

                                        */s/ William M. Droze*
                                        William M. Droze
                                        Georgia Bar No. 231039
                                        william.droze@troutman.com

                                        *Attorney for Defendant Mount Vernon Mills, Inc.*