IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| EARL PARRIS, JR., Individually, and on Behalf of a Class of Persons Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| City of SUMMERVILLE, GEORGIA, | ) ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:21-cv-00040-TWT |
| | ) | |
| 3M COMPANY, DAIKIN AMERICA, INC., HUNTSMAN INTERNATIONAL, LLC, PULCRA CHEMICALS, LLC, MOUNT VERNON MILLS, INC., TOWN OF TRION, GEORGIA, and RYAN DEJUAN JARRETT, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## THE CITY OF SUMMERVILLE, GEORGIA'S REPLY TO DEFENDANT MOUNT VERNON MILLS, INC.'S OPPOSITION TO MOTION TO INTERVENE

Intervening Plaintiff the City of Summerville, Georgia ("Summerville"), by

and through undersigned counsel, submits this Reply to Mount Vernon Mills, Inc.'s

("Mount Vernon") Opposition to Summerville's Motion to Intervene [Doc. 94].

Summerville asks this Court to grant its Motion to Intervene [Doc. 84] and deny the

pending Motions to Dismiss filed by Defendants 3M Company; Daikin America Inc.; Huntsman International, LLC; and Pulcra Chemicals, LLC (the "Manufacturing Defendants") to the extent these Defendants are arguing their pending Motions would necessitate the dismissal of state law claims asserted by Summerville in its Proposed Complaint. [Docs. 86, 89, 91, 92].[1]

## Introduction And Summary Of Argument

Mount Vernon is the only Defendant that opposed Summerville's Motion to Intervene despite the fact that Summerville is not asserting a claim against Mount Vernon. Mount Vernon argues in its Opposition [Doc. 94] that its arguments for dismissal of Plaintiff Parris's state law claims should moot any grounds for Summerville's intervention.  Two of the Manufacturing Defendants, 3M and Daikin, have pleaded they do not oppose Summerville's Intervention, but each has reserved all arguments in their pending Motions to Dismiss Plaintiff Parris's complaint ("Complaint"), against the City of Summerville. [Docs. 96, 97].

The Manufacturing Defendants raise similar arguments that state law claims are not adequately pleaded and should be dismissed because there is no possibility of a plausible recovery under any state law claim. The Manufacturing Defendants

---

[1] Summerville is not asserting any claims against Defendant Mount Vernon Mills, Inc.; Town of Trion, Georgia; or Ryan Jarrett.

assert that the various state law causes of action should be dismissed because they do not owe a duty to act with reasonable care, do not owe a duty to warn, and because proximate cause is not pleaded in the Complaint. [Doc. 86 at 5-10; Doc. 89-1 at 11-16; Doc. 91-1 at 10, 19; Doc. 92-1 at 8, 10, 18.]   To show this Court that Mt. Vernon's argument fails, this Brief shows that Summerville's Proposed Complaint alleges plausible state law claims.

Summerville alleges in its Proposed Complaint that the Manufacturing Defendants negligently supplied, sold, and used PFAS; created a continuing and unabated nuisance; engaged in ongoing and continuing trespass and contamination of Summerville's water supply; failed to adequately warn Summerville of the non-obvious dangers associated with PFAS use and disposal, and more. [*Complaint in Intervention,* Doc. 84-2 ¶¶ 39, 48, 60, 70, 73, 96, 109.] All Summerville's claims arise from the pollution of its drinking water source by the Manufacturing Defendants' chemicals, which remain in the environment and humans forever— aptly dubbed "forever chemicals." [Doc. 84-2 ¶¶ 15.]

Summerville has adequately pleaded facts supporting its allegations that Manufacturing Defendants knew or should have known the result of their manufacture, use, supply, and sale of PFAS to Mount Vernon would be the contamination of Summerville's water supply. [Doc. 84-2 ¶¶ 65-68.] These

Defendants have known for decades of the persistence and toxicity of these "forever chemicals" and that PFAS are not effectively treated by conventional wastewater treatment plant processes. [Doc. 84-2 ¶¶ 19, 26-34.] Further, the Manufacturing Defendants were aware or reasonably should have been aware that their actions in supplying PFAS to Mount Vernon would lead to the contamination of the Summerville water supply. [Doc. 84-2 ¶¶ 7-10, 53, 58-59, 67-69.]

The Manufacturing Defendants also knew, based on their own internal research, that standard filtration methods used by Summerville and other municipalities are insufficient to remove PFAS. [*Id.* at 18-19, 26-30, 35 ("The PFAS Manufacturing Defendants have also known for years that [PFAS], and related chemicals are toxic.") (citing 1978 3M Study on fluorochemicals).] As to the danger associated with PFAS, years of studies and research have resulted in standards that allow for less and less PFAS in our water as we discover more about the dangers involved. [*Id*. at 15, 20-25.]

Summerville now seeks to remedy the PFAS contamination of its water supply and hold the Manufacturing Defendants responsible for the remediation costs and future expenses resulting from the harm caused by the Manufacturing Defendants chemicals.

## Background Facts

This is a water pollution case involving PFAS contamination of the public drinking water supply for Summerville.  Summerville seeks to intervene in order to bring suit against the manufacturers and suppliers of a certain group of chemicals called PFAS.  These chemicals have contaminated the public drinking water supply in Summerville.  Defendants 3M, Daikin, Huntsman, and Pulcra are all manufacturers and suppliers of PFAS that have caused and contributed to cause the contamination at issue.[2]

Summerville obtains its water supply from Raccoon Creek at an intake site, which supplies nearly all the city's drinking water. [Doc. 84-2 ¶ 14.] Defendants' contamination persists and renders the drinking water undrinkable until actively abated. [Doc. 84-2 ¶¶ 1, 15-17, 19.].  The Manufacturing Defendants have, for years, provided PFAS to industries such as Mount Vernon. 3M was one of the first producers of PFAS over 40 years ago, and since that time the three other

---

[2] Defendants 3M and Daikin are current named Defendants in similar drinking water contamination cases concerning the same PFAS chemicals in both state and federal courts around the country, including the Superior Court of Floyd County, Georgia, *The City of Rome, Georgia v. 3M Company, et al*., pending in the Superior Court of Floyd County, Georgia, Civil Action No. 19CV02405JFL003, and this Court, *Jarrod Johnson, individually and on Behalf of a Class of persons similarly situated v. 3M, et al.,* pending in the United States District Court for the Northern District of Georgia, Rome Division, Civil Action No. 4:20-cv-8-AT.

Manufacturing Defendants have joined the industry and supplied PFAS to industrial users like Mount Vernon, who in turn uses the chemicals to create fire resistant fabrics. [Doc. 87 at 2.] Over the years the Manufacturing Defendants have continually manufactured, supplied, distributed, and sold PFAS despite internal research dating as far back as 1978, which confirms the harmful effects of their chemicals. [Doc. 84-2 ¶¶ 26-30.]

After decades of studies and knowledge, previously kept behind closed doors, coming to light publicly in the 2000's, the public learned about the dangers of PFAS for the first time, even though the Manufacturing Defendants had known about it for around 40 years. [Doc. 84-2 ¶ 27.].

## **Legal Standard**

In considering a defendant's motion to dismiss, the plaintiff's complaint is liberally construed, assessing not whether the plaintiff will ultimately prevail in the matter, "but whether his complaint is sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S. Ct. 1289, 1296 (2011). A complaint survives a motion to dismiss if the facts as pled state a plausible claim for relief for which any relief may possibly be granted. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The plaintiff need not give "detailed factual allegations" to state a plausible claim for relief but should provide more than mere labels and conclusions.

6

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (*see also* Fed R. Civ. P. 12(b)(6)). The allegations must be more than speculation, but they are assumed to be true, even if doubtful in fact. *Id.*

Further, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* at 555-56. The trial court must construe the plaintiff's complaint in the light most favorable to him and resolve all doubts in the plaintiff's favor. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727 (1982). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic v. Twombly,* 550 U.S. 544, 563 (2007).

## <u>Argument</u>

### I.   <u>Negligence</u>

The Manufacturing Defendants argue that state law claims for negligence and negligent failure to warn, should be dismissed because the Manufacturing Defendants owed no duty. [Doc. 89-1 at 11; Doc. 86 at 10 ("some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage") (quoting *CSX Transp., Inc. v. Williams,* 608 S.E.2d 208, 209 (Ga. 2005)); Doc. 91-1 at 10; Doc. 92-1 at 7.] They claim that the complaint alleges a "general duty to the public" to protect everyone

from the harm of pollution. [Doc. 89-1 at 12; Doc. 86 at 10; Doc. 91-1 at 12; Doc. 92-1 at 8-9 (quoting *CSX Transp., Inc.* 608 S.E.2d at 209).]

But Summerville has adequately pleaded facts in the Proposed Complaint to allege a duty owed by the Manufacturing Defendants to act reasonably in the manufacture, sale, supply, and distribution of harmful chemicals. [Doc. 84-2 ¶¶ 41-46.] The Proposed Complaint, alleges that the Manufacturing Defendants owe a duty to all foreseeable plaintiffs to act non-negligently in their supply of the PFAS. [Doc. 84-2 ¶¶ 41-42, 45, 87-88, 92, 111-112.] The Manufacturing Defendants knew that their chemicals were harmful, that their chemicals were not being removed from waste streams by their industrial customers and thereafter that their chemicals polluted public drinking water supplies. [Doc. 84-2 ¶¶ 26, 36-41, 47, 60, 65-68, 83, 93-95, 114.]

The Manufacturing Defendants further argue they owe no duty to warn of the nonobvious dangers associated with PFAS and its disposal under these circumstances. [Doc. 89-1 at 14 (arguing they have no duty to warn bystanders or third parties); Doc. 86 at 10-11; Doc. 91-1 at 12; Doc. 92-1 at 10.] Summerville alleges that Defendants are exactly the ones the duty to warn should fall on, as they are the party with special knowledge regarding the PFAS and how these chemicals should be disposed. [Doc. 84-2 ¶ 110.] Further, regardless of special knowledge, the

Manufacturing Defendants owed a duty to warn Summerville because Summerville foreseeably could be harmed by the Manufacturing Defendants PFAS. *Id.*

## A.   <u>Duty of Care</u>

To hold the Manufacturing Defendants liable for negligence, Summerville must allege and establish a duty owed by the Manufacturing Defendants via statute, legislative enactment, or common law. *Rasnick v. Krishna Hosp., Inc.,* 289 Ga. App. 565, 713 S.E.2d 835, 837 (2011). Most often, it's the duty to act with ordinary care, "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." O.C.G.A. §51-1-2. "The legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from [negligent] conduct." *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 594, 580 S.E.2d 243, 247 (2003). It exists to protect plaintiffs from unreasonable conduct.

"When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." O.C.G.A. § 51-1-6. A duty to act non-negligently arises when one creates a dangerous situation and its reasonably foreseeable an injury will occur as a result. *United States v. Aretz,* 248 Ga. 19, 25, 280 S.E.2d 345, 350-51 (1981). This is precisely what the Manufacturing Defendants have done. It's

hard to imagine that absent the continuous supply, manufacture, and sale of PFAS, or without warning of its dangers, Summerville would be in the same situation. "[W]here by his own act, although without negligence on his part, he creates a dangerous situation, he is under a duty to remove the hazard or give warning of the danger so as to prevent others from being injured where it is reasonably foreseeable that this will occur." *United States v. Aretz,* 248 Ga. 19, 25, 280 S.E.2d 345, 350-51 (1981). Also, foreseeability is the scope that limits a defendant's duty: "to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued." *Sims v. Am. Cas. Co.,* 131 Ga. App. 461, 468, 206 S.E.2d 121, 127 (1974). "It is sufficient if, in ordinary prudence he might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result." *Id.* (quotations omitted).

The contamination of Summerville's water supply was foreseeable and has been properly alleged. The contamination occurs via chemicals supplied, manufactured, created, researched, and sold by the Manufacturing Defendants to Mount Vernon. [Doc. 84-2 ¶¶ 59, 67, 69, 82.] The Manufacturing Defendants supply chemicals to customers with knowledge that their chemicals cannot be removed from their customers' waste streams nor by publicly owned treatment plants to which their customers are discharging the Manufacturing Defendants' chemicals.

10

Logically, it's foreseeable they end up in Summerville's water downstream from the area where Mount Vernon disposes of its wastewater and wastewater treatment plant sludge. [Doc. 84-2 ¶¶ 59, 67, 69, 94, 113.] Further, the creation and sustaining of a dangerous situation constitutes negligence in its own right. *United States v. Aretz,* 248 Ga. 19, 280 S.E.2d 345, 350-51 (1981).

Summerville's Proposed Complaint adequately alleges the specific duty owed. [Doc. 84-2 ¶¶ 41-46 (stating those "whom Defendants' PFAS might foreseeably harm" and that the Manufacturing Defendants owe a duty "to exercise due and reasonable care in their manufacturing and chemical supply operations" and "to prevent the discharge of toxic chemicals into the Summerville water supply"); (*see also* Georgia Water Quality Control Act, O.C.G.A. § 12-5-51).]

"[S]ome duty to the individual complaining must be sought and found, the observance of which duty would have averted the injury or damage." *CSX Transp., Inc. v. Williams,* 278 Ga. 888, 608 S.E.2d 208 (2005) (quoting *City of Douglasville v. Queen,* 270 Ga. 770, 513 S.E.2d 195 (1999)). If the Manufacturing Defendants had adhered to the duty they owe Summerville, the harm caused to their drinking water supply would have been averted. This duty extends to third parties, sometimes even unknown third parties, such as when the misuse is anticipated. *Congleton v. Starlite Skate Center, Inc.*, 175 Ga. App. 438, 440, 333 S.E.2d 677, 680 (1985).

The Manufacturing Defendants argue that *Maynard v. Snapchat, Inc.*, supports a position that "as a general rule, there is no duty to control the conduct of third persons to prevent them from causing [harm]." *Maynard v. Snapchat, Inc.,* 851 S.E.2d 128, 131 (Ga. Ct. App. 2020). *Maynard* also holds, "manufacturers have a duty to exercise reasonable care in manufacturing their products so as to make products that are reasonably safe for their intended *or foreseeable uses*." *Id.* at 131-32 (quotations omitted) (emphasis added). Defendants are responsible for the foreseeable use and misuse of their products as intended, and in this case the PFAS they produce is used for its intended purpose and foreseeably contaminates the water supply.[3] In reference to O.C.G.A. § 51-1-11(b)(1) Georgia's Supreme Court held, "[t]he plain language of the statute extends manufacturer liability not only to those who may use the property, but also to those persons who may consume the property or reasonably be affected by it." *Jones v. NordicTrack, Inc.,* 550 S.E.2d 101, 103 (Ga. Ct. App. 2001).

---

[3] "The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person, who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51–1–11(b)(1).

Without question, the Manufacturing Defendants owe a duty to any plaintiff they expect could be endangered by their products probable use, including Summerville. As plead in the Proposed Complaint, Summerville referenced the Manufacturing Defendant's *knowledge* as to the hazard and dangers involved with PFAS; the manufacture and disposal thereof; and also the fact that this knowledge goes back decades. [Doc. 84-2 ¶¶ 26-34.  Further, Mount Vernon did not misuse PFAS because they used it in exactly the way the Manufacturing Defendants intended, expected and knew about.

Georgia has adopted the Restatement (Second) of Torts § 389 with regard to manufacturer and supplier liability.[4] Suppliers owe a duty, "to those whom the supplier should expect to use the chattel or to be in the vicinity of its probable use and who are ignorant of the dangerous character of the chattel . . ." Restatement (Second) of Torts § 389 (1965). Further, "[o]ne who supplies directly or through a third person a chattel for another's use knowing that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect . . ." *Id.*

---

[4] *Greenway v. Peabody Int'l Corp.,* 163 Ga. App. 698, 703, 294 S.E.2d 541, 546 (1982).

Also, whether a legal duty is owed can be ascertained via a statute which imposes a duty or by case law. *Rasnick v. Krishna Hosp., Inc.,* 713 S.E.2d 835, 837 (Ga. 2011). The Manufacturing Defendants have a duty to prevent the discharge of these chemicals into the waters of this State imposed by statute. (Ga. Comp. R. & Regs. § 391-3-6-.03(5)(b)-(c)). This is not a general duty to all the world, but it is an active duty *to prevent.* Further, Georgia law imposes a duty to avoid intentionally or negligently causing or permitting any sewage, industrial wastes, other wastes, or other substances from being discharged or deposited in the waters of Georgia. O.C.G.A. § 12-5-5.

Georgia also recognizes a duty not to engage in conduct that will result in pollution of state waters, including non-navigable waters. *Roughton v. Thiele Kaolin,* 209 Ga. App. 577, 578, 74 S.E.2d 844, 846 (1953). "[E]ach is entitled to the reasonable use of the water with respect to the rights of others, and any unlawful interference by one with the enjoyment by another of such common property rights gives a cause of action." *Id.* "A lower riparian owner is entitled to have water flow upon his land in its natural state free from adulteration." *Kingsley Mill Corp. v. Edmonds,* 208 Ga. 374, 374, 67 S.E.2d 111, 112 (1981).

At this initial pleading stage Summerville has met the minimum standard of putting the Manufacturing Defendants on notice of the claims against them, which

is all that's necessary to survive a Rule 12(b)(6) motion. As in the pending litigation in Rome, Georgia and around the country, Summerville asks that it be allowed to conduct discovery on this issue, considering the facts as plead in the Proposed Complaint. There is, at the very least, a question of fact as to when and what the Manufacturing Defendants knew about the manner in which their PFAS was being discharged by its customers without treatment into public wastewater treatment plants, and thereafter into lands through which source waters for public drinking water supplies flowed, resulting in the contamination of these public drinking water supplies.[5]

## B. <u>Duty to Warn</u>

The Manufacturing Defendants argue that Georgia law does not "recognize a blanket duty requiring a supplier to warn all the general public of risks associated with a product." [Doc. 89-1 at 14; Doc. 86 at 12; Doc. 91-1 at 13-14; Doc. 92-1 at 10.] Basing their assertion on *Certainteed Corp. v. Fletcher,* 794 S.E.2d 641, 645 (Ga. 2016) and *Reichwaldt v. G.M.,* 304 F. Supp. 3d 1312 (N.D. Ga. 2018), the

---

[5] In a similar case in New Jersey, *Suez Water New Jersey, Inc. v. E.I. DuPont de Nemours, et al.,* No. 2:20-CV-19906, *7 (N.J. Oct. 14, 2021), a public water utility sued for PFAS contamination of their drinking water. *Id.* In response to the question of duty, the court found that "Plaintiff, as a public water utility, is a member of a particularly foreseeable class of plaintiffs affected by Defendants' alleged environmental contamination." *Suez Water New Jersey, Inc. v. E.I. DuPont de Nemours, et al.*

Manufacturing Defendants argue that a bystander cannot bring a failure to warn claim. [Doc. 89-1 at 15; Doc. 86 at 13-14; Doc. 91-1 at 13-14; Doc. 92-1 at 19-20.]

In *Certainteed Corp.,* the court refused to impose a duty to warn because "the mechanism and scope of such warnings would be endless," and explained that "we think it unreasonable to impose a duty on CertainTeed to warn all individuals in [plaintiffs] position." *Certainteed Corp.,* 794 S.E.2d at 642 (stating plaintiff claims she contracted an illness via contact with her father's laundry only, due to her father working with asbestos on the job). In contrast, the mechanism and scope is not endless in the present case because the Manufacturing Defendants only need to warn foreseeable plaintiffs who would logically end up with contaminated water. In *Certainteed Corp.,* it was not readily foreseeable that someone would get sick in the manner the plaintiff did. Here, it was readily foreseeable that Mount Vernon's disposal of PFAS into a city's drinking water supply would end up in municipal treatment facilities and would contaminate downstream waterways.

Both cases cited by the Manufacturing Defendants also recognize that in some circumstances the duty to warn extends to third parties. *Certainteed Corp.*, 794 S.E.2d at 645; *Reichwaldt*, 304 F. Supp. 3d at 1317-18. In *Reichwaldt*, the court stated that a manufacturer can owe a duty to warn to unknown third parties. *Id.* at 1316-17. The Manufacturing Defendants rely on *Certainteed Corp.* and *Reichwaldt*

to assert no duty is owed to bystanders or third parties, but these two cases do not illustrate that. The duty to warn may be owed to consumers, reasonably foreseeable users and purchasers, *and even reasonably foreseeable third parties. Certainteed Corp.,* 794 S.E.2d at 645 (emphasis added).

Further, a duty to warn arises "whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Id.* (quoting *Chrysler Corp. v.* Batten, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994)). A manufacturer's duty to warn extends to warnings of "nonobvious foreseeable dangers from the normal use of its products." *Id.* Not a warning to all the public, just those that are within the limited scope of foreseeability. Such as those who may foreseeably be harmed by the foreseeable dangers associated with the use of their product, that are nonobvious.

Under Georgia law, a products supplier has a duty to warn foreseeable users of a products danger if: (a) the supplier has reason to know that the product is likely to be dangerous for the use which it is supplied, and (b) the supplier has no reason to believe that the user will realize the products dangerous condition. *Carter v. E.I. DuPont de Nemours & Co., Inc.,* 217 Ga. App. 139, 141, 456 S.E.2d 661, 662 (1995).

In this case, Summerville has alleged in the Proposed Complaint the Manufacturing Defendants' had knowledge of the dangers surrounding PFAS. [Doc.

17

84-2 ¶¶ 26-30.] Further, use of PFAS to create a fire-retardant fabric by Mount Vernon do not point to any obvious danger Mount Vernon would immediately realize. The Manufacturing Defendants knew that the foreseeable use of their product would end with disposal of PFAS into wastewater, that this would lead to an inadequate treatment and filtration process, and that PFAS would later be released into the environment and spread downstream. [Doc. 84-2 ¶ 26.]

Summerville has adequately pleaded facts that allege the Manufacturing Defendants' knowledge, research, and understanding of PFAS result in a duty being owed. [Doc. 84-2 ¶¶ 30-34.] While the Manufacturing Defendants argue the opposite. Based on the genuine dispute of a material fact, Summerville should be at a minimum permitted to conduct discovery on these issues, at which point the Manufacturing Defendants will have another opportunity to seek dismissal of these claims via a motion for summary judgment.

The Manufacturing Defendants are best situated to warn of the dangers of their product because they created, supplied, manufactured, sold, and studied the PFAS. [Doc. 84-2 ¶¶ 32-34.] For these reasons, Summerville asks this Court to deny the Manufacturing Defendants' Motions to Dismiss and grant Summerville's Motion to Intervene.

## II.     <u>Proximate Cause</u>

The Manufacturing Defendants argue for dismissal of the state law negligence and nuisance claims, arguing they fail because they do not allege the Manufacturing Defendants proximately caused their injury. [Doc. 89-1 at 17; Doc. 86 at 5-6; Doc. 91-1 at 19; Doc. 92-1 at 18.] They assert the chain of causation is broken because Mount Vernon's physical disposal of the PFAS is an intervening act, absolving the Manufacturing Defendants of any responsibility. [Doc. 89-1 at 18; Doc. 86 at 6-7; Doc. 91-1 at 20; Doc. 92-1 at 19.]

Summerville's Proposed Complaint pleads that the Manufacturing Defendants proximately caused the harm and injury they suffered. [Doc. 84-2 ¶ 47 (stating that "as a direct, proximate, and foreseeable result of the defendants conduct, practices, actions, and inactions, Summerville has . . . suffere[d] damage").] The Manufacturing Defendants recognize that the issue of proximate causation is an issue usually reserved for the jury and should not be determined by a Rule 12(b)(6) motion unless plain and undisputed. [Doc. 89-1 at 17, n. 10 *see also Ontario Sewing Mach. Co., Ltd. v. Smith*, 572 S.E.2d 533, 536 (Ga. 2002).] Still, the Manufacturing Defendants argue "it was not reasonably foreseeable that Mount Vernon . . . would violate their own obligations under federal law and state laws." [Doc. 89-1 at 18-19.]

Proximate cause "is that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." *T.J. Morris Co. v. Dykes*, 398 S.E.2d 403, 406 (Ga. Ct. App. 1990). For the actions of a third party to cut off a defendant's liability, "the intervening act must not have been foreseeable by defendant, must not have been triggered by defendant's act, and must have been sufficient by itself to cause the injury." *Smith*, 572 S.E.2d at 536 (quotations omitted).

Causation is "[c]ut off only if there intervened between the act and the injury a distinct, successive, unrelated, efficient cause of the injury." *Knight v. Roberts,*, 730 S.E.2d 78, 86 (Ga. App. 2012). Further, it is well established in Georgia that there may be more than one proximate cause of an injury. *Knight,* 730 S.E.2d at 86. Acts by others and concurrent acts don't necessarily eliminate liability for the manufacturers of PFAS. The original wrongdoer isn't shielded from liability simply because another party harms the plaintiff after them.

Proximate cause is not just the last act or cause nearest to the injury. *Sprayberry Crossing P'ship v. Phenix Supply Co.,* 617 S.E.2d 622, 624 (Ga. Ct. App. 2005). It is "all of the natural and probable consequences . . . unless there is a sufficient and independent intervening cause." *Cowart v. Widener*, 697 S.E.2d 779, 784 (Ga. 2010).

20

The intervening acts of a third party can become the sole proximate cause of an injury, but only if the intervening act was not foreseeable. *Ontario Sewing Mach. Co., Ltd. V. Smith*, 572 S.E.2d 533, 536 (Ga. 2002); *see also Williams v. Grier*, 196 Ga. 327, 336, 26 S.E.2d 698 (1943) (stating "if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken"). Therefore, *any* foreseeable result will not allow the Manufacturing Defendants to evade liability.

Whether or not the defendant could have reasonably anticipated or foreseen the act, is judged by the standard of what a reasonably prudent person would have foreseen in the same situation. *Ellington v. Tolar Const. Co.*, 227 S.E.2d 336, 339 (Ga. 1976). In this case, the pollution of Raccoon Creek, caused by the Manufacturing Defendants PFAS from the Trion WPCP, would have been foreseeable by an ordinarily prudent person manufacturing and selling PFAS. A reasonably prudent manufacturer would have foreseen that this would likely result in harm to Summerville.

Manufacturers have a duty to anticipate the foreseeable use of their product and warn against it. Further, the fact that the resulting harm to Summerville, which

the Manufacturing Defendants allege Mount Vernon is responsible for, was foreseeable to the Manufacturing Defendants at the outset. [Doc. 84-2 ¶¶ 26-30.] There can be more than one proximate cause of an injury. Further, proximate cause is generally a question of fact that should be reserved for the jury. At this stage the Court should accept Summerville's allegations as true and construe any question in favor of Summerville because the Manufacturing Defendants have adequately been put on notice of the claims against them. For these reasons, Summerville asks that the Court deny the Manufacturing Defendants Motions to Dismiss and grant Summerville's Motion to Intervene.

### III.   <u>Public Nuisance</u>

The Manufacturing Defendants argue that a public nuisance claim cannot be maintained against these Defendants because they (A) had no control over the cause of the nuisance once the PFAS left their physical control, and (B) "special damages" necessary to maintain a claim for public nuisance have not been alleged. [Doc. 89-1 at 20; Doc. 86 at 15-16; Doc. 91-1 at 13; Doc. 92-1 at 15-16.] Summerville's Proposed Complaint adequately establishes both control and special damages. [Doc. 84-2 ¶ 56. (alleging "its proprietary and ownership interest in its water, expenses associated with mitigation and remediation, installation of emergency filtration system, future costs").] Further, on October 12, 2020, the City of Summerville,

22

Georgia declared the Manufacturing Defendants contamination of Raccoon Creek to be a public nuisance. [*Mem. in Supp. of Am. Mot. to Intervene by the City of Summerville, Georgia*, Doc. 84-3 at 2.] As such, the Manufacturing Defendants' Motions should be denied and Summerville's Motion to Intervene should be granted.

### A.   Control

"[T]he essential element of nuisance is control over the cause of the harm." *Sumitomo Corp. of Am. Deal,* 569 S.E.2d 608, 613 (Ga. Ct. App. 2002). "Anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. For a party to have control over the nuisance, the party "must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." *Fielder v. Rice Const. Co.*, 522 S.E.2d 13, 17 (Ga. Ct. App. 1999).

The Manufacturing Defendants cite *Brimberry v. Savannah, F&W Ry.,* 3 S.E. 274, 275 (Ga. 1887) and *Corporation of Mercer University v. National Gypsum Co.,* No. CIV.A. 85-126-3-MAC, 1986 WL 12447 (M.D. Ga. Mar. 9, 1986) attempting to argue that there "can be no claim for nuisance against manufacturers whose products allegedly caused harm after they left the manufacturers control." [Doc. 89-1 at 21; *see also* Doc. 86 at 15; Doc. 91-1 at 24; Doc. 92-1 at 13-14.] Essentially the

Manufacturing Defendants argument is that once a product leaves the manufacturers control, the manufacturer cannot be liable for nuisance.

The Manufacturing Defendants argue that they lack the control required for a public nuisance claim and that Summerville's Proposed Complaint does not allege that the Manufacturing Defendants actually discharged or controlled the PFAS past the point of sale. [Doc. 89-1 at 20; Doc. 86 at 14-15; Doc. 91-1 at 21; Doc. 92-1 at 12-13.] This argument is incorrect. The Manufacturing Defendants continuous supply to the actual dischargers makes them a concurrent cause of a continuing nuisance. [Doc. 84-2 ¶¶ 53, 58; *see also State of Georgia v. Teva Pharmaceutical Indus. Ltd., et al.*, 19-A-00060-4, at 23 (Gwinnett Cnty. Sup. Ct. Oct. 9, 2019) (ruling the court determined the State "adequately alleged Defendants controlled the cause of the nuisance (the Opioid Crisis) because they controlled the opioids themselves before they were distributed and diverted").

Summerville also alleges that the Manufacturing Defendants knew their PFAS were being discharged into the waterways at issue. [Doc. 84-2 ¶¶ 58-59.] Which, at minimum, constitutes a maintenance of the nuisance due to their continuous supply. Every time Defendants supplied Mount Vernon with PFAS, they were furthering the nuisance. *See Johnson v. 3M,* 4:20-CV-8-AT, 2021 WL 4745421 (N.D. Ga. Sept.

24

20, 2021) (stating that by way of being the supplier, 3M exercised control over the nuisance).

Summerville also pleaded the Manufacturing Defendants had actual knowledge regarding whether municipal wastewater plants could properly filter out PFAS. [Doc. 84-2 ¶¶ 29-30 (stating "Defendants have known for years that PFAS are not effectively treated by conventional wastewater treatment plant processes").]

Where there is a question as to knowledge of a condition, that is a genuine issue of material fact sufficient to survive a Rule 12(b)(6) motion. Further, as the public representative and the operator of the municipal water plant, Summerville is uniquely situated to bring a public nuisance claim. O.C.G.A. § 41-2-2 (stating private citizens usually cannot have a public nuisance abated, that right is generally left to the city).

## Conclusion

For the reasons stated above, Summerville respectfully requests that this Court grant its Motion to Intervene [Doc. 84] and deny the Manufacturing Defendants' Motions to Dismiss in their entirety.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing **CITY OF SUMMERVILLE, GEORGIA'S REPLY TO DEFENDANT MOUNT VERNON MILLS, INC.'S OPPOSITION TO MOTION TO INTERVENE** has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record on this the 15th day of November, 2021.

Respectfully submitted,

*/s/  J. Anderson Davis* (w/permission)
J. Anderson Davis (Ga. Bar No. 211077)
BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP
P.O. Box 5007
Rome, Georgia 30162-5007
Ph# (706) 291-8853
Fax# (706) 234-3574
adavis@brinson-askew.com

*/s/  Jeff Friedman*
Jeff Friedman *(Pro Hac Vice Pending)*
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# (205) 278-7000
Fax# (205) 278-7001
jfriedman@friedman-lawyers.com