IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| EARL PARRIS, JR., Individually, and on Behalf of a Class of Persons Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| City of SUMMERVILLE, GEORGIA, | ) ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: 4:21-cv-00040-TWT |
| 3M COMPANY, DAIKIN AMERICA, INC., HUNTSMAN INTERNATIONAL, LLC, PULCRA CHEMICALS, LLC, MOUNT VERNON MILLS, INC., TOWN OF TRION, GEORGIA, and RYAN DEJUAN JARRETT, | ) ) ) ) ) ) ) ) ) | **TRIAL BY JURY REQUESTED** |
| Defendants. | ) | |

## COMPLAINT IN INTERVENTION

COMES NOW, the Intervenor-Plaintiff in this case, the City of Summerville,

Georgia ("Summerville" or "City"), and for its Complaint sets forth as follows:

## STATEMENT OF THE CASE

1.     The City of Summerville, Georgia provides water and sewer services

to its customers, which include residential and commercial customers within the

Summerville city limits. Summerville uses and depends on a freshwater intake on Raccoon Creek as its primary water source. As a direct and proximate result of the Defendants' wrongful acts and omissions, Raccoon Creek has become polluted with man-made chemicals that are commonly referred to as "forever chemicals" due to their persistence in the environment: per- and polyfluoroalkyl substances ("PFAS"). Summerville has been, and continues to be, damaged by the presence of toxic levels of PFAS in Raccoon Creek.

2.     Summerville seeks equitable and injunctive relief to compel the Defendants to remove PFAS from the Summerville drinking water supply and to remove PFAS contaminated sludge from the Raccoon Creek watershed.

3.     Summerville also seeks to recover compensatory damages from the manufacturers and distributors of the PFAS chemicals that have contaminated, and will continue to contaminate, the City's water supply and for the costs associated with removing PFAS from the water.

## **JURISDICTION AND VENUE**

4.     This Court has supplemental jurisdiction over the state law claims in this action in accordance with 28 U.S.C. § 1367(a), because they are so related to federal claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

5.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendants have conducted substantial business in the Northern District of Georgia ("this District") and have caused harm to Intervenor/Summerville and Proposed Class Members in this District. In addition, Intervenor/Summerville and Proposed Class Members reside in this District and a substantial part of the events or omissions giving rise to their claims occurred in this District.

## PARTIES

6.     Intervenor/Summerville—the City of Summerville, Georgia—is a municipal corporation organized under the laws of the State of Georgia. Summerville owns land in Chattooga County through which Raccoon Creek flows and Summerville has a proprietary interest in its water.

7.     Defendant 3M Company ("3M") is a foreign corporation authorized to do business in the State of Georgia, that, at all times relevant hereto, has conducted business within this District. Among other acts and omissions, Defendant 3M for many years manufactured and supplied products containing PFAS to Mount Vernon Mills and other companies in Georgia.

8.     Defendant Daikin America, Inc. ("Daikin") is a foreign corporation with its headquarters in New York, that, at all times relevant hereto, has conducted business within this District. Among other acts and omissions, Defendant Daikin has

3

for many years manufactured and supplied products containing PFAS to Mount Vernon Mills and other companies in Georgia.

9.      Defendant Huntsman International, LLC ("Huntsman"), is a foreign corporation with its headquarters in Texas, authorized to do business in the State of Georgia, and, at all times relevant hereto, has conducted business in this District. Among other acts and omissions, Defendant Huntsman has manufactured and supplied products containing PFAS to Mount Vernon Mills and other companies in Georgia.

10.      Defendant Pulcra Chemicals, LLC ("Pulcra"), is a foreign corporation with its U.S. headquarters in South Carolina, that, at all times relevant hereto, was conducting business in this District. Among other acts and omissions, Defendant Pulcra has manufactured and supplied products containing PFAS to Mount Vernon Mills and other companies in Georgia.

11.      Mount Vernon Mills, Inc., Town of Trion, Georgia, and Ryan Dejuan Jarrett are named Defendants in the pending action, and may be considered necessary parties as that term is construed and applies under Federal law, but Summerville asserts no legal claims against these three Defendants.

12.     Defendants 3M, Daikin, Huntsman, and Pulcra may be referred to in this Complaint in Intervention as "PFAS Manufacturing Defendants" or "Defendants."

## FACTUAL ALLEGATIONS

13.     The City of Summerville provides water and sewer service to its residents and sets charges for providing its services. It is the City's responsibility to provide water for consumption and usage by any person who applies for water and sewer services, makes a security deposit, and becomes obligated to pay water and sewer rates pursuant to a Rate Schedule established by the City. Among other things, the Rate Schedule includes costs of building, maintaining, and operating water collection, treatment, and delivery.

14.     The City of Summerville owns and operates a water treatment plant, the Raccoon Creek Water Treatment Facility, located at 1082 Filter Plant Road in Summerville, Georgia. Summerville provides treated drinking water ("finished water") to its residential and commercial customers, which include consumers, members of consumers' households, and/or consumers' employees and customers. The water processed by Summerville has historically come from Raccoon Creek as its primary water source. Summerville is the owner of land through which Raccoon

Creek flows to its filter plant. Summerville is the riparian owner of the water collected and treated by the City for its residents.

15.     Summerville has been damaged and continues to be damaged by PFAS pollution present in Racoon Creek. The term PFAS used herein includes per- and polyfluoroalkyl substances that are man-made products commonly referred to as "forever chemicals" because of their persistence in the environment. The PFAS category of substances includes perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS") which have been identified in an Environmental Protection Agency ("EPA") Drinking Water Health Advisory since 2016. According to the EPA Science Advisory Board and the International Agency for Research on Cancer, PFAS has been linked to various types of illnesses including cancer.

16.     On January 30, 2020, test data accumulated by the Georgia Environmental Protection Division ("EPD") indicated combined levels of PFOA and PFOS in the finished water (drinking water) from the Racoon Creek treatment plant the EPA Drinking Water Health Advisory level. In response to this information, and after consulting with Georgia EPD, the City of Summerville issued a Public Notice warning its residents about the potential harm that could be caused by drinking water with PFAS pollutants in excess of the EPA Drinking Water Health Advisory levels.

17.     In January 2020, Summerville formally issued a "Notice of Drinking Water Health Advisory Level Exceedance for Racoon Water Plant," and thereafter the City and the Georgia EPD began providing a supply of 5,000 gallons of water in a tanker to Summerville residents so that they could obtain safe drinking water by filling containers with water at City Hall. The City of Summerville also provided pallets of bottled water for its citizens to have another source of drinking water that was not polluted.

18.     In order to provide water that is safe to drink, the City of Summerville must build a Granular Activated Carbon ("GAC") treatment system or other sophisticated water filtration system, seek alternative sources for its water, consult engineers and experts, and search for long-term solutions to address the dangerous levels of PFAS detected in the City's water supply. A final, long-term solution has not yet been made, but the City has expended large sums of money to address the problem and will continue to spend large sums of money to keep its water safe for many years to come because of the pollution in Racoon Creek. The City has sustained substantial identifiable damages resulting from the pollution in Racoon Creek that is the subject of the litigation pending before this Court.

19.     The current filtration utilized by Summerville does not eliminate all PFAS and does not eliminate "short chain" PFAS, which represents an emerging

area of health concerns for drinking water. An effective long-term solution to provide clean and safe drinking water is necessary to eliminate dangerous forever chemicals the Defendants have created and caused to be released into the environment and specifically Raccoon Creek.

20.    The International Agency for Research on Cancer ("IARC") has classified PFOA as a possible human carcinogen, and EPA has concluded that there is suggestive evidence of the carcinogenic potential of PFOA in humans.

21.    PFAS immunotoxicity has been demonstrated in a wide variety of species and models, including humans, in recent years. For instance, in 2016, the U.S. Department of Health and Human Service's National Toxicology Program ("NTP"), after conducting a systematic review of the evidence pertaining to PFAS exposure and immune-related health effects, concluded that PFOA and PFOS constitute a hazard to immune system function in humans.

22.    On May 19, 2016, EPA published lifetime Drinking Water Health Advisories for PFOA and PFOS ("May 2016 EPA Health Advisories").

23.    The May 2016 EPA Health Advisories state that PFOA and PFOS have "extremely high" persistence in the environment and the human body, and that the developing fetus and newborn are "particularly sensitive" to PFOA and PFOS induced toxicity. According to the May 2016 Health Advisories, a single exposure

to a developmental toxin at a critical time can produce a persistent adverse effect that increases with additional exposure.

24.    In 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") updated its Toxicological Profile and significantly lowered minimum risk levels ("MRLs") for both PFOA and PFOS, and using the methods EPA used to develop its May 2016 EPA Health Advisories, these updated MRLs would translate to drinking water health advisory levels of approximately 7 parts per trillion ("ppt") for PFOA and 11 ppt for PFOS.

25.    Based on concerns that EPA's May 2016 Health Advisories are not protective of human health, numerous states have taken action to pursue stricter guidelines for PFAS in drinking water, including: Vermont, which established a health advisory of 20 ppt for any combination of PFOA, PFOS, PFHxS, PFHpA, and PFNA; New Jersey, which established a MCL for PFNA of 13 ppt, and has proposed a MCL for PFOA of 14 ppt and PFOS of 13 ppt; New York, which has recommended adoption of MCLs of 10ppt for PFOA and PFOS; and Michigan, where a scientific panel has recommended adoption of health advisory for PFOA of 8 ppt and PFOS of 16 ppt.

26.    The PFAS Manufacturing Defendants have long been aware of the persistence and toxicity of PFAS, including PFOA and PFOS. These Defendants

nonetheless knowingly and intentionally sold these chemicals to Mount Vernon Mills and knew or should have known they would be discharged into the Trion Water Pollution Control Plant ("WPCP"), where they inevitably concentrate in the sludge which has been and is being disposed of in a manner that PFAS are discharged to surface water, including Raccoon Creek, which supplies drinking water to the City of Summerville and its water subscribers.

27.     The PFAS Manufacturing Defendants have known for years that PFAS persist in the environment and accumulate in the bodies of humans, fish, and animals. For instance, blood tests of 3M workers conducted in 1978 found elevated organic fluorine levels "proportional to the length of time that had been spent by employees in the production areas." The same study found that "laboratory workers, with former exposure, but none for 15-20 years, had elevated [organic fluorine levels] above literature normal." A 1979, 3M study of fish caught by the Wheeler Dam (26 miles downstream from the 3M manufacturing plant in Decatur, Alabama) showed that these chemicals bioaccumulate in fish.

28.     The PFAS Manufacturing Defendants have also known for years that PFOA, PFOS, and related chemicals are toxic. For instance, a 1978 3M study of the effects of fluorochemical compounds on Rhesus monkeys was terminated after 20 days because all the monkeys died as a result of exposure to the fluorochemicals. In

1983, a team of 3M toxicologists recommended broad testing regarding the effects of 3M's fluorochemicals on the environment and human beings.

29. The PFAS Manufacturing Defendants have known for years that the disposal of PFAS through discharge into waterways, such as Raccoon Creek, is unsafe. For instance, a Material Safety Data Sheet ("MSDS") produced by 3M in 1986 warned that PFOA should be disposed of only through incineration or at specially designed, properly lined landfills for hazardous chemicals—and not dumped onto the ground or mixed with soil for farming.

30. The PFAS Manufacturing Defendants have known for years that PFAS are not effectively treated by conventional wastewater treatment plant processes and are discharged to surface waters in the effluent and accumulate in the sludge from wastewater treatment processes. For example, in 1978, 3M found that the bacteria in wastewater treatment plants would not biodegrade PFOA. In 2001, 3M found high concentrations of these chemicals in samples from the Decatur Utilities wastewater treatment plant in Decatur, Alabama, effluent and sludge as a result of discharges from 3M. Both 3M and Daikin have been aware since the early 2000s that their Decatur, Alabama, manufacturing properties are contaminated with PFAS from the disposal of wastewater treatment plant sludge on the property years earlier by 3M.

Daikin has also been aware since at least 2000 that its own wastewater sludge contains PFAS.

31.     A 1997 MSDS for a product made by 3M listed its ingredients as water, PFOA, and other PFAS and warned that the product includes "a chemical which can cause cancer." The MSDS cited "1983 and 1993 studies conducted jointly by 3M and DuPont" as support for this statement.

32.     In 2006, 3M agreed to pay a $1.5 Million civil penalty for failure to disclose information to EPA about the health risks and environmental persistence of PFAS chemicals.

33.     Defendant Huntsman has been supplying products containing PFAS to the textile industry since a least 2007, when it acquired part of the PFAS business of DuPont de Nemours, Inc. ("DuPont"). Upon information and belief, DuPont provided available information to Huntsman concerning the toxicity and persistence of PFAS prior to this acquisition.

34.     Defendant Pulcra has been supplying products containing PFAS to Mount Vernon since at least 2010. Upon information and belief, Pulcra has known about the toxicity and persistence of PFAS since at least 2000.

35.     Upon information and belief, the PFAS Manufacturing Defendants have long been aware of the persistence and toxicity of PFAS, at least as a result of

communications among the PFAS Manufacturing Defendants and trade associations, as well as the EPA and EPD. At least since 2000, the persistence and toxicity of PFAS has been widely published.

36.     Upon information and belief, the PFAS Manufacturing Defendants and Mount Vernon knew or should have known that, in their intended and/or common use, products containing PFAS would very likely caused harm and injury, and/or threaten public health and environment.

37.     Upon information and belief, Defendants knew or should have known that PFAS are mobile and persistent, bioaccumulative, biomagnifying, and toxic. These Defendants nonetheless concealed their knowledge from the public and government agencies resulting in the contamination of the Summerville water supply with PFAS.

38.     On October 12, 2020, the City Summerville executed a Resolution regarding Summerville's water supply, finding and declaring the existence of a public nuisance that threatens the health and safety of the community and the long-term sustainability of the water supply for the City of Summerville. (*See* Resolution Regarding City of Summerville Water Supply, October 12, 2020, attached hereto as **Exhibit A**).  According to the Resolution, the City of Summerville shall pursue such

legal action as is available against the manufacturers, distributors, and others as necessary to the full extent available under the law. (*See* Ex. A.)

## COUNT ONE
### Negligence

39.     Summerville incorporates Paragraphs 13 through 38 by reference as if fully set forth herein.

40.     As manufacturers, suppliers, sellers, users, disposers, and/or dischargers of PFAS, products containing PFAS, and/or products manufactured using PFAS, Defendants owe a duty to Summerville, as well as to all persons whom Defendants' PFAS might foreseeably harm, in their supply, sale, use, and disposal of PFAS.

41.     Defendants owe a duty to Intervenor/Summerville, as well as to all persons whom Defendants' PFAS might foreseeably harm, to exercise due and reasonable care in their manufacturing and chemical supply operations to prevent the discharge of toxic PFAS into the Summerville water supply.

42.     The City of Summerville has a reasonable expectation that Defendants would avoid contaminating Summerville's water, Summerville's property, and the surrounding environment—an expectation that extends to the pollution of the area's water supply.

43.     The Georgia Water Quality Control Act regulations specify that all waters of the State of Georgia shall be free from: "industrial waste or other discharges in amounts sufficient to be unsightly or to interfere with legitimate water uses" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(b); "industrial or other discharges which produce turbidity, color, odor or other objectionable conditions which interfere with legitimate water uses" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(c); "toxic, corrosive, acidic and caustic substances discharged from . . . industries or other sources, such as nonpoint sources, in amounts, concentrations or combinations which are harmful to humans, animals or aquatic life" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(e).

44.     Pursuant to O.C.G.A. § 12-5-51, Defendants owe a duty Summerville, as well as to all persons whom Defendants' PFAS might foreseeably harm, to avoid intentionally or negligently causing or permitting any sewage, industrial wastes, other wastes, or other substance or substances to be discharged or deposited in the waters of the State of Georgia.

45.     Defendants breached the duties owed to Summerville, and under the circumstances, Defendants' breaches constitute negligent, willful, and/or reckless conduct.

46.     Defendants knew or should have known that exposure to PFAS and water contaminated by PFAS is hazardous to human health and the environment, including animals, birds and aquatic life.

47.     As a direct, proximate, and foreseeable result of the Defendants' conduct, practices, actions, and inactions, Summerville has incurred expenses and will incur reasonably ascertainable expenditures in the future and has and will continue to suffer damage to its real property and proprietary interest in its water supply.

WHEREFORE PREMISES CONSIDERED, Summerville demands judgment for compensatory damages against Defendants in an amount to be determined by a struck jury, past and future, plus interest and costs.

### COUNT TWO
**Public Nuisance**

48.     Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

49.     Summerville owns and occupies property used to serve its water customers, including a water intake site, water treatment plant, water distribution system, and offices.

50.     Summerville owns land and water rights which permit it to draw water from Raccoon Creek to provide drinking water to its customers.

51.     Summerville provides drinking water to its customers from its water supply that is used for drinking, bathing, cleaning, washing, cooking, watering vegetables, and other uses.

52.     Summerville and the members of the public have a right to have their water remain clean, safe, and free of Defendants' toxic contamination.

53.     The PFAS Manufacturing Defendants have created a continuous nuisance by selling and supplying PFAS to Mount Vernon without adequate warnings of its nonobvious dangers and disposal requirements, and Defendant Mount Vernon and has also created this nuisance by its past and/or continuing discharge of PFAS into the Trion WPCP and Raccoon Creek and related tributaries and watersheds, respectively, which has caused contamination of Summerville's water supply and consequent damage and inconvenience.

54.     The contamination caused by the Defendants unreasonably interferes with a right common to the general public—i.e., the right to use and enjoy the waters of Raccoon Creek (*e.g.,* for fishing, navigation, recreation, and drinking)—and unreasonably interferes with public health.

55.     All who come within the sphere of operation of the Defendants' PFAS pollution of Raccoon Creek are hurt, inconvenienced, or damaged. The harm caused by Defendants' conduct is not fanciful, or such as would affect only one of fastidious

taste; rather, Defendants' conduct is such that it affects ordinary, reasonable persons. *See* O.C.G.A. § 41-1-1.

56.    The special damages incurred by Summerville include, but are not limited to, damage to Summerville's water and its proprietary and ownership interest in its water, expenses associated with mitigation and remediation, including the installation of emergency temporary filtration; the future installation and operation of a permanent filtration system capable of removing Defendants' PFAS from the water; expenses incurred to test and monitor PFAS contamination levels; and lost revenue and sales.

57.    In addition to the special damages sustained by Summerville, the levels of toxic chemical contamination found in the Summerville's water supply, directly caused by the Defendants' pollution, have created a condition that threatens the health and well-being of Summerville's customers.

58.    It was reasonably foreseeable, and in fact known to the Defendants, that their actions would place, have placed, and will continue to place, Summerville at risk of harm. The nuisance is continuous and has caused substantial damages and will continue to cause damages until it is satisfactorily abated.

59.    Defendants knew it was substantially certain that their acts and omissions described above would cause Summerville's water supply to become

contaminated by PFAS. Defendants have acted with a conscious indifference to the probable dangerous consequences of their actions and the reasonably foreseeable impact such actions would have on public health and welfare.

WHEREFORE PREMISES CONSIDERED, Summerville demands judgment for compensatory and punitive damages against Defendants in an amount to be determined by a struck jury, past and future, plus interest and costs.

## COUNT THREE
### Private Nuisance

60.     Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

61.     Summerville is the owner of land located at 1082 Filter Plant Road along with water rights that permit Summerville to draw water from Raccoon Creek to provide drinking water to its customers.

62.     Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in substantial contamination of Summerville's water supply by PFAS which cause adverse human health effects and render water undrinkable.

63.     The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interferes with Summerville's property rights to appropriate, use, and enjoy water from Raccoon Creek.

64.    The PFAS Manufacturing Defendants have created a nuisance by selling and supplying PFAS to Mount Vernon without adequate warnings of its nonobvious dangers and disposal requirements, and Defendant Mount Vernon has also created this nuisance by its past and/or continuing discharge of PFAS into the Trion WPCP and Raccoon Creek and related tributaries and watersheds, respectively, which has caused contamination of Summerville's water supply and consequent damage and inconvenience.

65.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

66.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Summerville has incurred, is incurring, and will continue to incur damages arising from the PFAS contamination of Summerville's water supply.

67.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage to Summerville's property, including PFAS contamination of Summerville's water supply. Defendants committed each of the above-described acts and omissions willfully and with malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences in order to promote sales of their products (the PFAS themselves, as well as products containing PFAS

20

and/or products for which PFAS were used in the manufacturing process). Thus, Summerville demands an award of punitive damages because of the aggravating circumstances alleged herein in order to penalize, punish, and deter Defendants' conduct.

68.    The contamination of the water at Summerville's intake site has caused damage to property owned by the City of Summerville and constitutes a private nuisance, interfering with Summerville's property interests and depriving Summerville of its ability to deliver clean and uncontaminated water to its customers.

69.    It was reasonably foreseeable, and in fact known to Defendants, that their actions would contaminate, and have contaminated, the water at Summerville's intake site. The nuisance has caused substantial damages and will continue to cause damages until it is satisfactorily abated.

WHEREFORE    PREMISES    CONSIDERED,    Summerville    demands judgment for compensatory and punitive damages against Defendants  in an amount to be determined by a struck jury, past and future, plus interest and costs.

## COUNT FOUR
### Abatement of Nuisance

70.    Summervilles re-allege Paragraphs 13 through 38 as if set forth fully herein.

71.     Pursuant to O.C.G.A. §§ 41-2-1 and 41-2-2, Summerville has the right to bring an action to abate the nuisance caused by Defendants' manufacture, use, purchase, sale, supply, disposal, discharge, and/or release of PFAS which has caused and continues to cause contamination of Summerville's water supply.

72.     In addition to its claims for damages, Summerville is entitled to an injunction to abate the nuisance created and maintained by Defendants. The Court should issue an injunction requiring Defendants to remove their chemicals and toxins from the water supplies of Summerville and/or fund the measures necessary to prevent these chemicals and toxins from continuing to contaminate Summerville's water supply, based on the continuing irreparable injury to Summerville posed by the continuing nuisance and damage to Summerville's property interests, for which there is no adequate remedy at law.

WHEREFORE   PREMISES   CONSIDERED,   Summerville   demands abatement of the nuisance caused by Defendants.

## COUNT FIVE
**Trespass**

73.     Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

74.    Summerville owns and occupies property used to serve its water customers and other water utilities, including a water intake site, water treatment plant, water distribution system, and offices.

75.    Summerville owns land and water rights which permit it to draw water from Raccoon Creek to provide drinking water to its customers.

76.    Under O.C.G.A. § 51-9-7, "the owner of land through which non-navigable watercourses flow is entitled to have the water in such streams come to it in its natural and usual flow," and "the polluting thereof so as to lessen its value to the owner of such land shall constitute a trespass upon the property."

77.    As the landowner, Summerville is entitled to water that is clean, safe, and free of Defendants' pollution and toxic contamination at the time such water is drawn from Raccoon Creek at Summerville's water intake site.

78.    Defendants' intentional or wanton acts in manufacturing, supplying, disposing and discharging PFAS knowing that they would contaminate the water supply and flow downstream, caused an invasion of Summerville's property by Defendants' chemicals, which has affected and is affecting Summerville's interest in the exclusive possession of its property.

79.    Defendants' conduct has resulted in substantial contamination and pollution of Summerville's water supply by PFAS and constitutes trespass upon Summerville's property.

80.    Defendants' PFAS have migrated and spread since they initially entered Summerville's water supply. These PFAS will continue to migrate and spread.

81.    Summerville did not consent to the invasion of its property by Defendants' PFAS.

82.    Defendants knew or should have known that their manufacture, use, purchase, sale, supply, discharge, and/or release of PFAS could contaminate the water supply and result in an invasion of Summerville's possessory interest in its property.

83.    Defendants' trespass is continuing.

84.    Defendants' continuing trespass has impaired Summerville's use of its property and has caused it damages by diminishing its value.

WHEREFORE   PREMISES   CONSIDERED,   Summerville   demands judgment for compensatory damages against Defendants in an amount to be determined by a struck jury, past and future, plus interest and costs.

## COUNT SIX
### Wantonness and Punitive Damages

85.    Summerville re-alleges Paragraphs 13 through 38 as if restated herein.

86.    As manufacturers, suppliers, sellers, users, disposers, and/or dischargers of PFAS, products containing PFAS, and/or products manufactured using PFAS, Defendants owe a duty to Summerville, as well as to all persons whom Defendants' PFAS might foreseeably harm, in their sale, supply, use, disposal, and discharge of PFAS.

87.    Defendants owe a duty to Summerville, as well as to all persons who Defendants' PFAS might foreseeably harm, to exercise due and reasonable care in their chemical manufacturing and chemical supply operations as well as their carpet manufacturing operations to prevent the discharge of toxic PFAS into the Summerville water supply.

88.    The City of Summerville has a reasonable expectation that Defendants avoid contaminating Summerville's water, Summerville's property, and the surrounding environment—an expectation that extends to the pollution of the area's water supply.

89.    The Georgia Water Quality Control Act regulations specify that all waters of the State of Georgia shall be free from: "industrial waste or other discharges in amounts sufficient to be unsightly or to interfere with legitimate water

uses" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(b); "industrial or other discharges which produce turbidity, color, odor or other objectionable conditions which interfere with legitimate water uses" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(c); "toxic, corrosive, acidic and caustic substances discharged from . . . industries or other sources, such as nonpoint sources, in amounts, concentrations or combinations which are harmful to humans, animals or aquatic life" Ga. Comp. R. & Regs. § 391-3-6-.03(5)(e).

90.     Pursuant to O.C.G.A. § 12-5-51, Defendants owe a duty to Summerville, as well as to all persons whom Defendants' PFAS might foreseeably harm, to avoid intentionally or negligently causing or permitting any sewage, industrial wastes, other wastes, or other substance or substances to be discharged or deposited in the waters of the State of Georgia.

91.     In breaching the duties described above, Defendants acted in a willful or wanton and reckless manner.

92.     Defendants knew or should have known of the dangers PFAS poses to the environment, water and human health and its disposal requirements to safeguard against those serious risks of harm.

93.     Defendants knew or should have known the danger to Summerville created by Defendants' conduct, practices, actions, and inactions.

94.     Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on Summerville.

95.     Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard for Summerville's property.

WHEREFORE PREMISES CONSIDERED, Summerville demands judgment for punitive damages against Defendants  in an amount to be determined by a struck jury, past and future, plus interest and costs.

### COUNT SEVEN
### Injunctive Relief

96.     Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

97.     Summerville requests that this Court enter an Order enjoining Defendants from continuing the conduct described above and requiring Defendants to take all steps necessary to remove their chemicals from Summerville's water supply and property.

98.     There is continuing irreparable injury to Summerville if an injunction does not issue, as Defendants' chemicals in its water supplies pose a continuing threat to Summerville, and there is no adequate remedy at law.

WHEREFORE PREMISES CONSIDERED, Summerville demands injunctive relief against Defendants,  requiring Defendants to remove their

27

chemicals from Summerville's water system and to prevent these chemicals from continuing to contaminate Summerville's water supply.

## COUNT EIGHT
### Attorneys' Fees and Expenses of Litigation

99.   Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

100.   Defendants have acted in bad faith, have been stubbornly litigious, and have caused Summerville unnecessary trouble and expense such that Summerville is entitled to recover its attorneys' fees and other expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT NINE
### Georgia Water Quality Control Act

101.   Summerville re-alleges Paragraphs 12 through 36 as if set forth fully herein.

102.   Under O.C.G.A. § 12-5-51, "any person who intentionally or negligently causes or permits any sewage, industrial wastes, or other wastes, oil, scum, floating debris, or other substance or substances to be spilled, discharged, or deposited in the waters of the state, resulting in a condition of pollution as defined by this article, shall be liable in damages to the state and any political subdivision

thereof for any and all costs, expenses, and injuries occasioned by such spills, discharges, or deposits."

103.   Each Defendant is a "person" within the meaning of O.C.G.A. § 12-5-51.

104.   Defendants intentionally or wantonly and/or negligently caused or permitted PFAS to be deposited into Raccoon Creek, resulting in a condition of pollution as defined by Georgia Code Title 12, Chapter 5, Article 2.

105.   PFAS are industrial wastes within the meaning of O.C.G.A. § 12-5-51.

106.   The amount of the damages assessed pursuant to O.C.G.A. § 12-5-51 "shall include, but shall not be limited to, any costs and expenses reasonably incurred by the state or any political subdivision thereof, as the case may be, in cleaning up and abating such spills, discharges, or deposits, and any costs and expenses reasonably incurred in replacing aquatic life destroyed by such spills, discharges, or deposits. . . . Damages to a political subdivision shall be recoverable in a civil action instituted by such subdivision."

107.   The City of Summerville is a municipal corporation organized and chartered under the laws of the State of Georgia.

108.   As a direct and proximate result of Defendants' conduct, Summerville has incurred, and will continue to incur, damages including, but not limited to, the costs and expenses set forth in <u>O.C.G.A. § 12-5-51</u>.

WHEREFORE PREMISES CONSIDERED, Summerville demands judgment for statutory damages assessed pursuant to <u>O.C.G.A § 12-5-51</u> against Defendants  in an amount to be determined by a struck jury, past and future, plus interest and costs.

## <u>COUNT TEN</u>
### Negligent Failure to Warn

109.   Summerville re-alleges Paragraphs 13 through 38 as if set forth fully herein.

110.   The PFAS Manufacturing Defendants have a duty to warn of the nonobvious dangers associated with PFAS and its disposal, and Defendants owe this duty to the users of their chemicals and those to whom they supply PFAS, including Defendant Mount Vernon. Defendants also owe this duty to Defendant Trion and Summerville as those who may be foreseeably, unreasonably harmed by PFAS.

111.   Defendants have a duty to warn of the dangers associated with PFAS that is commensurate with the inherently dangerous, harmful, injurious, environmentally persistent, water soluble, and highly mobile, toxic, and bio-accumulative nature of the chemicals.

30

112.   Defendants' failure to warn permitted, allowed, and/or otherwise resulted in the contamination of the Summerville public drinking water supply.

113.   The PFAS Manufacturing Defendants knew, foresaw, anticipated, and/or should have foreseen, anticipated, and/or known that their manufacture, sale, and supply of PFAS to Mount Vernon without adequate warnings of its dangers would likely result in the contamination of the Summerville public drinking water supply.

114.   Despite knowing, anticipating, and/or foreseeing the bio-persistent, bio-accumulative, toxic, and/or otherwise harmful and/or injurious nature of PFAS, Defendants failed to warn Mount Vernon, Trion, and Summerville of the dangers associated with PFAS.

115.   Defendants, through their acts and/or omissions as described in this Complaint, breached their duty by failing to warn Mount Vernon, Trion, and Summerville of the dangers associated with PFAS.

116.   It was reasonably foreseeable to Defendants that Summerville and its citizens would suffer the injuries and harm described in this Complaint by virtue of Defendants' breach of their duty to warn.

117.   But for Defendants' negligent failure to warn, Summerville would not have been injured or harmed. Furthermore, as described throughout this Complaint,

Defendants' acts and/or omissions were also done maliciously or with knowledge of a high degree of probability of harm and reckless indifference to the consequences to Summerville.

118.   Defendants' negligent conduct was the direct and proximate cause of the injuries and harm to Summerville as described herein.

119.   As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, and inactions, the City of Summerville has been caused to suffer, and will continue to suffer damage to real and personal property and losses for the costs of filtering PFAS from drinking water and other damages to be proved at trial.

## **RELIEF DEMANDED**

WHEREFORE, Summerville respectfully requests this Court grant the following relief:

a)  Enter Judgment in its favor;

b)  Award Summerville damages in an amount to be determined by a jury sufficient to compensate it for real property damage, out-of-pocket expenses, lost profits and sales, and future expenses;

c)  Issue an injunction requiring Defendants to abate their nuisance and/or otherwise remove their chemicals from Summerville's water supply and to

prevent these chemicals from continuing to contaminate Summerville's water supply;

d) Award punitive damages;

e) Award attorney fees and costs and expenses incurred in connection with the litigation of this matter; and

f) Award such other and further relief as this Court may deem just, proper, and equitable.

## **JURY DEMAND**

**SUMMERVILLE HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.**

Respectfully submitted this the _____ day of April, 2021.

                                   _____

J. Anderson Davis (Ga. Bar No. 211077)
BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP
P.O. Box 5007
Rome, Georgia 30162-5007
Ph# (706) 291-8853
Fax# (706) 234-3574
adavis@brinson-askew.com

                                   _____

Jeff Friedman *(Pro Hac Vice Pending)*
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242

Ph# (205) 278-7000
Fax# (205) 278-7001
jfriedman@friedman-lawyers.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

# Exhibit A

## RESOLUTION REGARDING CITY OF SUMMERVILLE WATER SUPPLY

WHEREAS, the City of Summerville, for many years has relied on Racoon Creek as a primary source for the supply of drinking water; and

WHEREAS, pollution has threatened the viability of the Racoon Creek as a continuing supply source for drinking water; and

WHEREAS, perfluorinated chemicals (known as PFCs, including but not limited to PFOS and PFOA) are man-made substances that do not occur naturally in the environment. Among other things, these chemicals are used to make fabrics and carpets stain-resistant. Some of the common trademark brand names for these chemicals include Teflon, Stain Master, and Scotch Guard. In May 2016, the EPA released a Health Advisory for consumption of Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA) setting a combined exposure limit for drinking water at 70 PPT.

On January 30, 2020, sample results came back showing combined levels of PFOA and PFOS in the finished water from the Racoon Creek treatment plant of 98 parts per trillion, which is above the U.S. EPA Health Advisory Level. In addition, combined levels of PFOA and PFOS in the Goodwin Hill Tank were found to be 92 parts per trillion.

WHEREAS, in light of the EPA Health Advisory, the City of Summerville, in consultation which the Georgia Environmental Protection Division (Georgia EPD), determined that to notify citizens of the water issues;

WHEREAS, the City of Summerville has taken the following actions:

1)    provided notice by mail to all customers;

2)    contacted local media, including newspaper, radio, and social media;

3)    provided direct notification to all elementary schools, day care facilities, and health care facilities;

4)    provided clean water distribution from a centralized fill station located at City Hall;

5)    investigated and is investigating treatment options for the Racoon Creek Treatment Plant, including a pilot study with carbon filters as a removal method of PFOA/PFOS;

6)    investigated and is investigating well sites and the Georgia EPD has given the City clearance to drill one production well; and

7)    investigated and is investigating increasing the usage of water sources other than the Racoon Creek Treatment Plant as alternative temporary measures.

WHEREAS, the release and presence of PFCs, including but not limited to PFOS/PFOA in the water supply for the City of Summerville tends to the immediate annoyance of the public in general, and is manifestly injurious to the public health or safety of the citizens and residents of the City of Summerville; and

WHEREAS, governments (including federal, state, and local) have borne substantial financial and societal burden related to this crisis and health threat and will incur costs for this nuisance for years to come into the foreseeable future; and

WHEREAS, upon information, research and belief, certain manufacturers and distributors knowing of the serious risks and adverse outcomes related to the use of their products, including their discharge into the water supply, purposefully set out to persuade regulators and the citizens that their products were safe and effective; and

NOW THEREFORE, BE IT RESOLVED, that the CITY COUNCIL of the CITY of SUMMERVILLE find and declare that there exists a public nuisance that threatens the health and safety of the community and the long-term sustainability of the water supply for the CITY OF SUMMERVILLE; and that the City of Summerville shall pursue such legal action as is available against such manufacturers, either by itself or in concert with others, and to the full extent available under the law.

IT IS SO RESOLVED, this _13_ day of _October_ , 2020.

CITY OF SUMMERVILLE, GEORGIA

By: _____
        HARRY HARVEY, Mayor

Attest: _____
        ANGIE WHITE, Clerk

640561.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing ***Complaint in Intervention*** has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record on this _____ day of April, 2021.

Gary A. Davis
James S. Whitlock
DAVIS & WHITLOCK, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com
**Attorneys for Plaintiffs**

Jeffrey J. Dean
Thomas Causby
MORRIS & DEAN, LLC
101 E. Crawford St.
Dalton, GA 30720
jeff@morrisanddean.com
tom@morrisanddean.com
**Attorneys for Plaintiffs**

Robert B. Remar
Katherine Leigh D'Ambrosio
Monica Perdomo Witte
Sterling Gardner Culpepper, III
ROGERS & HARDIN, LLP
2700 International Tower, Peachtree Center
229 Peachtree St., N.E.
Atlanta, GA 30303-1601
rbr@rh-law.com
kdambrosio@rh-law.com
mwitte@rh-law.com
gculpepper@rh-law.com
**Attorneys for 3M Company**

Mark Christian King
Harlan Irby Prater, IV
W. Larkin Radney, IV
Benjamin Phillip Harmon
Jackson R. Sharman, III
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 North 20th Street
Birmingham, AL 35203
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com
bharmon@lightfootlaw.com
jsharman@lfwlaw.com
**Attorneys for 3M Company**

Christopher L. Yeilding
BALCH & BINGHAM
1901 Sixth Ave. N., Ste 1500
Birmingham, AL 35203-4642
cyeilding@balch.com
**Attorney for Daikin America, Inc.**

Steven F. Casey
Kary Bryant Wolfe
William Emery Underwood
JONES WALKER
420 20th Street, N., Suite 1100
Birmingham, AL 35223
scasey@joneswalker.com
kwolfe@joneswalker.com
wunderwood@joneswalker.com
**Attorneys for Daikin America, Inc.**

Benjamin E. Fox
BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W.
3900 One Atlantic Center
Atlanta, GA 30309-3417
fox@bmelaw.com
**Attorney for Huntsman International, LLC**

Christopher Max Zygmont
John Curtis Allen
KAZMAREK, MOWREY, CLOUD, LASETER, LLP
Promenade, Suite 900
1230 Peachtree St., N.E.
Atlanta, GA 30309
mzygmont@kmcllaw.com
jallen@kmcllaw.com
**Attorneys for Pulcra Chemicals, LLC**

William Middleton Droze
TROUTMAN, PEPPER, HAMILTON, SANDERS, LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
william.droze@troutmansanders.com
**Attorney for Mount Vernon Mills, Inc.**

Ann Marie Alexander
Kimberly Council Sheridan
GORDON, REES, SCULLY, MANSUKHANI, LLP-IL
1 North Franklin Street
Chicago, IL 60606
aalexander@gordonrees.com
ksheridan@gordonrees.com
**Attorneys for Town of Trion, Georgia**

Craig K. Pendergrast
TAYLOR, ENGLISH, DUMA, LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
cpendergrast@taylorenglish.com
**Attorney for Ryan Dejuan Jarrett**

J. Anderson Davis (Ga. Bar No. 211077)
BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP
P.O. Box 5007
Rome, Georgia 30162-5007
Ph# (706) 291-8853
Fax# (706) 234-3574
adavis@brinson-askew.com

Jeff Friedman *(Pro Hac Vice Pending)*
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# (205) 278-7000
Fax# (205) 278-7001
jfriedman@friedman-lawyers.com

724956.2

39