# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

EARL PARRIS, JR., etc.,

        Plaintiff,

v.

3M COMPANY, et al.,

        Defendants.

Civil Action No.:
4:21-cv-00040-TWT

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT OR FOR INTERLOCUTORY APPEAL BY DAIKIN AMERICA, INC. ("DAI")**

    This putative class action presents two novel and unsettled questions of state law that either the Georgia Supreme Court or the Eleventh Circuit should definitively resolve before this case goes any further. If one of those courts does not resolve the state-law questions involved, there will be two parallel cases in this district, this case and *Johnson*, that hinge on the same questions of Georgia law and yet that will proceed differently from each other on the negligence claims, and differently from prior Georgia cases and from the national trend on the nuisance claims—on everything from discovery to class certification, and from summary judgment

1

ultimately to trial. Resolving the claims now not only avoids this result, but also has the potential to resolve Plaintiff's claims against DAI and the other Manufacturing Defendants. This case is the reason certification and interlocutory appeal exist.

*First*, this Court has split with another court in this District on a dispositive question of state negligence law. Recognizing that "no Georgia court has ever applied [Restatement] section 389 in [this kind of] case," this Court predicted that the Georgia Supreme Court would find a negligence duty because the Manufacturing Defendants continuously supplied PFAS to Mount Vernon. Doc. 136 ("Op.") 57–58. As this Court acknowledged, though, this was a different prediction than the one made by Judge Totenberg on the same allegations. *Id.* at 59 n.10. Confronted with this same Restatement-based theory, Judge Totenberg held that, because "the PFAS suppliers are not alleged to have polluted the water themselves," but instead merely to have "supplied the chemicals that were used by [*other*] defendants," these defendants owed no cognizable negligence duty under Georgia law. *Johnson v. 3M*, 2021 WL 4745421, at *49 (N.D. Ga. Sept. 20, 2021). No "authority from Georgia," she concluded, "establish[es] a duty on the part of a chemical supplier to protect an unknown third-party [Plaintiff], rather than its consumer [Mount Vernon], from harm resulting from the negligent use or disposal of the chemical." *Id.* Where there is any doubt as to the application of potentially dispositive state law, as there

2

manifestly is here, the Eleventh Circuit has directed district courts to certify the state-law question to the applicable state supreme court.  In the alternative, this open split within this district should be immediately resolved by the Eleventh Circuit.

*Second*, both this Court and *Johnson* made a prediction of state nuisance law that departed from what courts have recognized as a "clear national trend" foreclosing products-based public-nuisance actions against manufacturers for alleged nuisances created only *after* the manufacturers' product reaches a third party. *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 730 (Okla. 2021) (collecting cases).  The bulk of courts hold that "Manufacturing Defendants cannot be held liable on a theory of nuisance" when, as here, their "only role [i]s to introduce into the stream of commerce through lawful sales a lawful product that was used by the[ir] customers in a way that [resulted] in contamination" or some other alleged nuisance. *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, __ F. Supp. 3d. __, 2022 WL 36489, at *21 (S.D.N.Y. Jan. 4, 2022) (dismissing public-nuisance claims against PFAS manufacturers); *see also, e.g.*, *In re Paraquat Products Liability Litig.*, 2022 WL 451898, at *9 (S.D. Ill. Feb. 14, 2022) (same for paraquat manufacturers).  Here too, the Georgia Supreme Court or the Eleventh Circuit should have the opportunity to determine whether Georgia will join, or will reject, this

3

national trend and majority approach, which forecloses the products-based public-nuisance claims asserted here.

This Court should grant certification of both questions.

## LEGAL STANDARD

A federal district court may certify "questions of the laws of [Georgia] to the Supreme Court of [Georgia] for answers to the questions of state law." Ga. Code Ann. § 15-2-9(a); *see also* Ga. Const. Art. 6, sec. 6, para. 4. "Where there is *any doubt as to the application of state law*, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995) (emphasis added; footnote omitted); *see Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir. 2005); *Simmons v. Sonyika*, 394 F.3d 1335, 1339 (11th Cir. 2004).

Alternatively, a district court may certify for an interlocutory appeal to the Eleventh Circuit any non-final order when that order (1) concerns a controlling question of law; (2) for which there is substantial ground for difference of opinion; and (3) when an immediate appeal from the order may materially advance the

ultimate termination of the litigation. *See Carroll v. Tavern Corp.*, 2010 WL 11493748, at *2 (N.D. Ga. July 28, 2010).

## ARGUMENT

This case is a quintessential candidate for certification or interlocutory appeal. It involves "*Erie* guesses" on questions of state law that are plainly unsettled. Substantial discovery involving many parties, class-certification proceedings, summary judgment, and possibly trial all lie ahead—all of which might be obviated based on the ultimate determination of the state-law issues. The Georgia Supreme Court can resolve the issues definitively, and it, or the Eleventh Circuit in the alternative, can decide whether this Court or *Johnson* made the correct prediction on how the Georgia Supreme Court would decide Plaintiff's negligence claim and whether the Georgia Supreme Court would expand the law of nuisance, contrary to the national trend, to reach manufacturers of lawful products for alleged nuisances that occurred only *after* those products left the manufacturers' control.

**I. THE COURT SHOULD CERTIFY THE TWO UNSETTLED ISSUES OF STATE LAW TO THE GEORGIA SUPREME COURT.**

As this Court has written, certification of questions to the Georgia Supreme Court is appropriate when "there are no clear controlling precedents on th[e] issue" from that Supreme Court. *FDIC v. Loudermilk*, 984 F. Supp. 2d 1354, 1359–60 (N.D. Ga. 2013) (certifying question after denying a motion to dismiss). That

5

standard is indisputably met here as to two questions: (1) Does a manufacturer of a product owe a negligence-based duty to unknown third parties to protect them from another entity's negligent disposal of the manufacturer's product? And also, (2) can a manufacturer be liable in public nuisance for an alleged nuisance created only *after* the manufacturer sells its product?

### A. This Court Should Certify the Dispositive Negligence Question.

The Complaint asserts common-law negligence claims, alleging that the Manufacturing Defendants sold certain chemicals to defendant Mount Vernon Mills; that Mount Vernon Mills used them; and that an extended chain of attenuated events involving the post-use treatment and disposal of wastewater by still others ultimately resulted in alleged harm. Both this Court and *Johnson* recognized that "no Georgia court"—far less the Georgia Supreme Court—has found a negligence duty on these allegations. Op.56; *see Johnson*, 2021 WL 4745421, at *49. This alone makes certification proper, as this is a novel and unsettled issue.

The intradistrict split on these same allegations makes certification compelling. For Judge Totenberg, the fact that there was not "any authority from Georgia establishing a duty on the part of a chemical supplier to protect an unknown third-party, rather than its consumer, from harm resulting from the negligent use or disposal of the chemical" meant that she had to grant the Manufacturing Defendants'

motion to dismiss for lack of duty. *Johnson*, 2021 WL 4745421, at *49. Notably, the plaintiff in *Johnson*, like Plaintiff here, relied on the Restatement § 389 and "rel[ied] on authority outside of Georgia," but Judge Totenberg noted that Plaintiffs "must point to 'a duty imposed by a recognized common law principle declared in the reported decisions of Georgia appellate courts.'" *Id.* (quoting *Dutt v. Mannar & Co., LLC*, 841 S.E.2d 132, 134 (Ga. Ct. App. 2020)); *see* Plaintiff's Response in Opposition to the Supplier Defendants' Motion to Dismiss the Third Amended Complaint at 11–13, *Johnson v. 3M*, No. 4:20-cv-00008 (N.D. Ga. Mar. 10, 2021), ECF No. 513. The Court here, however, found a negligence-based duty under this same Restatement-based theory, even as it acknowledged "no Georgia court has ever" done so in this context. Op.56.[1] There is thus a direct intradistrict split.

The Georgia Supreme Court should have the opportunity to decide which federal court, this one or *Johnson*, made the correct *Erie* guess about the scope of

---

[1] *Maynard v. Snapchat*, __ S.E.2d __, 2022 WL 779733 (Ga. Mar. 15, 2022), in which the Georgia Supreme Court recently found a products-liability-based "design duty," does not come close to settling the traditional or common-law negligence question presented here. *See* Op.58 (finding the case "easily distinguishable"). Most critically, Plaintiff's Complaint here does not bring a products-liability claim—and for good reason: If Plaintiff did assert one, he would have to plead and show a "defectively designed" product; point to an "alternative product design[]" that would have made the product safer; and pass the "risk-utility analysis" (not to mention overcome the statutes of limitation and repose and the other products-liability defenses). *Maynard*, 2022 WL 779733, at *3–4. If that is the negligence claim Plaintiff is now asserting, he will plainly lose. And, at any rate, there is a difference between finding a duty based on how someone *uses* a product, as compared to how someone *disposes* of it. *See id.* at *5 ("design duty" from "another person's *use*"); Restatement § 389 (referring expressly to "use").

Georgia negligence law. As this Court suggested in *Loudermilk*, and as many other courts have noted, it is the province of the state supreme court, rather than federal courts, to "create or expand" state law. *Fid. Ins. Co. v. Foster*, 808 F. Supp. 2d 1315, 1321 (S.D. Fla. 2011); *see Cargill, Inc. v. Offshore Logistics, Inc.*, 615 F.2d 212, 215 (5th Cir. 1980) (Eleventh Circuit precedent); *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1298–99 (N.D. Ga. 2005). At least, federal courts should not create or expand state law without giving the Georgia Supreme Court the chance to review the issue. *See Mosher*, 52 F.3d at 916–17; *Loudermilk*, 984 F. Supp. 2d at 1359–60. In the past, when this Court has authored an opinion "disagree[ing] with [His Honor's] able and learned friends and colleagues" on a question of Georgia law, the Court has "certif[ied] the issue of unsettled law to the Supreme Court of Georgia." *Loudermilk*, 984 F. Supp. 2d at 1359. It should do so here too.

The factors for certification cut the same way. As evidenced by the clear split in this district on these same allegations and claims, the question is a close one for which existing sources of state law apparently do not provide sufficient guidance—which is the "most important factor[] in deciding to certify." *Blackburn v. Shire US Inc*, 18 F.4th 1310, 1322 (11th Cir. 2021); *see, e.g.*, *Bibbs v. Toyota Motor Corp.*, 2017 WL 11629193, at *2 (N.D. Ga. Aug. 9, 2017) (after issuing its opinion, certifying questions to Georgia Supreme Court for these reasons).

8

Soliciting the Georgia Supreme Court's opinion would also, "in the long run[,] save time, energy, and resources and help[] build a cooperative judicial federalism," *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)—the other factors this Court considers. "One aspect of this is the likelihood of the recurrence of the particular legal issue." *State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 n.29 (5th Cir. 1976). Here we know this very issue is already recurring in other ongoing PFAS cases, including *Johnson*. *See also, e.g.*, *City of Rome v. 3M Co. et al.*, No. 19-cv-02405 (Ga. Superior Ct.) (pending motion to dismiss by Daikin America, Inc.). Another aspect is the "importance of the issue and the strong interests of the Georgia courts in this area," and the Eleventh Circuit has held that similar "property damage" and tort cases more than qualify. *St. Joseph Hosp. v. Celotex Corp.*, 854 F.2d 426, 429 & n.5 (11th Cir. 1998) (per curiam) ("asbestos property damage cases"); *see also, e.g.*, *Lowe's Home Ctrs., Inc. v. Gen. Elec. Co.*, 381 F.3d 1091 (11th Cir. 2004); *Doyle v. Volkswagenwerk Aktiengelellschaft*, 81 F.3d 139 (11th Cir. 1996); *Corp of Mercer Univ. v. Nat'l Gypsum Co.*, 832 F.2d 1233 (11th Cir. 1987); *Bullard v. MRA Holding, LLC*, 890 F. Supp. 2d 1323 (N.D. Ga. 2012). And still another aspect—conserving judicial and party resources—supports certification too, not least because this case is a putative class action involving "considerable amounts of money." *St. Joseph Hosp.*, 854 F.2d at 429. Before this case goes any further, the Georgia

Supreme Court should weigh in on whether this Court or *Johnson* correctly predicted Georgia negligence law.

### B. This Court Should Certify the Dispositive Public-Nuisance Question.

Likewise, "there are no clear controlling precedents" from the Georgia Supreme Court on the nuisance issue, *Loudermilk*, 984 F. Supp. 2d at 1359–60—namely, whether a manufacturer can be liable for a nuisance created by its customers' use and disposal of the manufacturer's products. Courts in Georgia are split on this issue too. And courts around the country, applying their respective states' laws, have also come to varying conclusions. This question is thus another prime candidate for certification to the definitive interpreter of state law.

There is a "clear national trend" to refuse to "allow products-based public nuisance claims." *Johnson & Johnson*, 499 P.3d at 730 (collecting cases). These courts hold, as a matter of law, that "[a] manufacturer does not have control of its product once it is sold," meaning it cannot be held liable for a nuisance created by the products' use or disposal. *Id*. at 727–29. The majority rule is that "[a] manufacturer who produces a substance that, after being sold, creates or contributes to a nuisance," including the nuisance of PFAS in the water, "cannot be liable for the nuisance-causing activity after the sale." *SUEZ Water*, __ F. Supp. 3d at __, 2022 WL 36489, at *18; *see also, e.g.*, *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*,

10

984 F.2d 915, 920 (8th Cir. 1993) (manufacturer of asbestos not liable in nuisance after point of sale even though the asbestos caused a nuisance); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (manufacturer could not be held liable for its customer's "not safely disposing of the product"); *People v. Purdue Pharma L.P.*, 2021 WL 5227329, at *8 (Cal. Super. Ct. Nov. 1, 2021) (same for opioids). These courts have "been wary . . . of extending public nuisance law to cover claims regarding non-defective products that are legally sold" and have therefore refused to hold a manufacturer liable for its "choice to carry out its daily business activities." *Paraquat*, 2022 WL 451898, at *9–11.

Some Georgia courts follow this national trend. One court, for example, held that an asbestos manufacturer cannot be held liable in nuisance—even with "knowledge that the use of asbestos in buildings was hazardous"—because the manufacturer had no "legal right" to "go into [Plaintiff's] buildings and remove the[] products" after it sold the asbestos. *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 1986 WL 12447, at *4–7 (M.D. Ga. Mar. 9, 1986). So too for a "vendor of chemicals" that, as with these PFAS Manufacturing Defendants, did not allegedly "arrange for or control the[] [chemicals'] disposal" at its customer's property. *Jordan v. S. Wood Piedmont Co.*, 805 F. Supp. 1575, 1580, 1582 (S.D. Ga. 1992);

*accord, e.g.*, *Diffley v. Marshall's at E. Lake*, 489 S.E.2d 123, 124 (Ga. Ct. App. 1997) (not liable "despite defendants' alleged knowledge of the [nuisance]").

This Court and *Johnson*, however, followed the minority rule in holding that a manufacturer *can* be liable for a products-based nuisance that occurred only after the point of sale. These minority courts reason that the manufacturer "could refuse to sell PFAS except to customers that have established and complied with proper disposal methods." *E.g.*, Op.87; *see also* Op.59 n.9. *But see, e.g.*, *Paraquat*, 2022 WL 451898, at *9–11. This view of "control" appears novel among Georgia courts.

Again here, the Georgia Supreme Court, rather than a federal court sitting in diversity, should decide whether Georgia will follow or reject the national trend. No one, not the parties and not the Court, has cited a Georgia Supreme Court case, far less "clear controlling precedents in the decisions of [that court]," about a manufacturer's liability for an alleged nuisance that occurs only after the point of sale. Ga. Code Ann. § 15-2-9(a). The authoritative arbiter of Georgia state law—the Georgia Supreme Court—can settle whether Georgia will follow the clear national trend or the approach of this Court and *Johnson*, carrying with it all the benefits of certification discussed above, *see supra* at pp. 8–9.

\* \* \*

The Eleventh Circuit has encouraged certification in circumstances like these—and has "employed the certification procedure more than any other circuit," recognizing its "numerous benefits." *Pittman v. Cole*, 267 F.3d 1269, 1290 (11th Cir. 2001) (remanding and ordering the district court to certify questions of state law); *see also Gulfstream Park Racing Ass'n*, 399 F.3d at 1279; *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997). This case offers the ideal opportunity to certify the two unsettled issues of Georgia law.

## II. ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR APPEAL UNDER § 1292(B).

If this Court does not certify these questions of law to the Georgia Supreme Court, it should certify its order for interlocutory appeal. For many of the reasons discussed above, all three requirements for § 1292(b) certification are met here: (1) the questions presented are controlling questions of law; (2) there is an obvious difference of opinion, even among courts in this district on these same allegations; and (3) resolution of the questions could require dismissal of all Plaintiffs' claims against DAI and the other Manufacturing Defendants, and it would materially advance the litigation as a whole.

***Controlling questions of law.*** A "controlling question of law" is one that is "a pure question of law, which [is] controlling of at least a substantial part of the case." *McFarlin*, 381 F.3d at 1264. Both the negligence and nuisance questions are

13

pure questions of law controlling not just substantial parts of the case, but the whole thing. At this stage of the litigation, DAI is accepting Plaintiff's allegations as true, thus eliminating any factual questions for the appeal. The only question is whether, as a matter of law, those allegations state a claim for which relief can be granted—which is a pure question of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674–75 (2009). And if DAI is correct, then at least a "substantial part of the [complaint]," if not the whole thing, will be dismissed against it and the other Manufacturing Defendants. *McFarlin*, 381 F.3d at 1264.

***Substantial ground for difference of opinion.*** Given the express disagreement between this Court and *Johnson* on "duty"—the same issue and on materially identical allegations—this element is easily satisfied too. *See Georgia State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013) (intra-circuit district court split). And there is more than that here. As explained above, there is "no controlling Eleventh Circuit [or Georgia Supreme Court] precedent, conflicting cases in other circuits, *and* conflicting decisions by the District Judges of this Court" on both negligence and nuisance. *Carroll*, 2010 WL 11493748, at *1 (Thrash, J.) (emphasis added) (certifying case under § 1292(b)). On the nuisance issue, for example, courts are currently and actively debating this issue, including in the PFAS context, and they are coming to varying conclusions. *See,*

*e.g.*, *Paraquat*, 2022 WL 451898, at *9–11; *SUEZ Water*, 2022 WL 36489, at *17–23 (collecting cases). These pressing and unsettled "issue[s] deserve[] [a] look by the Eleventh Circuit," if not the Georgia Supreme Court. *Williams v. AFC Enters., Inc.*, 2003 WL 24100302, at *4 (N.D. Ga. Nov. 20, 2003) (Thrash, J.).

***Materially advance the litigation.*** The requirement that an interlocutory appeal materially advance the termination of the litigation is met as well—because "resolution of [these] controlling legal question[s] would serve to avoid a trial or otherwise substantially shorten the litigation," *McFarlin*, 381 F.3d at 1259, and, at minimum, "the volume of litigation could be substantially reduced," *Benson v. Enter. Leasing Co. of Orlando, LLC,* 2021 WL 1078410, at *8 (M.D. Fla. Feb. 4, 2021). An interlocutory appeal could completely knock out all of Plaintiff's claims against the Manufacturing Defendants, which alone satisfies this prong. *See Dale v. Stephens Cnty. (Ga.) Sch. Dist.*, 2006 WL 8433912, at *2 (N.D. Ga. June 8, 2006). And it would materially shorten the litigation as a whole, "sav[ing] significant time and effort on the part of both the Parties and the Court," including because the issues for discovery and trial would be significantly narrowed. *Parnell v. W. Sky Fin., LLC*, 2014 WL 12628523, at *2 (N.D. Ga. May 29, 2014). If the questions on appeal are resolved in DAI's favor, many issues specific to the Manufacturing Defendants, such as their knowledge and internal policies, would no longer be litigated by the parties.

# **CONCLUSION**

For these reasons, this Court should certify the following questions of law to the Georgia Supreme Court under Ga. Code Ann. § 15-2-9(a):

1. Does a manufacturer owe a common-law duty to unknown third parties to protect them from another entity's negligent disposal of the manufacturer's product?

2. Can a manufacturer be liable for an alleged nuisance caused by the manufacturer's product that occurs only *after* the sale of the product?

If this Court does not certify those questions to the Georgia Supreme Court, the Court should certify its order denying DAI's motion to dismiss for interlocutory appeal under § 1292(b).

Dated: April 27, 2022

Respectfully submitted,

 */s/ William E. Underwood*
William E. Underwood
    Georgia Bar No. 401805
JONES WALKER LLP
1360 Peachtree Street
Suite 1030
Atlanta, GA 30309
Telephone: (770) 870-7506
Email: wunderwood@joneswalker.com

*/s/ Theodore M. Grossman*
Theodore M. Grossman, *Pro Hac Vice*
JONES DAY
250 Vesey Street
New York, New York 10281
Phone: (212) 326-3939
Fax:    (212) 755-7306
Email:  tgrossman@jonesday.com

| | |
|---|---|
| Louis A. Chaiten, *Pro Hac Vice* forthcoming<br>James R. Saywell, *Pro Hac Vice* forthcoming<br>JONES DAY<br>North Point<br>901 Lakeside Ave East<br>Cleveland, Ohio 44114<br>Phone: (216) 586-3939<br>Email: lachaiten@jonesday.com<br>jsaywell@jonesday.com | Richard H. Deane, Jr.<br>   Georgia Bar No. 214875<br>JONES DAY<br>1221 Peachtree Street, N.E.,<br>Suite 400<br>Atlanta, Georgia 30361<br>Phone: (404) 521-3939<br>Email: rhdeane@jonesday.com |

*Counsel for Defendant*
*Daikin America, Inc.*

# **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

*/s/ Theodore M. Grossman*
Theodore M. Grossman, *Pro Hac Vice*

# **CERTIFICATE OF SERVICE**

I certify that on April 27, 2022, I served the foregoing on all parties by filing on CM/ECF.

></br>

*/s/ Theodore M. Grossman*
Theodore M. Grossman, *Pro Hac Vice*

*Counsel for Defendant*
*Daikin America, Inc.*