IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR., individually, and
on behalf of a Class of persons similarly
situated,

    *Plaintiff,*

CITY OF SUMMERVILLE,
GEORGIA,

    *Intervenor-Plaintiff,*

    v.

3M COMPANY, et al.,

    *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:21-cv-40-TWT

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DAIKIN AMERICA, INC'S MOTION TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT OR FOR INTERLOCUTORY APPEAL

Plaintiff Earl Parris Jr., by and through undersigned counsel, submits this Response in Opposition to Defendant Daikin America, Inc. ("DAI")'s Motion to Certify Questions to the Georgia Supreme Court or For Interlocutory Appeal [Docs. 157, 157-1], and respectfully requests that the Court deny DAI's motion in its entirety.

## PRELIMINARY STATEMENT

Contrary to being a "quintessential candidate for certification or interlocutory appeal," DAI's motion fails because this Court evaluated the relevant Georgia case

law as applied to the factual allegations in Plaintiff's Amended Complaint and came to principled conclusions on both questions raised based on sufficient controlling Georgia precedent. The fact that another court came to a different conclusion on the negligence question in a different case does not require certification or appeal, especially because the *Johnson* Court did not address the same legal authority as this Court. On the public nuisance question, DAI simply argues that both this Court and the *Johnson* Court were wrong based on a fictional "national trend" that has no relevance to the facts of either case. Of course, DAI's disagreement with the Court's decision is not grounds for either certification or interlocutory appeal.

Significantly, neither question is determinative of the case, as required for certification to the Georgia Supreme Court, or involves a controlling question of law for which an interlocutory appeal would materially advance the ultimate termination of the litigation. The question of DAI's general duty in negligence is not even determinative of Plaintiff's negligence claims, because this Court also found Plaintiff's negligent failure to warn claim against DAI states a cause of action, which will rely on much of the same evidence as Plaintiff's general negligence claim. Nor would certification or piecemeal appeal of the Court's public nuisance decision advance the litigation because the other Defendants and other state and federal law claims would remain in the case.

The worst-case scenario is not the one envisioned by DAI of two cases in the same district concerning pollution of different water supplies with two common defendants proceeding on slightly different legal tracks. Certification or interlocutory appeal in this case would not affect the *Johnson* case, which is proceeding through discovery and could well be resolved before the questions are decided by either the Georgia Supreme Court or the Eleventh Circuit Court of Appeals. The true worst-case scenario is that certification or interlocutory appeal would only further delay a case that has been pending for over a year without the commencement of discovery.

## STATEMENT OF FACTS

"At this stage of the litigation, DAI is accepting Plaintiff's allegations as true, thus eliminating any factual questions for the appeal." [Doc. 156-1 at 14]. Despite this statement, DAI's framing of the factual issues in its motion is misleading because it ignores Plaintiff's allegations underpinning the Court's decisions on negligence and public nuisance.

The factual allegations the Court relied upon in denying DAI's motion to dismiss the negligence claim on the issue of duty include:

the Manufacturing Defendants (1) have known for decades that PFAS are toxic and persistent in humans and other animals (Am. Compl. ¶¶ 54-59, 64-67, 70), (2) have long been aware that conventional wastewater treatment processes are ineffective, resulting in PFAS discharges to surface waters and accumulation in sewage sludge (id. ¶ 60-61), and (3) notwithstanding these known risks of harm, have

3

> supplied PFAS to Mount Vernon without taking necessary precautions
> to prevent PFAS from contaminating surface waters such as Raccoon
> Creek and municipal water supplies. (Id. ¶ 163.)

[Doc. 136 at 57-58]. This is in stark contrast to DAI's framing of the issue stating

that DAI merely "sold certain chemicals to defendant Mount Vernon Mills; that

Mount Vernon Mills used them; and that an extended chain of attenuated events

involving the post-use treatment and disposal of wastewater by still others ultimately

resulted in alleged harm." [Doc. 156-1 at 6].

Similarly, the Court cited the factual allegations it relied upon in denying

DAI's motion to dismiss the public nuisance claim on the issue of DAI's control

over the cause of the nuisance:

> the Manufacturing Defendants have for decades sold PFAS to Mount
> Vernon "without adequate warnings of their dangers when they knew
> or should have known [the PFAS] would be improperly disposed of and
> discharged into the Trion WPCP." (Am. Compl. ¶ 54; see also id. ¶¶
> 60-61, 197.) Similarly, the Plaintiff alleges that Mount Vernon has
> discharged wastewater containing PFAS into the Trion WPCP in a
> manner that it knew or should have known would result in
> environmental contamination. (Id. ¶¶ 35, 70-71, 198.) The
> Manufacturing Defendants and Mount Vernon could thus be liable, at
> a minimum, for continuing or maintaining the nuisance given that they
> have a legal right to abate the PFAS pollution but have failed to take
> appropriate remedial steps in the Plaintiff's view. For example, as the
> Johnson court proposed, the Manufacturing Defendants could refuse to
> sell PFAS except to customers that have established and complied with
> proper disposal methods . . .

[Doc. 136 at 86-87]. Instead, DAI, ignoring these important facts, frames the issue

in broad brush as whether "[a] manufacturer who produces a substance that, after

being sold, creates or contributes to a nuisance," can be liable for the nuisance-causing activity. [Doc. 157-1 at 10].

It is insulting to the Court that DAI ignored the Court's careful articulation of the factual allegations relied upon in deciding these issues and, instead, reframed the issues in a way intended to make the Court's decision seem untethered from the facts and, thus, arbitrary in its legal analysis.

## ARGUMENT

## I.   THE COURT SHOULD DENY DAI'S REQUEST TO CERTIFY THE PROPOSED QUESTIONS TO THE GEORGIA SUPREME COURT.

Federal courts have the discretion to certify novel and unsettled questions of state law to the Supreme Court of Georgia "for an answer on determinative state law issues." *Henry's Louisiana Grill, Inc. v. Allied Ins. Co.,* 495 F.Supp.3d 1289, 1292 (N.D. Ga. 2020) (citing O.C.G.A. § 15-2-9). However, courts should only certify such questions if they have "*substantial doubt* regarding the status of state law." *Id.* (emphasis added) (internal citation omitted). As evidenced by this Court's Opinion and Order ("Order") denying DAI's motion to dismiss [Doc. 136], and as discussed further below, there is not substantial doubt regarding the status of Georgia law on the issues raised, and this Court relied upon sufficient sources of state law to make well-reasoned and principled conclusions as to Georgia law.

DAI cites *Mosher v. Speedstar Div. of AMCA, Int'l, Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995), for the proposition that federal courts should certify questions to

the Georgia Supreme Court when they have "*any* doubt" as to the application of state law (emphasis added). [Doc. 157-1 at 4]. However, more recent Eleventh Circuit opinions have not embraced the "any doubt" standard and, instead, used the terms "substantial doubt" or "significant doubt." *See, e.g., Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016, 1025 (11th Cir. 2016); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 816, n.2 (11th Cir. 2010); *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996). *See also Arnold v. State Farm Fire and Casualty Co.*, 2017 WL 5451749, at *4-5 (S.D. Ala. Nov. 14, 2017) (for numerous reasons, the "any doubt" standard from *Mosher* cannot be "taken at face value").

Generally, courts should only certify questions to a state supreme court "with restraint and after the consideration of a number of factors." *City of Rome, Georgia v. Hotels.com, L.P.,* 2012 WL 12897979, at *4 (N.D. Ga. Aug. 8, 2012) (quoting *Escareno v. Noltina Crucible and Refractory Corp.,* 139 F.3d 1456, 1461 (11th Cir. 2008)). These factors are: (1) the closeness of the question and the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion; (2) the degree to which considerations of comity are relevant; and (3) the practical limitations of the certification process. The first factor is the most important. *See, e.g., One Georgia, Inc. v. Carr*, 2022 WL 1284057, at *8 (N.D. Ga. April 14, 2022) (citing *Royal Cap. Dev., LLC v. Md. Cas. Co.,* 659 F.3d 1050, 1055

(11th Cir. 2011)). Thus, where there are sufficient sources of state law "to allow a principled rather than conjectural conclusion," the certification process should not be invoked. *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.3d 266, 274-75 (5th Cir. 1976) (11th Circuit precedent); *see also North River Ins. Co. v. Gibson Technical Services,* 2015 WL 11236554, at *4 (N.D. Ga. June 15, 2020) (defendant failed to show "sufficiently close question" to warrant certification, thus "the Court need not consider the other factors").

Additionally, DAI's proposed questions are not "determinative of the case" and, thus, fail to meet an important Georgia statutory criterion for certification. *Echols v. Georgia Piedmont Technical College,* 2021 WL 870717, at *1 (N.D. Ga. March 9, 2021) (declining to adopt portion of Report and Recommendation recommending certification of question to Georgia Supreme Court because question was "not outcome determinative of the case"); *see also Davis O'Leary VI, LTD v. Peterson Contractors, Inc.,* 2018 WL 10761924, at *3 (N.D. Ga. Dec. 7, 2018) (declining to certify questions because they were "not determinative of the case and thus do not meet Georgia's statutory requirements for certification"). As discussed below, DAI's proposed certification would not be determinative of the case even on the issue of negligence, because the Court also upheld Plaintiff's negligent failure to warn claim, which would be unaffected by resolution of the question of DAI's general duty to Plaintiff under Georgia negligence law.

7

In the end, certification would only serve to unnecessarily delay this case which has been pending for over a year without the commencement of discovery.

**A.   DAI's Proposed Questions Do Not Warrant Certification.**

    1.   <u>The Court Came to a Principled Conclusion on DAI's Negligence Question</u>.

In its Order, the Court came to a principled, rather than conjectural, conclusion on the question of the legal duty of DAI and the other PFAS manufacturers/suppliers based on sufficient controlling Georgia precedent. The Court's conclusion was not "an *Erie* guess," as defendant asserts, and was not a creation or expansion of state law.

Instead, the Court explained in detail that Georgia courts have, in applying Section 389 of the Second Restatement of Torts, "found that product suppliers have a duty to protect third parties from reasonably foreseeable harm that occurs during the normal use of their products." [Doc. 136 at 54; *see also id.* at 54-57 (discussing *Ogletree v. Navistar Int'l Transportation Corp,* 194 Ga. App. 41 (1989) and *Dupree v. Keller Indus., Inc.,* 199 Ga. App. 138 (1991))]. While noting that no Georgia court has applied Section 389 in "an environmental pollution case," the Court took direction from the Georgia courts that have applied Section 389 in similar circumstances involving manufacturers. Just because the exact factual circumstances have not been decided by a Georgia court doesn't mean that a federal court is required to certify a decision to the Georgia Supreme Court. The Court also

considered decisions from other jurisdictions which it found "persuasive as to how a Georgia court might evaluate this action," finding the court's interpretation of Section 389 persuasive in *Henry v. St. Croix Alumina, LLC,* 2007 WL 6030275 (D. V.I. Aug. 10, 2007). [Doc. 136 at 56].[1]

Based on the foregoing authority, this Court concluded that Plaintiff had identified a "specific, established legal duty under Georgia law" on the part of the PFAS Manufacturing Defendants, and specifically that:

> a duty arose where the Manufacturing Defendants continuously supplied PFAS to Mount Vernon with knowledge that the chemicals were unlikely to be made reasonably safe in their regular use and could foreseeably contaminate surface waters and downstream water supplies.

[Doc. 136 at 57]. Plainly, this Court did not have "substantial doubt" regarding the status of state law as to DAI's legal duty based on the facts alleged and likewise did not believe that this presented a close question. Thus, the first and most important factor weighs against certification. *See, e.g., Smigiel v. Aetna Cas. & Sur. Co.,* 785 F.2d 922, 924 (11th Cir. 1986) ("We find that we are sufficiently educated by the available Florida authority"); *Alliant Tax Credit 31, Inc. v. Murphy,* 2014 WL

---

[1] District courts, in declining to certify questions to the Georgia Supreme Court, have likewise found authority from other jurisdictions persuasive, *particularly when* the question turns on application of uniform statutes or legal authority, like Section 389 of the Second Restatement here. *See, e.g., Alliant Tax Credit 31, Inc. v. Murphy,* 2014 WL 3955594, at *2 (N.D. Ga. Aug. 12, 2014) ("because GUFTA is based on a *uniform* statute, authority from other jurisdictions … is highly persuasive") (emphasis in original).

3955594, at *2 (N.D. Ga. Aug. 12, 2014) ("the Court finds it has been sufficiently educated through the Parties' briefing and available authority to make a principled decision"); *Boone v. Corestaff Support Services, Inc.,* 805 F.Supp.2d 1362, 1366-67 (N.D. Ga. 2011) (denying motion for certification because existing Georgia authority allowed court "to make a principled decision").[2]

Still, Daikin contends that certification of its negligence question is "compelling" solely because this Court's decision on DAI's legal duty differed from how Judge Totenberg decided that issue in *Johnson v. 3M,* 2021 WL 4745421 (N.D. Ga. Sept. 20, 2021). However, DAI ignores the fact that this Court expressly recognized this disagreement and distinguished its holding from *Johnson*:

> In so holding, the Court recognizes that it has reached a different conclusion than did the *Johnson* court in this district, which held that PFAS suppliers do not owe a duty to protect third parties who are harmed by others' negligent use or disposal of PFAS. 2021 WL 4745421, at *49. *However, Johnson did not have the occasion to address section 389 of the Second Restatement or the Georgia case law adopting a duty thereunder*. *See generally id.* at *44-49.

[Doc. 136 at 59, n. 10 (emphasis added)]. Because the *Johnson* Court did not address Section 389 and Georgia case law adopting a duty thereunder, the status of any "intra

---

[2] While this should be the end of the certification inquiry, it is important to note that certification would only serve to unnecessarily delay this case, which has been pending for over a year without the commencement of discovery. *See, e.g., Smigiel,* 785 F.2d at 924 ("This court must take into account the likelihood of further delay in this case"); *Shevin,* 526 F.2d at 275-76 (certification process takes "one year at the least," and finding discovery should not be delayed given time since filing of the case); *City of Rome,* 2012 WL 12897979, at *5 (the certification process "would unnecessarily delay resolution of this case").

district" split is uncertain given the differing legal grounds on which this Court and *Johnson* based their decisions. Regardless, an intra district split in no way compels certification when the law on an issue is sufficiently settled, as it is here. *See, e.g., Osborne Construction Co. v. Zurich American Ins. Co.,* 2019 WL 859220, at \*1-2 (W.D. Wash. Feb. 22, 2019).

2.  <u>DAI's Public Nuisance Question Does Not Implicate an Issue of Unsettled State Law.</u>

Certification of a question to the Georgia Supreme Court is only appropriate for "novel and unsettled" issues of state law. *Henry's Louisiana Grill, Inc.*, 495 F.Supp.3d at 1292; *see also Echols,* 2021 WL 870717, at \*1 ("a question should only be certified on an issue on unsettled state law") (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 390-91 (1974)). As demonstrated by this Court's Order and the *Johnson* decision, PFAS Manufacturer liability for public nuisance is not an unsettled issue of Georgia law, and DAI's nuisance question, like its negligence question, should not be certified.

Both this Court and the *Johnson* court found that the respective Plaintiff's had stated a claim for public nuisance under controlling Georgia law against DAI and the other PFAS Manufacturing Defendants. [Doc. 136 at 87]; *Johnson,* 2021 WL 4745421, at \*64. This Court, after discussing the "control over the cause of the harm" element under pertinent Georgia precedent, found:

> In sum, where a defendant has knowledge of and a right to abate a dangerous situation, but he fails to do so within a reasonable time, his actions or omissions may constitute a nuisance.

[Doc. 136 at 84; *see also id.* at 84-87 (discussing *Fielder v. Rice Construction Co., Inc.,* 239 Ga. App. 362 (1999) and analogizing *Fielder* to the case at hand)]. Likewise, in *Johnson,* Judge Totenberg relied on *Fielder* and *Citizens & S. Trust Co. v. Phillips Petroleum Co., Inc.,* 385 S.E.2d 426 (Ga. App. 1989), to find that the Plaintiff there had adequately pled that DAI's actions "in continuously selling and supplying the PFAS chemicals, while knowing of the downstream contamination, were a 'cause or concurrent cause' of the creation and continuation of the nuisance." *Johnson,* 2021 WL 4745421, at *64.

Faced with both district courts' reliance on settled Georgia law, DAI attempts to manufacture a "clear national trend" based on authority from other jurisdictions that in no way demonstrates Georgia law is unsettled on this issue. To the extent DAI asserts some Georgia courts follow this manufactured "trend," it relies on the exact same cases that this Court (and the *Johnson* court) have already rejected. *See* [Doc. 157-1 at 11-12 (citing *Corp. of Mercer Univ. v. Natl' Gypsum Co,* 1986 WL 12447 (M.D. Ga. Mar. 9, 1986) and *Jordan v. S. Wood Piedmont Co.,* 805 F. Supp. 1575 (S.D. Ga. 1992))]. This Court summarily dismissed these authorities, finding that they "do not support such an expansive liability shield for manufacturers and, in any event, are distinguishable from the facts of this case." [Doc. 136 at 85].

Similarly, in *Johnson,* Judge Totenberg found *Mercer* and *Jordan* distinguishable

from the facts of that case, and further found as to DAI's argument:

> Under [DAI's] construction of the 'control' requirement, the supplier
> in *Phillips Petroleum* could not have been liable as, according to [it],
> '[t]here can be no claim for nuisance against manufacturers whose
> products allegedly cause harm after they left the manufacturers'
> control.' *This is clearly not an accurate representation of Georgia law.*

*Johnson,* 2021 WL 4745421, at *65 (emphasis added).

Furthermore, the few cases cited by DAI do not represent a national trend for

the public nuisance issue in this case. *State ex rel. Hunter v. Johnson & Johnson*,

499 P.3d 719 (2021), was an Oklahoma state court opioid case decided based on the

limited nature of Oklahoma's public nuisance statute, which does not persuasively

establish a national trend applicable to PFAS cases, such as this case. *See In re Nat'l*

*Prescription Opiate Litig*., 2022 WL 6761219, at *17 (N.D. Ohio Mar. 7, 2022)

(distinguishing Ohio's public nuisance statute from Oklahoma's statute as applied

in *Hunter*). In *SUEZ Water New York, Inc. v. E.I. du Pont de Nemours and Co.*, 2022

WL 36489, at *22 (S.D. N.Y. Jan. 4, 2022), while the alleged nuisance was caused

by PFAS, the court's decision on public nuisance is distinguishable because there

was no allegation that the defendants had any knowledge of or control over the

manner in which the end users of the PFAS products disposed of the products. *See*

*also In re Paraquat Products Liability Litig.*, 2022 WL 451898, at *11 (S.D. Ill. Feb.

14, 2022) (finding Defendants "exerted no control over Paraquat at the time of its

13

application"). Other courts have rejected the argument that a chemical manufacturer cannot be found liable for public nuisance where it did not control the nuisance-creating discharges. *See, e.g., Weirton Area Water Bd. v. 3M Co*., No. 5:20-CV-102, 2020 WL 7479974, at *3, 7 (N.D. W.Va. Dec. 18, 2020).

**B.   DAI'S Questions Are Not Determinative of the Case.**

DAI's proposed certification of state law questions also fails because the questions are not determinative of the case. These questions are not even determinative of the case as to DAI and the other PFAS Manufacturing Defendants, let alone the claims against the other Defendants under state and federal law.

Pursuant to the express language of O.C.G.A. § 15-2-9, certification is appropriate only for questions "which are determinative of the case." Thus, a question should be certified only "when the case turns on the resolution on the unsettled state law issue." *Echols,* 2021 WL 870717, at *1 (declining to adopt portion of Report and Recommendation recommending certification of question to Georgia Supreme Court because question was "not outcome determinative of the case"); *see also Davis O'Leary VI, LTD v. Peterson Contractors, Inc.,* 2018 WL 10761924, at *3 (N.D. Ga. Dec. 7, 2018) (declining to certify questions because they were "not determinative of the case and thus do not meet Georgia's statutory requirements for certification").

The Eleventh Circuit has consistently refused to certify questions to state supreme courts where the question was not "determinative" of the case and certainly would not require district courts to do so. *See In re Lentek Int'l, Inc.*, 346 F. App'x 430, 432 n.1 (11th Cir. 2009) ("even if we did perceive ambiguity [in Florida law], its resolution would not be outcome-determinative in this case"). In *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, the Court considered, but ultimately rejected, "the possibility of certifying [a state law] question to the Alabama Supreme Court." 980 F.3d 821, 837 (11th Cir. 2020). Despite acknowledging that "[c]ertification, frankly, was our preference," the court "concluded that the question d[idn't] satisfy [Alabama's] certification standard" because it was not "determinative." *Id.* at 837–38.[3] *See also Harrison v. Jones*, 880 F.2d 1279, 1283, n.4 (11th Cir. 1989) (denying motion to certify questions to the Alabama Supreme Court because "[t]he question we are urged to certify . . . would not be dispositive" as required by Alabama's certified question standard).

A question is not "determinative of the case"—and is therefore improper for certification—when, regardless of how the question is answered, "either party could ultimately go on to prevail on the merits." *Thai Meditation Ass'n of Alabama*, 980 F.3d at 838. In *Thai Meditation*, the Court of Appeals pointed out that the phrase

---

[3] Like Georgia's certified question standard, O.C.G.A. § 15-2-9, Alabama requires that questions of state law to be certified to the Alabama Supreme Court "are determinative of said cause." Ala. R. App. P. 18.

"could be understood in any of several ways—e.g., determinative of the entire case as to all parties, determinative of the case with respect to one party or group of parties, determinative of a single identifiable claim, or (perhaps) determinative of a key legal issue." *Id*. The Court held that the lattermost interpretation was too broad: certified questions must be determinative of more than just a "key legal issue." *Id*. The Court also concluded that the question was not "determinative" of the entire case as to all the parties, the case as to a single party, or even as to a single identifiable claim, because "[n]o matter how the . . . question comes out, either party could ultimately go on to prevail on the merits." *Id*.

Here, even if this Court certified DAI's proposed questions, and DAI received favorable resolution from the Georgia Supreme Court, it would not be determinative of the case as required by O.C.G.A. § 15-2-9.[4]  It would not even be determinative of the negligence claims against DAI and the other PFAS Manufacturing Defendants, because this Court ruled that Plaintiff has stated a claim for negligent failure to warn against these Defendants, which does not rely on the general negligence duty that Daikin challenges in its motion to certify the question of duty. *See* [Doc. 136 at 70-77]. As a result, regardless of how the Georgia Supreme Court would rule on the general negligence duty question, most of the same factual issues

---

[4] DAI's labeling of the questions as "dispositive" throughout is brief doesn't make them so. *See, e.g.,* [Doc. 157-1 at 2, 6, 10].

for the general negligence claim would still be litigated pursuant to the negligent failure to warn claim, including DAI's sales of PFAS to Mount Vernon Mills, DAI's knowledge of the dangers of PFAS, and DAI's knowledge of the failure of conventional sewage treatment plants to treat PFAS. Additionally, DAI's proposed questions would certainly not be dispositive of the entire case as to all the parties, because it would not resolve Plaintiff's other federal and state law claims against the non-PFAS Manufacturing defendants in this matter, including claims under the federal Clean Water Act and the Resource Conservation and Recovery Act.

Furthermore, a question is not "determinative" when it is irrelevant to the facts and law alleged in the case. *See Gold Cross EMS, Inc. v. Children's Hosp. of Alabama*, 648 F. App'x 976, 979–80 (11th Cir. 2016) (upholding district court's "refus[al] to certify [a] question to the Georgia Supreme Court" because the facts of the "case d[id] not raise the question [that the movant] identifie[d]"); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x at 904 (denying motion to certify a question to Georgia Supreme Court because at least part of the proposed question was "irrelevant"). In the instant case, DAI's proposed questions are irrelevant to the facts and law alleged in the case because they reframe the Court's legal conclusions in a manner contrary to the factual allegations upon which the Court relied. As discussed in the Statement of Facts, above, the first question regarding negligence fails to include: (1) any reference to the knowledge of DAI that PFAS are toxic and

17

persistent; (2) DAI's awareness that conventional wastewater treatment processes are ineffective, resulting in PFAS discharges to surface waters and accumulation in sewage sludge; and (3) notwithstanding these known risks of harm, DAI has supplied PFAS to Mount Vernon Mills without taking necessary precautions to prevent PFAS from contaminating surface waters. Similarly, the second question regarding public nuisance fails to include any reference to the allegations that DAI had a degree of control over the discharges of PFAS that caused or contributed to the nuisance.

Finally, if the Court does certify any questions to the Georgia Supreme Court, Plaintiff requests that the Court refuse to stay the proceedings, given that the questions would not be determinative of all the issues concerning all the Defendants and that the case has already been delayed for over a year. Discovery should proceed, because the questions proposed for certification are not dispositive of the case.

## II.   THE COURT SHOULD DENY DAI'S MOTION FOR AN INTERLOCUTORY APPEAL.

DAI cannot satisfy the even greater burden in demonstrating grounds for interlocutory appeal and loses its motion on each of the factors for appeal of a non-final order. Certification for immediate appeal of a non-final order under 28 U.S.C. § 1292(b) is an "extraordinary measure" permitted in only "exceptional circumstances." *Southern Pilot Ins. Co. v. CECS, Inc.,* 15 F.Supp.3d 1335, 1336 (N.D. Ga. 2013) (citing *McFarlin v. Conseco Servs., Inc.,* 381 F.3d 1251, 1257 (11th

Cir. 2004)). To be entitled to an interlocutory appeal under § 1292(b), DAI must: (1) show that the appeal involves a controlling question of law; (2) establish that a substantial ground for difference of opinion exists; and (3) demonstrate that an interlocutory appeal will materially advance the ultimate termination of the litigation.[5] *McFarlin,* 381 F.3d 1251 at 1257; *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.,* 549 F.3d 1344, 1358-59 (11th Cir. 2008) (certification most comport with § 1292(b)'s "high threshold for certification to prevent piecemeal appeals").[6] In simple terms, when deciding whether to allow an interlocutory appeal, the district court should consider the probability that its decision was in error and the time and expense that may be saved by allowing the appeal. *In re Scientific-Atlanta, Inc. Securities Litigation*, 2003 WL 25740734, at *1 (N.D. Ga. Apr. 15, 2003) (internal citation omitted); *see also In re Equifax Inc. Securities Litigation,* 2019 WL 3449673, at *1 (N.D. Ga. July 29, 2019) ("appeal from interlocutory orders should be used only in exceptional cases where a decision may avoid protracted and expensive litigation") (internal citations omitted).

---

[5] As found by the Court in *Consumer Financial Protection Bureau v. Frederick J. Hanna & Assoc., P.C.,* 165 F.Supp.3d 1330, 1334-35 (N.D. Ga. 2015), the first and third prongs operate in the same way, and therefore Plaintiff will, like the *Consumer Financial Protection Bureau* court, focus his analysis herein on the second and third prongs.

[6] Even if these requirements are satisfied, the Eleventh Circuit retains discretion to refuse to allow the appeal. *U.S. ex rel. Powell v. American InterContinental Univ., Inc.,* 756 F.Supp.3d 1374, 1378 (N.D. Ga. 2010).

As discussed in Section I, *supra,* this Court's Order denying DAI's motion to dismiss was based on the sound and principled application of controlling Georgia precedent to the allegations of Plaintiff's Complaint and was not in error. Further, an interlocutory appeal will substantially delay—rather than advance—the resolution of this matter. As a result, this case simply does not present the "extraordinary circumstance" where the "extraordinary measure" of a piecemeal, interlocutory appeal should be permitted.

## A. There Are No Substantial Grounds for Differences of Opinion as to DAI's Proposed Questions.

A party must clear a "high bar" when attempting to show that a question involves a substantial ground for difference of opinion. *Consumer Financial Protection Bureau v. Frederick J. Hanna & Assoc., P.C.,* 165 F.Supp.3d 1330, 1335 (N.D. Ga. 2015). This criterion may be met when a legal issue is (1) difficult and of first impression, (2) the district courts of the controlling circuit are split as to the issue, or (3) the circuits are split on the issue. *Id.* Neither the mere lack of authority on an issue nor the claim that the district court's ruling is incorrect constitutes a substantial ground for difference of opinion. *In re Scientific-Atlanta, Inc. Securities Litigation*, 2003 WL 25740734, at *1; *see also Chattanooga-Hamilton County Hospital Authority v. Walker County, Georgia,* 2016 WL 9023007, at *2 (N.D. Ga. Apr. 8, 2016) ("interlocutory review is not intended where there exists a mere question as to the correctness of the ruling").

20

DAI again relies solely on the differing conclusions of this Court and the *Johnson* Court on the question of DAI's legal duty to support its contention that there is a substantial ground for difference of opinion on its negligence question. [Doc. 157-1 at 14]. However, as explained in Section I.A.1, *supra,* this Court's holding is clearly distinguishable from *Johnson* and does not truly present a clear intra district split constituting a *substantial* difference of opinion. [Doc. 136 at 59, n.10]; *see also Anderson v. Southern Home Care Services, Inc.,* 2017 WL 10573993, at *2 (N.D. Ga. Jan. 3, 2017) (Defendants failed to demonstrate that claimed intra circuit split constituted a "*substantial* difference of opinion") (emphasis in original).

Regarding its nuisance question, DAI does not even attempt to clear the "high bar" for demonstrating a substantial ground for difference of opinion.  [Doc. 157-1 at 14-15]. Instead, it fails in its attempt to manufacture a national trend against the public nuisance decisions of both this Court and the *Johnson* Court by citing cases where there were no allegations that defendant controlled the nuisance generating activity. This Court has already distinguished this case (and Georgia law) from DAI's line of authority, finding that "the Plaintiff here alleged that the [PFAS] Manufacturing Defendants … *have exercised control over the cause or concurrent*

*cause of the nuisance.*" [Doc. 136 at 86 (emphasis added)]; *see also Johnson,* 2021 WL 4745421 at *64.[7]

In sum, DAI's contention that there exist substantial grounds for difference of opinion amounts to nothing more than disagreement with this Court's decision.

## B.   An Interlocutory Appeal Would Not Materially Advance the Ultimate Termination of this Litigation.

The third consideration, whether an interlocutory appeal would materially advance the ultimate termination of the litigation, significantly overlaps the first factor of whether the appeal involves a controlling question of law. *Georgia State Conference of the NAACP v. Fayette County Bd. of Commissioners,* 952 F.Supp.2d 1360, 1362 (N.D. Ga. 2013). An interlocutory appeal is likely to materially advance the litigation if it would "serve to avoid trial or otherwise substantially shorten the litigation." *Consumer Financial Protection Bureau,* 165 F.Supp.3d at 1339 (quoting *McFarlin,* 381 F.3d at 1259); *see also Crouch v. Fed. Nat'l Mortgage Ass'n,* 2012 WL 13008339, at *1 (N.D. Ga. Apr. 17, 2012) ("Section 1292 is intended to be used sparingly and *only in exceptional cases where a speedy appeal would avoid protracted litigation*") (emphasis added).

---

[7] This Court further found that "[T]he [PFAS] Manufacturing Defendants … have a legal right to abate the PFAS pollution but have failed to take appropriate remedial steps …." [Doc. 136 at 86-87]; *see also Johnson,* 2021 WL 4745421 at *65 (PFAS Suppliers, including DAI, could have refused to sell PFAS until carpet manufacturers established and complied with property disposal methods).

Here, like the discussion above regarding whether the questions DAI seeks to certify to the Georgia Supreme Court are determinative of the case, the requested interlocutory appeal would not avoid a trial of this matter, even for DAI and the other PFAS Manufacturing Defendants, much less for the other Defendants and the other federal and state law claims under which the case is proceeding. Indeed, there would be a myriad of claims remaining requiring significant discovery and motion practice, including Plaintiff's negligent failure to warn claim against DAI and the other PFAS Manufacturing Defendants.

Thus, because an interlocutory appeal will not materially advance the termination of the litigation, but instead will delay resolution of the case even further, DAI's motion for interlocutory appeal should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny DAI's motion in its entirety.

*/s/ James S. Whitlock*
James S. Whitlock (*phv*)
Gary A. Davis (*phv*)
Davis & Whitlock, P.C.
Attorneys at Law
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
jwhitlock@enviroattorney.com
gadavis@enviroattorney.com

Jeffrey J. Dean
Ga. Bar #006890
Thomas Causby
Ga. Bar # 968006
Morris & Dean, LLC
101 E. Crawford St.
Dalton, GA 30720
jeff@morrisanddean.com
tom@morrisanddean.com
Telephone: 706-226-0300
Fax: 706-229-4363

***Attorneys for Plaintiff***

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1(D), the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman point font, as mandated in Local Rule 5.1(C).

This the 18th day of May, 2022.

*/s/ James S. Whitlock*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DAIKIN AMERICA INC.'S MOTION TO TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT OR FOR INTERLOCUTORY APPEAL** has been filed electronically with the Clerk of Court by using the CM/ECF system which will automatically email all counsel of record.

This the 18th day of May, 2021.

*/s James S. Whitlock*