IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR., Individually, )
and on Behalf of a Class of Persons )
Similarly Situated, )
 )
  Plaintiff, )
 )
City of SUMMERVILLE, )
GEORGIA, )
 )
  Intervenor-Plaintiff, )
 )
vs. ) Case No.: 4:21-cv-00040-TWT
 )
3M COMPANY, DAIKIN )
AMERICA, INC., HUNTSMAN )
INTERNATIONAL, LLC, PULCRA )
CHEMICALS, LLC, MOUNT )
VERNON MILLS, INC., TOWN OF )
TRION, GEORGIA, and RYAN )
DEJUAN JARRETT, )
 )
  Defendants. )

## THE CITY OF SUMMERVILLE, GEORGIA'S RESPONSE IN OPPOSITION TO DEFENDANT DAIKIN'S MOTION TO CERTIFY QUESTIONS

Intervening Plaintiff the City of Summerville, Georgia, submits the following

Opposition to Daikin America, Inc.'s Motion to Certify Questions to the Georgia

Supreme Court (Doc. 157).

1

## I.   Introduction

In its Complaint in Intervention (Doc 137), Summerville asserted claims against Daikin and three other Defendants that manufactured and sold PFAS-containing chemicals to Mt. Vernon Mills and other companies in Georgia. These Defendants' PFAS chemicals have contaminated and will continue to contaminate Summerville's water supply. These Defendants' contamination of Summerville's water supply has resulted in damage to Summerville's water supply, its treatment system and has and will into the future require Summerville to spend tens of millions of dollars to remove these Defendants' PFAS from Summerville's water supply.

In its Complaint (Doc 137), Summerville asserts ten separate legal claims against the four PFAS-manufacturing Defendants, Daikin included: Count One – Negligence, Count Two – Public Nuisance, Count Three – Private Nuisance, Count Four – Abatement of Nuisance, Count Five – Trespass, Count Six – Wantonness and Punitive Damages, Count Seven – Injunctive Relive, Count Eight – Attorneys Fees and Expenses of Litigation, Count Nine – Georgia Water Quality Control Act, and, lastly Count Ten – Negligent Failure to Warn.

Each PFAS-manufacturing Defendant, Daikin included, has filed an Answer to Summerville's Complaint (See Doc. 141, 143, 145, 146, 149, 151, 153). None

of the PFAS-manufacturing Defendants have moved to dismiss Summerville's claims to date.

The crux of Summerville's claims against Daikin and the other PFAS-manufacturing Defendants is that each of these Defendants, for decades, manufactured, sold, and/or supplied PFAS-containing products to Mt. Vernon Mills and other locations in Georgia, which these Defendants knew were being discharged by their customers into public sewers and into rivers and otherwise into the environment in close proximity to public drinking water supplies and with knowledge that public drinking water supplies were being impacted.   For decades, these Defendants knew that their customers did not properly pre-treat their wastewater and that the impacted public sewer systems and drinking water systems could not remove the Defendants' PFAS chemicals.   Despite this knowledge, for decades these Defendants, Daikin included, continued to manufacture, sell, and supply their PFAS chemicals with knowledge of the ongoing and continuing impact on public drinking water systems, like Summerville.

Daikin and the other Defendants are not new to this type of litigation.   Daikin has been a defendant in similar cases in Alabama and in pending cases in Georgia, in which discovery has been proceeding for more than a year.  The City of Rome, Georgia has asserted similar claims against Daikin and 3M, arising from similar

3

conduct and resulting damage to the City of Rome's drinking water supply, akin to that damage suffered by Summerville.   See *The City of Rome v. 3M Company, et al.,* Floyd Superior Court, Civil Action No. 19CV02405 (hereinafter referred to as "City of Rome case") and *Johnson v. 3M Company, et a*l., USDC, NDGA, Rome Division, Civil Action No. 4:20-CV -00008-AT (hereinafter referred to as "Johnson class"). Dozens of depositions have been taken and millions of pages of documents have been produced to date in the City of Rome case and the Johnson class litigation concerning PFAS contamination of a public water supply less than 25 miles away from Summerville.  Motions to dismiss filed by the PFAS manufacturers, Daikin included, in both the City of Rome case and the Johnson class litigation have been denied.

Daikin's framing of its certified questions has no relation to the true facts and legal theories of liability advanced in this case nor the conduct of Daikin that has resulted in Daikin being named a Defendant in this case and the cases pending for the City of Rome case and the Johnson class.    Daikin claims it owes no duty to "unknown third parties" as a premise for its certified question.  This premise fails because Daikin has actual knowledge that its product was being negligently disposed and that such disposal by its customers was polluting the source of Summerville's

drinking water. The discovery in the City of Rome case and Johnson class proves this and discovery in this case will do so as well.

For example, by 2000, if not before, Daikin and other PFAS manufacturers knew the EPA was investigating perfluorochemicals as potential Persistent, Bioaccumulative, and Toxic ("PBT") chemicals. Daikin and other PFAS manufacturers knew that in May of 2000, under pressure from the EPA, 3M announced publicly that it was phasing out the manufacture of PFOS due to environmental concerns. Next, the EPA turned its attention to investigate another perfluorochemical, PFOA, manufactured by 3M, Daikin and other PFAS manufacturers.

3M and Daikin knew these chemicals would not deteriorate in the environment and the chemicals were being found in the blood of the general population by 2000 at the latest. Both companies took action at their manufacturing facilities in Decatur, Alabama to prevent perfluorochemical wastewater from going into the municipal sewer system and from being discharged into the Tennessee River (which bordered their plants) without the wastewater being pretreated through the use of Granulated Activated Carbon ("GAC") or being incinerated. Daikin and 3M and the other PFAS-manufacturing Defendants continued to supply PFAS to customers that these Defendants knew were not implementing the same PFAS

treatment technologies which the Defendants were implementing at their sites to prevent introduction of their PFAS into public sewer systems, rivers and public drinking water supplies.

Even though PFOS was discontinued and fully phased out by 2002, the chemical manufacturers continued to manufacture and distribute PFOA and other perfluorochemicals.  The carpet industry in Dalton, Georgia was targeted by the chemical manufacturers because of the huge amount of the perfluorochemicals used to make carpets soil resistant.  Summerville believes that discovery in this case will prove the same for the textile industry in North Georgia, including the Defendants' customer Mt. Vernon Mills which purchased copious amounts of the Defendants' PFAS chemicals to treat its fabrics.

In February of 2008, Daikin corporate management circulated a copy of a Chattanooga Times Free Press news article entitled "EPA Finds High Levels of Stain-Resistance Ingredient in Conasauga River." Therein, the article stated in pertinent part:

> Former University of Georgia Professor Aaron Fisk, who oversaw a graduate student study measuring amounts of the chemical in rivers in 2006 and 2007, said levels of perfluorooctanoic acid and its compounds in the Conasauga were among the highest ever measured in water at a non-spill location.
>
> Each day, the sprinklers at the Looper's Bend Wastewater Treatment Plant spray 30 million to 40 million gallons of wastewater, 87 percent

of which is industrial waste, onto a 9,200-acre peninsula of forested land surrounded on three sides by the Conasauga River, Dalton Utilities officials said.

Waste from the federal approved sewage treatment system is supposed to decompose in the soil, but both Dr. Fisk and EPA officials now believe the man-made perfluorooctanoic acid and its compounds slip virtually unchanged into the river.

Three years later, the EPA began negotiating for changes with the eight national companies that make PFOA and labeled the chemical a "likely carcinogen."  EPA reports also state the chemical has been linked with problems such as low-weight babies.

(A copy of the referenced article is attached as Exhibit A to this Response Brief.)

Daikin continued to manufacture and supply perfluorochemicals after 2008, despite knowing its PFAS customers were dumping perfluorochemicals into the public sewer system where it in turn flowed unabated into the river system that supplied Rome, and other downstream cities, with drinking water. The same is and will be proven through discovery in this case to be true in Summerville as well.

Discovery in the Rome and Johnson litigation has established that Daikin knew its' customers were not handling wastewater with the same precautions as Daikin, and that PFAS laden wastewater was ultimately polluting the river system providing Rome with its drinking water.  This conduct continued through the EPA first Health Advisory of 2009 and an EPA Lifetime Health Advisory of 2016, and

7

ultimately until the carpet manufacturing industry discontinued using perfluorochemicals to treat carpet for soil repellency. The same will be true in this case.

Simply put, and contrary to Daikin's framing of the questions for which it seeks certification, this is not a case in which a plaintiff is attempting to hold a product manufacturer liable under a theory that such manufacturer owes a common law duty to unknown third parties to protect them from another's negligent conduct in disposal of a product or a nuisance created by others after the sale of the product. Daikin knew that its PFAS chemicals harmed public drinking water supplies, Daikin knew how to prevent its PFAS chemicals from harming public drinking water supplies, Daikin knew its customers were not treating PFAS like Daikin was treating PFAS to prevent damage to public drinking water supplies, Daikin did not inform its customers of the damage Daikin's PFAS was causing to public drinking water supplies, and yet for decades Daikin continued to supply and sell PFAS to these customers, despite this knowledge.

## II.   Argument

### A. Daikin's Motion to Certify Questions should be denied because its proposed questions are not "determinative of the case."

Daikin's Motion to Certify Questions is improper because it fails to meet the requirements set by Georgia's legislature for certified questions of state law. Georgia

8

authorizes its Supreme Court to receive and answer certified questions of Georgia law from federal courts when both (1) the questions "are determinative of the case" and (2) "there are no clear controlling precedents in the decisions of the [Georgia] Supreme Court . . . ." O.C.G.A. § 15-2-9. Thus, even if this Court were to assume that Daikin is correct in its argument that there is "no clear controlling precedent" on the questions Daikin presented, certification is still improper because Daikin's questions are not "determinative of the case." *See id.*

Federal courts have routinely denied motions to certify questions to the Georgia Supreme Court that are not determinative or dispositive of the case. In *Davis O'Leary VI, LTD v. Peterson Contractors, Inc.*, the Court acknowledged that "there [we]re no cases involving a fact pattern that squarely align[ed] with the one presented in this case." No. 1:15-CV-0518-CC, 2018 WL 10761924, at *3 (N.D. Ga. Dec. 7, 2018). However, the Court still denied the motion to certify questions to the Georgia Supreme Court because (1) "the Court ha[d] based its decisions . . . on principled application and analysis of existing Georgia case law" and (2) "none of the questions presented [were] determinative or dispositive of the case." *Id.* On the latter point, the Court found that "resolution of the questions . . . [we]re determinative of only a 'substantial component of Plaintiff's claims.'" *Id.* However, "[t]he questions [we]re not ***determinative of the case*** and thus d[id] not meet

9

Georgia's statutory requirements for certification." *Id.* (emphasis added). *See also Echols v. Georgia Piedmont Tech. Coll.*, No. 1:20-CV-2794-TWT, 2021 WL 870717, at *1–2 (N.D. Ga. Mar. 9, 2021) (denying motion to certify because the question was "not outcome determinative of the case. Nor [wa]s it even outcome determinative of the Plaintiff's [question-specific] claim"); *Perkins v. Smith, Gambrell & Russell, LLP*, No. 1:08-CV-2673-JEC, 2010 WL 11507605, at *5 (N.D. Ga. July 27, 2010) (noting that, due to a lack of clear caselaw, "the Court would [ordinarily] consider certifying the question to the Georgia Supreme Court"; however, "[t]he problem with certification [wa]s that it [wa]s not entirely clear whether [resolution of the question presented] would be 'determinative' of plaintiff's case").

The Eleventh Circuit has also consistently refused to certify questions to other state supreme courts where the question was not "determinative" of the case. *See In re Lentek Int'l, Inc.*, 346 F. App'x 430, 432 n.1 (11th Cir. 2009) (denying motion for certified question where the court did "not perceive [an] ambiguity" in Florida law, and "even if we did perceive ambiguity, its resolution would not be outcome-determinative in this case"). In *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, the Court considered, but ultimately rejected, "the possibility of certifying [a state law] question to the Alabama Supreme Court." 980 F.3d 821, 837

10

(11th Cir. 2020). Despite acknowledging that "[c]ertification, frankly, was our preference," the court "concluded that the question d[idn't] satisfy [Alabama's] certification standard"[1] because it was not "determinative." *Id.* at 837–38; *see also Harrison v. Jones*, 880 F.2d 1279, 1283 n.4 (11th Cir. 1989) (denying motion to certify questions to the Alabama Supreme Court because "[t]he question we are urged to certify . . . would not be dispositive" as required by Alabama's certified question standard).

A question is not "determinative of the case"—and is therefore improper for certification—when, regardless of how the question is answered, "either party could ultimately go on to prevail on the merits." *Thai Meditation Ass'n of Alabama*, 980 F.3d at 838. In *Thai Meditation*, the Eleventh Circuit addressed Alabama's certification standard, which requires that certified questions are "determinative of said cause." *Id.* (quoting Ala. R. App. P. 18). The Court pointed out that the phrase "could be understood in any of several ways—e.g., determinative of the entire case

---

[1] Similar to Georgia's certified question standard, which requires *inter alia* that questions of state law "are determinative of the case," O.C.G.A § 15-2-9, Alabama's certified question standard requires *inter alia* that questions of state law "are determinative of [the] cause." Ala. R. App. P. 18. If anything, Alabama's standard for certified questions is actually *broader* than Georgia's standard, as "cause" could reasonably be construed as a discrete claim or cause of action as opposed to Georgia's more rigorous "case" requirement. *See Thai Meditation Ass'n of Alabama*, 980 F.3d at 838 (discussing the ambiguities of Alabama's "cause" standard).

as to all parties, determinative of the case with respect to one party or group of parties, determinative of a single identifiable claim, or (perhaps) determinative of a key legal issue." *Id.* The Court held that the lattermost interpretation was too broad: certified questions must be determinative of more than just a "key legal issue." *Id.* The Court also concluded that the distinction between the other interpretations made little difference: the question was not "determinative" of the entire case as to all the parties, the case as to a single party, or even as to a single identifiable claim, because "***[n]o matter how the . . . question comes out, either party could ultimately go on to prevail on the merits***." *Id.* (emphasis added); *see also Davis O'Leary VI, LTD*, No. 1:15-CV-0518-CC, 2018 WL 10761924, at *3 (finding proposed questions not "determinative" where "resolution of the questions . . . [we]re determinative of only a 'substantial component of Plaintiff's claims'").

Similarly, a question is not "determinative" when it is irrelevant to the facts and law alleged in the case. *See Gold Cross EMS, Inc. v. Children's Hosp. of Alabama*, 648 F. App'x 976, 979–80 (11th Cir. 2016) (upholding district court's "refus[al] to certify [a] question to the Georgia Supreme Court" because the facts of the "case d[id] not raise the question [that the movant] identifie[d]"); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 904 (11th Cir. 2013) (denying motion to

certify a question to Georgia Supreme Court because caselaw was clear and at least part of the proposed question was "irrelevant").

Daikin's proposed questions are not even determinative of Plaintiffs' claims against Daikin, much less the entire case, because regardless of how Daikin's proposed questions would come out, "either party could ultimately go on to prevail on the merits." *Thai Meditation Ass'n of Alabama*, 980 F.3d at 838. Moreover, Daikin's proposed questions are "irrelevant" to Plaintiffs' *actual* claims, *see Hotels.com*, 549 F. App'x at 904, and the facts of "this case do[] not raise the question[s] [that Daikin] identifies," *see Gold Cross EMS*, 648 F. App'x at 980. Daikin's Motion for Certified Questions should be denied.

In addition to claims for Negligence and Public Nuisance, Summerville has asserted claims for Private Nuisance, Abatement of Nuisance, Trespass, Wantonness, Negligent Failure to Warn and claims under the Georgia Water Quality Control Act. Each of these claims, in addition to claims for injunctive relief, punitive damages and attorney's fees and expense of litigation would proceed, irrespective of a decision on Daikin's certified questions. As such, the certified questions are not determinative or dispositive of Summerville's case and Daikin's Motion to Certify Questions should be denied.

**B. Daikin's Motion to Certify Questions should be denied because there is not "significant" doubt as to how a state court would resolve the issue.**

Daikin's Motion to Certify Questions should also be denied because Daikin has failed to show "significant" or "substantial" doubt as to how a Georgia state court would rule in this case.

Daikin asserts that, "Where there is *any doubt as to the application of state law*, a federal court should certify the question to the state supreme court . . . ." Def.'s Mem. of Law in Supp. of Mot. to Certify 4 (emphasis in original) (quoting *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995)). However, another district court in this circuit has stated that it "does not believe the 'any doubt' standard can be taken at face value." *Arnold v. State Farm Fire & Cas. Co.*, No. CV 17-0148-WS-C, 2017 WL 5451749, at *4 (S.D. Ala. Nov. 14, 2017). More recent Eleventh Circuit opinions "have emended the qualifier 'any' to the more restrictive 'significant' or 'substantial.'" *Id.* (citing *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016, 1025 (11th Cir. 2016); *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996)). *See also Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 816 n.2 (11th Cir. 2010) (denying request for certified question where there was "no substantial doubt" concerning the state law issue). Even in those cases

14

where the Court has used the "any doubt" language, it has simultaneously pointed out that it "has often decided a question of state law where there is doubt as to how a state court would resolve the issue." *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 904 (11th Cir. 2013). Therefore, the correct standard for this Court to analyze the certification issue is by "substantial" or "significant" doubt, and Daikin fails to meet this higher standard.

Similar to the arguments raised in its Motion to Dismiss the class claims in the present case, which has been denied, Daikin also filed a Motion to Dismiss the City of Rome's claims.  On April 5, 2022, Judge Bryan Johnson entered an Order denying Daikin's Motion to Dismiss, a copy of which is attached as Exhibit B to this Response Brief.

### C. Daikin's Alternative Request to Certify this Court's Order for Appeal under § 1292 (B) Should Be Denied.

Daikin's motion to alternatively certify this Court's Order denying Daikin's Motion to Dismiss for interlocutory appeal under 28 U.S.C. § 1292(b) should fail for similar reasons as those set forth above. Like the standard for certified questions of state law, 28 U.S.C. § 1292(b) requires *inter alia* that controlling questions of law "be dispositive of the litigation" and that there be "serious doubt as to how [those questions] should be decided" for interlocutory appeal to be warranted. *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir.

2004) (quoting 1958 U.S.C.C.A.N. 5258, 5260–61). But certification of interlocutory appeal is an even less common practice than certification of questions to state supreme courts: it is the "rare exception," only to be used "in exceptional cases." *Id.* at 1256, 1264; *see also S. Pilot Ins. Co. v. CECS, Inc.*, 15 F. Supp. 3d 1335, 1336 (N.D. Ga. 2013) ("Certification . . . under § 1292(b) is an extraordinary measure, which is permitted only in exceptional circumstances.").

As a result, Daikin's proposed questions—which are neither controlling nor dispositive of the litigation against Daikin as addressed previously—have not met the requirements of 28 U.S.C. § 1292(b) for certified interlocutory appeal. Daikin has also failed to show that "serious doubt" exists as to how those questions should be decided, especially considering that Motions to Dismiss filed by Daikin in The City of Rome case, the Johnson class litigation, and the present case of all been denied. Therefore, this is not the "rare exception" in which interlocutory appeal is warranted, and this Court should also deny Daikin's request for certification of interlocutory appeal.

## III.   Conclusion

The City of Summerville, Georgia respectfully requests that this Honorable Court deny the Motion to Certify Questions to the Supreme Court or for Interlocutory Appeal  by Daikin America, Inc., (Doc. 157).

Respectfully submitted,

 */s/ Jeff Friedman*

Jeff Friedman, *Pro Hac Vice*
Lee Patterson, *Pro Hac Vice*
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# (205) 278-7000
Fax# (205) 278-7001
jfriedman@friedman-lawyers.com
lpatterson@friedman-lawyers.com

 */s/ J. Anderson Davis (w/permission)*

J. Anderson Davis (Ga. Bar No. 211077)
BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP
P.O. Box 5007
Rome, Georgia 30162-5007
Ph# (706) 291-8853
Fax# (706) 234-3574
adavis@brinson-askew.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

*/s/ J. Anderson Davis*
J. ANDERSON DAVIS
*Counsel for The City of Summerville, Georgia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served all counsel of record with a copy of the foregoing **THE CITY OF SUMMERVILLE, GEORGIA'S RESPONSE IN OPPOSITION TO DEFENDANT DAIKIN'S MOTION TO CERTIFY QUESTIONS** and with the Clerk of Court using the CM/ECF filing system.

This 18th day of May, 2022.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

*/s/ J. Anderson Davis*
J. ANDERSON DAVIS
Georgia Bar No. 211077

Post Office Box 5007
Rome, GA 30162-5007
Phone: (706) 291-8853
Fax:     (706) 234-3574

*Counsel for The City of Summerville, Georgia*

19