# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| EARL PARRIS, JR., etc., <br><br> Plaintiff, <br><br> v. <br><br> 3M COMPANY, et al., <br><br> Defendants. | Civil Action No.: <br> 4:21-cv-00040-TWT |

# REPLY IN SUPPORT OF MOTION TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT OR FOR INTERLOCUTORY APPEAL BY DAIKIN AMERICA, INC. ("DAI")

DAI moved to certify two unsettled and dispositive questions of state law to the Georgia Supreme Court or, in the alternative, to the Eleventh Circuit. It is in everyone's best interests—the parties, the Court, and the public—for this Court to grant the motion and allow the Georgia Supreme Court to decide these key questions, questions on which Plaintiff and Intervenor base their case and questions that are arising more and more, here and around the country. The Georgia Supreme Court will have to decide these issues eventually; it would be far better to have the answers now, before this case and others proceed further.

1

As it currently stands, this litigation will diverge from *Johnson*, as that court came to the opposite conclusion on negligence on these same facts, dismissing that claim against DAI. And this litigation will diverge from a significant number of cases around the country on the issue of public nuisance, as a "clear national trend" has limited products-based public-nuisance actions against manufacturers for alleged nuisances created only *after* the manufacturers' product reaches a third party. *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 730 (Okla. 2021) (collecting cases). To deny that these are important and unsettled issues, in this district and around the country, is to deny reality. On both these questions, this Court should not leave this large litigation to an "*Erie* guess" that diverges from other courts' predictions of state law; it should permit the Georgia Supreme Court, or in the alternative the Eleventh Circuit, to make an authoritative decision.

Plaintiff and Intervenor resist certification, but their reasoning does not withstand scrutiny. Though they attempt to dispute the unsettled nature of these questions, the cases speak for themselves: This Court split from Judge Totenberg while being presented with the same allegations and the same authorities, and courts from around the country have described the nuisance issue as unsettled too. Alternatively, the Responses argue that these unsettled questions are not "determinative," but the Responses overstate what is required for certification. As

this Court's own case law confirms, certification is appropriate and warranted when it could resolve one claim or the claims as to one party. And that standard is more than satisfied here: If the Georgia Supreme Court agrees with DAI, the whole case against DAI would be legally insufficient and thus would have to be dismissed.

This Court should grant certification of both questions.

## ARGUMENT

**I. THE COURT CAN AND SHOULD CERTIFY THE UNSETTLED STATE-LAW ISSUES TO THE GEORGIA SUPREME COURT.**

Georgia law allows a district court to certify questions to the Georgia Supreme Court when "there are involved in [the] proceeding before [the court] questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state." O.C.G.A. § 15-2-9. DAI's opening brief explained why that standard is satisfied here as to both the negligence and nuisance questions: The questions are unsettled and, if answered in DAI's favor, would end the litigation against DAI. Mot. 5–13. Plaintiff and Intervenor take issue with both parts of the standard but are wrong as to each.

**A. Both the negligence and nuisance questions are unsettled and should be certified.**

**1. The negligence question is unsettled and should be certified.**

One indisputable fact above all others shows that the negligence question is unsettled: This Court has split with another court in this district on the same question

3

involving the same defendant. This Court predicted that the Georgia Supreme Court would find a negligence duty in this case because DAI continuously supplied PFAS to Mount Vernon. Doc. 136 ("Op.") 57–58. Judge Totenberg made the opposite prediction on the same allegations. *Id.* at 59 n.10. No "authority from Georgia," she concluded, "establish[es] a duty on the part of a chemical supplier to protect an unknown third-party [Plaintiff], rather than its consumer [Mount Vernon], from harm resulting from the negligent use or disposal of the chemical." *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1325 (N.D. Ga. 2021).

These directly divergent conclusions by courts in the same district on the identical issue cry out for certification to the Georgia Supreme Court. The distinct holdings by each court create significant doubt as to the meaning of Georgia law, and specifically whether under Georgia law a manufacturer owes a common-law duty to unknown third parties to protect them from another entity's negligent disposal of the manufacturer's product. Where, as here, "there is *any doubt as to the application of state law*, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995) (emphasis added) (cleaned up). And even if (as the Responses argue) the standard were higher—such as serious

doubt about the application—the standard would be met given the *direct intra-district split*. *See Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir. 2005); *Simmons v. Sonyika*, 394 F.3d 1335, 1339 (11th Cir. 2004).

The Responses try to minimize this intra-district split by insisting that its status is uncertain. *See* Plaintiff's Response at 10–11. But there is nothing uncertain about it. This Court and the *Johnson* court came to diametrically opposed conclusions on the negligence question—one court dismissing the count and another upholding it—while being presented with identical arguments and authorities. *Johnson* determined that there was no recognized common-law principle establishing a negligence duty on these facts, even after being made aware of Restatement § 389—the same authority this Court used as the source of that duty. *See Johnson*, 563 F. Supp. 3d at 1325; *see also* Plaintiff's Response in Opposition to the Supplier Defendants' Motion to Dismiss the Third Amended Complaint at 11–13, *Johnson v. 3M*, No. 4:20-cv-00008 (N.D. Ga. Mar. 10, 2021), ECF No. 513.

The Responses also fail to grapple with what this intra-district-court split means for certification: It shows that the question must be a close one for which "sufficient sources of state law" do not "allow a principled rather than conjectural conclusion," making certification proper. *State of Fla. ex rel. Shevin v. Exxon Corp.*,

526 F.2d 266, 275 (5th Cir. 1976) (Eleventh Circuit precedent). When two highly respected judges in the same district come to differing conclusions, that issue *must be* proper for certification. This is why courts have held this is the most important question for certification. *Blackburn v. Shire US Inc*, 18 F.4th 1310, 1322 (11th Cir. 2021); *see, e.g.*, *Bibbs v. Toyota Motor Corp.*, 2017 WL 11629193, at *2 (N.D. Ga. Aug. 9, 2017).

And it is not just the split; it is also that this Court itself recognized that "no Georgia court has ever applied section 389 in an environmental pollution case." Op. 56. This dearth of state law strongly favors certification, and it makes this unlike the cases the Responses cite. *See, e.g.*, *Boone v. Corestaff Support Servs., Inc.*, 805 F. Supp. 2d 1362, 1377–78 (N.D. Ga. 2011) (declining to certify questions to the Georgia Supreme Court only where the "Georgia Court of Appeals ha[d] definitively settled the issue" and a court in the same circuit had recently reached the same conclusion on the issue).

Certification is also proper, in addition to the intra-district split and the dearth of case law, for other reasons too—reasons the Responses largely ignore.

*First*, principles of comity dictate that the Georgia Supreme Court should be permitted to decide the negligence issue. It is the province of the state supreme court, rather than federal courts, to "create or expand" state law. *Fid. Ins. Co. v.*

6

*Foster*, 808 F. Supp. 2d 1315, 1321 (S.D. Fla. 2011); *see Cargill, Inc. v. Offshore Logistics, Inc.*, 615 F.2d 212, 215 (5th Cir. 1980) (Eleventh Circuit precedent); *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1298–99 (N.D. Ga. 2005). At least, federal courts should not create or expand state law without giving the Georgia Supreme Court the chance to review the issue. *See Mosher*, 52 F.3d at 916–17; *FDIC v. Loudermilk*, 984 F. Supp. 2d 1354, 1359–60 (N.D. Ga. 2013) (Thrash, J.). This is especially so given that, as described below, this question is likely to recur in litigation in this state, and it has important public policy implications.

*Second*, the importance of the negligence question, as well as the likelihood of its recurrence, also weigh in favor of certification. Legal opinions that change the scope of liability under Georgia negligence law may have a large impact on Georgia citizens and businesses operating under Georgia law. For that reason, significant questions of the extent of liability of manufacturers under Georgia law, such as those raised by the negligence issue, should be decided by the Georgia Supreme Court. *See Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 952 F.2d 1304, 1306 (11th Cir. 1992) (per curiam) (ordering certification where an issue raised "substantial public policy concerns"). The negligence issue is also very likely to be raised again, as it is already being claimed in other ongoing PFAS cases, including *Johnson*. *See also, e.g., City of Rome v. 3M Co. et al.*, No. 19-cv-02405 (Ga. Superior Ct.). That

7

this issue is likely to recur supports certification of this question. *See Exxon Corp.*, 526 F.2d at 275 n.29.

In the end, there can be no denying that "there are no clear controlling precedents in the decisions of the Supreme Court of this state" on the negligence question presented here. O.C.G.A. § 15-2-9.

### 2. The nuisance question is unsettled and should be certified.

So too for the nuisance question—whether a manufacturer can be liable for a nuisance created by its customers' use and disposal of the manufacturer's products is unsettled. Courts around the country have come to the opposite conclusion to this Court's and the *Johnson* court's on this question, and the Georgia Supreme Court has thus far been silent. Because the nuisance issue is close and unsettled under Georgia law, it should be certified to the Georgia Supreme Court. *See Loudermilk*, 984 F. Supp. 2d at 1359–60; *Blackburn*, 18 F.4th at 1322.

The Responses deny the "clear national trend" in this area, but this Court does not have to take the parties' word for it: Courts around the country have expressly recognized this trend and the unsettled nature of these issues. *E.g.*, *Johnson & Johnson*, 499 P.3d at 730 (collecting cases). The outcomes of the cases in this trend do not depend on how the courts framed the facts involved or on whether the defendant had knowledge of the alleged nuisance (*contra* Plaintiff's Response at 14,

17–18); they turn on the purely legal question presented by DAI's certification motion: Does a manufacturer's "kn[owledge] of the dangers" and "choice to carry out its daily business activities constitute[] control over a product after it has been sold"? *In re Paraquat Prod. Liab. Litig.*, 2022 WL 451898, at *11 (S.D. Ill. Feb. 14, 2022) (splitting with this Court, holding "no," and dismissing nuisance claim on the pleadings); *see also, e.g.*, *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, __ F. Supp. 3d. __, 2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) (same for PFAS). And critically, the only question this Court is being asked to decide now is whether "there are [any] clear controlling precedents in the decisions of the Supreme Court of [Georgia]" on this question. O.C.G.A. § 15-2-9. The answer is that there are not, making this question worthy of certification.

### B. Both the negligence and nuisance questions are determinative of the case.

All that is left to make certification proper is that these questions are "determinative of the case." O.C.G.A. § 15-2-9. They are.

The proposed questions here are determinative of the case, as that term is used by O.C.G.A. § 15-2-9, because they would resolve the case against DAI. The cases the Responses cite support this proposition: If the proposed questions are resolved by the Georgia Supreme Court in DAI's favor, Plaintiff and Intervenor could not "ultimately go on to prevail on the merits" of their negligence and nuisance claims,

thus making the questions determinative. *See Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama*, 980 F.3d 821, 838 (11th Cir. 2020). The proposed questions indeed are determinative of the case against DAI: If DAI owes no negligence-duty to Plaintiff and cannot be liable for nuisance, the case cannot proceed against DAI.

Plaintiff and Intervenor suggest that to be "determinative," a certified question must be capable of resolving *the entire case* against all defendants. *See* Intervenor-Plaintiff's Response at 13, Plaintiff's Response at 14. But this Court's own certification precedent shows that is not so. For example, in *Loudermilk*, 984 F. Supp. 2d 1354, this Court certified the question whether the business judgment rule applied to plaintiff's negligence claim, despite simultaneously denying motions to dismiss different claims. This meant that regardless of the Georgia Supreme Court's ruling on the certified question, the case would continue to be litigated on plaintiff's other claims. Thus, even if a decision on the certified questions would not dispose of all claims against DAI, certification would still be proper.

Other precedent, too, establishes that the term "determinative of the case" does not stretch nearly as far as Plaintiff and Intervenor claim. Certification to state courts is permissible when it would "save time, energy, and resources and help[] build a cooperative judicial federalism," *Lehman Bros. v. Schein*, 416 U.S. 386, 391

10

(1974); the certification procedure would be meaningless, particularly in multi-defendant litigation like this, if every question certified to state court needed to be capable of resolving all claims even as to one party in one fell swoop.

The Responses' cases say nothing to the contrary. They tout *Echols v. Georgia Piedmont Tech. Coll.*, 2021 WL 870717, at *2 (N.D. Ga. Mar. 9, 2021) (Thrash, J.), for the proposition that the proposed questions for certification are "not outcome determinative of the case." But resolution of the question in *Echols* would determine only the *relief* that Plaintiff was entitled to, not whether that claim was permissible in the first place. *Id.* In contrast, here, resolution of the proposed questions may cause several of Plaintiff's claims to be dismissed—and could cause the entire case against DAI to be dismissed.

The Responses finally argue that the negligent-failure-to-warn claims against DAI would survive regardless of what the Georgia Supreme Court does with the certified questions. But that is both irrelevant and wrong. It is irrelevant because, as discussed above, certification is proper if the questions are determinative of even some claims, when (as here) the questions are unsettled and resolution would save resources. *See, e.g.*, *Loudermilk*, 984 F. Supp. 2d 1354. And it is wrong because the negligent-failure-to-warn claim *would* fail if the Georgia Supreme Court rules for DAI on the certified negligence question. That claim is based on the same

supposed duty as the general negligence claim—to protect unknown third parties from harm caused by the actions of another entity, Mount Vernon Mills. *See* Complaint ¶ 156. If the "duty" question is certified to the Georgia Supreme Court, and that court concludes, as did *Johnson*, that there is no "duty on the part of a chemical supplier to protect an unknown third-party, rather than its consumer, from harm resulting from the negligent use or disposal of [a] chemical," 563 F. Supp. 3d at 1325, that conclusion would simultaneously defeat the failure-to-warn claim.

At bottom, resolving the negligence and nuisance questions at this juncture will substantially reduce, or eliminate, the amount of litigation that DAI is subject to and conserve party and judicial resources. Plaintiff's claims against DAI, if litigated further, will involve substantial discovery on a variety of issues, a fact underscored by Plaintiffs' request for a full year of fact discovery to be followed by extensive expert discovery. Before Plaintiff and DAI endure this burdensome discovery—and before the Court has to invest substantial resources managing discovery and summary judgment on those issues—the Georgia Supreme Court should be permitted to resolve the predicate issues. Depending on the Georgia Supreme Court's resolution of these questions, DAI could be out of this case.

## II.  ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR APPEAL UNDER § 1292(B).

If this Court does not certify these questions of law to the Georgia Supreme Court, it should certify its order for interlocutory appeal. All three requirements are met here. *First*, the negligence and nuisance questions are discrete legal questions, and if the questions are decided in DAI's favor, then at least a "substantial part of the [complaint]" will be dismissed against DAI. *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1264 (11th Cir. 2004). *Second*, given the intra-district conflict between this Court and *Johnson* on the negligence-duty DAI owes, as well as the conflict between this Court's decision and the "clear national trend" on the nuisance issue, *see Johnson & Johnson*, 499 P.3d at 730, there is substantial ground for difference of opinion on both proposed questions. And *third*, an immediate appeal will, at minimum, substantially reduce the volume of litigation. *Benson v. Enter. Leasing Co. of Orlando, LLC,* 2021 WL 1078410, at *8 (M.D. Fla. Feb. 4, 2021).

Plaintiff's Response (at 21) argues that there is no substantial ground for difference of opinion on the negligence question, but they are mistaken, for reasons discussed above: There is now a clear split in this district on whether a negligence duty exists under these circumstances. Plaintiff also claims that the different holdings of this Court and the *Johnson* court on the negligence duty do not constitute a "substantial" difference of opinion, citing *Anderson v. S. Home Care Servs., Inc.*,

13

2017 WL 10573993, at *2 (N.D. Ga. Jan. 3, 2017). But *Anderson* is not on point. There, intervening and controlling Eleventh Circuit precedent that came out *after* the district court split guided the court's decision. *Anderson*, 2017 WL 10573993, at *2. There is no controlling case here.

Plaintiff's Response also attempts to paper over the substantial grounds for difference of opinion that exist on the nuisance question. Once again, Plaintiff requests this Court summarily dismiss the considerable conflicting authority cited by DAI by claiming that none of those cases alleged that defendant controlled the nuisance-generating activity. But as explained, the whole point of this certification motion is to have an authoritative decisionmaker determine the level of control needed. DAI has pointed to several jurisdictions that have held, in the context of nuisance claims, that manufacturers *necessarily lose* control over their products once they are sold. The point now is not to re-litigate this as the Responses want to do; it is to let an authoritative decisionmaker decide who is right.

Plaintiff's Response also argues that an interlocutory appeal will not materially advance this litigation, because resolution of those questions will not "avoid a trial of this matter." Plaintiff's Response at 23. But once again Plaintiff overstates this issue: Resolution of the proposed questions, which are dispositive as to the negligence and nuisance claims, will materially advance the ultimate

termination of the litigation because, if those claims are not litigated further, "the volume of litigation could be substantially reduced." *Benson*, 2021 WL 1078410, at *8; *see also* pages 9–12, *supra*. That is enough.

For its part, Intervenor similarly misstates the legal standard applicable to § 1292(b) by claiming that the statute requires that questions certified for interlocutory appeal be "dispositive of the litigation" and that there must be "serious doubt as to how [those questions] should be decided." Intervenor's Response at 15 (alteration in original) (citation omitted). But the language Intervenor quotes originates from a judicial committee report submitted to Congress; that language is not reflected in the statute or the case law and has no precedential value whatsoever. *McFarlin*, 381 F.3d at 1256. And regardless, as explained, these questions *would be* dispositive of the litigation against DAI, and there *is* serious doubt, including intra-district splits and splits around the country, about who is right.

## CONCLUSION

For these reasons, this Court should certify the questions of law either to the Georgia Supreme Court or to the Eleventh Circuit.[1]

---

[1] Without supporting authority, Plaintiff requests (at 18) that the Court refuse to stay the proceedings if it certifies DAI's proposed questions. The Court need not decide the propriety of a stay at this juncture, for certification is proper even if the Court does not stay the proceedings. But if the Court is deciding now whether to stay proceedings, DAI believes that, whether or not the case proceeds against other parties, a stay as to DAI would be proper.

Dated: June 1, 2022

Louis A. Chaiten, *Pro Hac Vice* forthcoming
James R. Saywell, *Pro Hac Vice* forthcoming
JONES DAY
North Point
901 Lakeside Ave East
Cleveland, Ohio 44114
Phone: (216) 586-3939
Email: lachaiten@jonesday.com
jsaywell@jonesday.com

William E. Underwood
    Georgia Bar No. 401805
JONES WALKER LLP
1360 Peachtree Street
Suite 1030
Atlanta, GA 30309
Telephone: (770) 870-7506
Email: wunderwood@joneswalker.com

Respectfully submitted,

/s/ Richard H. Deane, Jr.
Richard H. Deane, Jr.
    Georgia Bar No. 214875
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
Phone: (404) 521-3939
Email: rhdeane@jonesday.com

Theodore M. Grossman, *Pro Hac Vice*
JONES DAY
250 Vesey Street
New York, New York 10281
Phone: (212) 326-3939
Fax:   (212) 755-7306
Email:  tgrossman@jonesday.com

*Counsel for Defendant*
*Daikin America, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

>                         */s/* Richard H. Deane, Jr.
>                         Richard H. Deane, Jr.

## CERTIFICATE OF SERVICE

I certify that on June 1, 2022, I served the foregoing on all parties by filing on CM/ECF.

/s/ Richard H. Deane, Jr.
Richard H. Deane, Jr.

*Counsel for Defendant
Daikin America, Inc.*