IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR., individually, and
on behalf of a Class of persons similarly
situated,

          *Plaintiff*,

CITY OF SUMMERVILLE,
GEORGIA,

          *Intervenor-Plaintiff,*

    v.
3M COMPANY, et al.,
          *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.
4:21-cv-00040-TWT

## PLAINTIFF AND INTERVENOR-PLAINTIFF'S JOINT MOTION TO COMPEL

This case concerns the widespread and significant pollution caused by toxic

per- and polyfluoroalkyl substances (collectively referred to "PFAS"). These

"forever" chemicals have been shown to cause cancer, immunotoxicity, thyroid

disease, ulcerative colitis, and high cholesterol; these chemicals are also known for

their never-ending persistence in the environment. [Doc. 136, at 2-3]. Mount Vernon

Mills ("Mount Vernon" or "MVM") used these chemicals in their manufacturing

processes for clothing since at least the 1980s and disposed of the wastes in the town

of Trion's Water Pollution Control Plant ("Trion WPCP"). These chemicals were

then discharged into Racoon Creek and/or land applied as biosolids, or sludge, on local farmer's fields as fertilizer. As a result of these actions, PFAS contamination now permeates Racoon Creek, the town of Summerville's drinking water supply, local fields, and groundwater wells. This pollution began decades ago and continues today. [Doc. 136, at 4-5].

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37.1, Plaintiff and Plaintiff-Intervenor ("Plaintiffs," collectively below) respectfully move this Court for an Order compelling Defendant, Mount Vernon, to produce all relevant, non-privileged documents responsive to Plaintiff's Requests for Production of Documents. Specifically, Defendant limited its responses to the time period of January 1, 2016,[1] to the present, and denied follow-up document requests after a 30(b)(6) deposition of Mount Vernon company representatives.

Defendant's justification for limiting discovery from January 1, 2016, to present has no basis in law and thwarts the intent and objectives of discovery in the Federal Rules of Civil Procedure. Plaintiffs have shown that discoverable, relevant

---

[1] Defendant, in its responses to Plaintiff's first set of requests for production, initially limited their search to "February 23, 2016 and the present." However, in a subsequent e-mail to Plaintiff's counsel, Defendant's counsel stated "[w]ithout wavier of our objection, but to avoid any question about the time period between the date upon which your 60 day notice letter expired (and any CWA claim ripened – Jan. 20) and the filing of the suit, we opted to produce material from January 1, 2016."

information exists prior to 2016 and going back to at least 1992. Defendant's posture also means that discoverable information remains unreviewed by the Plaintiffs as this case proceeds and inevitably drags out the ultimate disposition of this matter. Plaintiffs respectfully ask this Court to enter an order requiring the Defendant to search for and produce information back to 1992, a compromise made by Plaintiffs, with the requested custodians and search terms as suggested by the Plaintiffs. [Ex. 1].

Plaintiffs file this motion only after failing, in good faith, to reach an agreement with the Defendant through correspondence and several meet and confer conferences.[2] FED. R. CIV. P. 37.1(a); LR 37.1(A), NDGa.

## BACKGROUND

1.      On or about June 8, 2022, Plaintiff (Earl Parris, Jr., as the putative class representative and individually) served Mount Vernon its First Interrogatories and Requests for Production of Documents ("RFPs"). Defendant responded on or about August 10, 2022.

---

[2] A series of e-mail exchanges between the parties took place between October 25, 2022 and November 10, 2022. During this same time period, at least two phone conversations took place between the parties in an effort to resolve these issues. Plaintiff sent Defendant a letter regarding the same on Dec. 5, 2022, and Defendant responded on Dec. 15, 2022.

2.      In 16 of 17 responses to the Plaintiff's requests, the Defendant objected to the burden of the requests and lack of temporal limitations. Defendant limited its search for responsive materials from February 23, 2016, to present "[o]n the basis of the foregoing objection, Mt. Vernon will limit its search to documents located after a reasonable search created between February 23, 2016, and the present." [Ex. 2].

3.      Plaintiff addressed this response via e-mail on October 25, 2022, stating, in part, "[Plaintiffs] don't believe that there is any basis for the 2016 limitation, especially given that MVM is still discharging PFAS that were phased out in 2002 (e.g. PFOS) and we are aware of PFAS sales in the 1990s. [Plaintiff counsel] would like to discuss this with you this week if possible if you can give me a time that is convenient for you." [Ex. 3].

4.      Defendant's counsel responded on October 26, 2022, by stating that it based that date limitation on the "longest statute of limitation applicable to your claims," and that was in relation to claims concerning the Clean Water Act. In addition, Defendant also stated that it did not see the relevance of documents prior to the limitations period. [Ex. 4].

5.      Plaintiff responded to the Defendant on October 31, 2022, via e-mail. In sum, Plaintiff stated that the Clean Water Act statute of limitations had nothing do with key issues in this matter, especially those dealing with tort claims such as nuisance. Further, documents already produced by Defendant showed disposal of

4

sludge on farms in the watershed back until at least 1992 is a source of on-going contamination and nuisance. [Ex. 5].

6.      Defendant responded on November 3, via e-mail, with a legal analysis of their own. Defendant focused on a lack of temporal limitations in the RFPs, the statute of limitations in the claims, and relevance and proportionality as required by the Federal Rules of Civil Procedure. Defendant offered to continue the discussion. [Ex. 6].

7.      After a meet and confer between the parties on or about November 7, the parties seemingly came to a resolution. Plaintiff limited the search to 1992 forward; the year when PFOS contaminated biosolids first were land applied to farms in the area and the Racoon Creek watershed. Plaintiff also proposed eight (8) requests for production that limited and particularized the types of documents within this time frame to be produced. [Ex. 7].

8.      Defendant responded the same day, November 7, and stated that counsel had "understood" the proposal as being limited to only "suppliers [sic] identities and sales and MSDS/SDS [Material Safety Data Sheets/Safety Data Sheets] documents prior to 2016." Defendant further stated that they had issues with the 1992 timeframe, and the scope of "all documents" and "all communications" within this timeframe. [Ex. 8].

9.     On November 9, via e-mail, Defendant provided some concessions; namely that MVM would be willing to provide a chart going back to 1999 showing "manufacturer/chemical/use" along with MSDS/SDS disclosures that they could locate. [Ex. 9]. That same day, Plaintiff responded that they may be able to agree to a timeframe, but there was still concern about the lack of production of communications between chemical suppliers and MVM. Plaintiff also suggested that perhaps the parties could agree on search terms and custodians, and that they would like to discuss further. [Ex. 10].

10.     On November 10, via e-mail, Defendant responded again stating that "communications" pre-dating the "relevant period that are the problem." [Ex.11].

11.     On November 17, the next step in this discovery process occurred with the 30(b)(6) deposition of MVM's corporate representatives. Two depositions were taken, that of Gary Williams and Anthony Strickland. In these depositions, it was clear that biosolids containing PFAS from MVM had been land applied in the surrounding watersheds since at least the mid-1990s. It was also clear that suppliers have supplied PFAS containing chemicals to MVM from at least 1980s up until present day. These chemicals contained long and, more recently, short-chained PFAS chemicals. Today, MVM still disposes of wastewater in the town of Trion's WPCP.

12.     On December 5, 2022, based on the admissions by the corporate representatives of MVM in the prior deposition, Plaintiff supplemented its discovery requests ("Dec. 5 Letter"). Those requests included 13 enumerated requests as well as suggestions to resolve the disputed timeframe for the requests. Plaintiff provided a list of custodians (14), search terms (67) divided into "suppliers" and "other terms," and limited the requested search back to 1992, based on evidence and testimony from the 30(b)(6) deposition. [Ex.1].

13.     Defendant responded via letter on December 15 ("MVM Dec. 15 Letter"). In this letter, Defendant claimed to have already provided information for six of the enumerated requests (1,4,5,6,8,12), and refused to provide information for four requests (2,3,7,9). [Ex. 12]. Defendant refused another enumerated request (13) based on the Joint Protocol signed by the Plaintiff and Defendant. [Doc. 195].

14.     Importantly, Defendant also continued to limit document production in the MVM Dec. 15 Letter to their self-imposed 2016 timeframe, basing this claim on the statute of limitations for the Clean Water Act. [Ex. 12]. Defendant offered minor concessions: 1) MVM would produce pre-2016 documents that used *one* search term and *one* manufacturing defendant identified by the Plaintiff 2) MVM, based on earlier conversations, would be willing to produce pre-2016 documents using the search terms "indemnity" and "toxicity" 3) MVM was "amendable" to producing

non-privileged records "related to" communications with only 3M that pre-date 2016.

## ARGUMENT

Mount Vernon Mills continues to thwart discovery by arbitrarily imposing a January 1, 2016, time limit on discovery. This temporal limit imposed by the Defendant has no basis in the law and should not be allowed by this Court. After Plaintiffs have attempted to resolve this dispute, Defendant has offered no real solution that would provide the relevant and discoverable information in this matter.

## I.   Information prior to 2016 is relevant and discoverable information in this case.

The federal rules contemplate liberal discovery, *Hickman v. Taylor,* 329 U.S. 495, 507–08 (1947), and Federal Rules of Civil Procedure 26(b)(1) lays the foundation for the scope of discovery allowed. A party may obtain discoverable, non-privileged information that is relevant and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). This discoverable information need not be admissible at trial, and discovery should be allowed with information that may "shed light" on other discoverable information. *Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961-TCB, 2016 WL 7428215, at *3 (N.D. Ga. Apr. 29, 2016) (court found that documents outside of date range argued by defendant discoverable because they could "shed light" on other relevant and discoverable information). For purposes of discovery, relevancy is to be interpreted broadly and liberally. *Upton v.. McKerrow,* 1996 WL

8

193807, at *3 (N.D. Ga. Feb. 20, 1996) (quotations and citations omitted). "The party resisting discovery bears the burden of showing the discovery requests to be improper, unreasonable, or burdensome." *Friday v. Sallie Mae, Inc.*, No. 1:14-CV-558-TCB-ECS, 2014 WL 12860394, at *1 (N.D. Ga. Nov. 20, 2014) (citations omitted).

The relevance of information prior to 2016 and spanning back to 1992 is critical to the Plaintiffs' claims concerning Mount Vernon Mills and other Defendants. MVM has operated for almost 35 years, and MVM used PFAS chemicals for its products and manufacturing as early as the 1980s. MVM sends, and has always sent, a huge amount of PFAS contaminated wastewater to the town of Trion's WPCP. Trion, in turn, applies biosolids (sludge) from the Trion WPCP to fields throughout the area. Since at least 1992, Defendant Trion has disposed of nearly 8,000 tons of PFAS contaminated sludge in the Racoon Creek watershed by land application. [Doc. 136, at 4-5]. A document *produced by MVM* shows that sludge containing PFAS was dumped on farms as early as 1992. This sludge is, and continues to be, a source of contamination of water resources in the northwest Georgia area. Information about these contamination sources goes to the heart of every claim by the Plaintiffs. Plaintiffs have evidence that this pollution will persist for decades, if not more, and the risks will continue today and into the future. [Doc. 280, *e.g.* ¶¶ 40,41,95].

If discovery for MVM was limited to 2016, as the Defendant proposes, or severely curtailed by the time and search parameters in MVM's Dec. 15 Letter, key, discoverable information affecting this case would not be provided to the Plaintiffs. One example, an exhibit in the 30(b)(6) deposition of MVM's Anthony Williams, is a letter from the Vice President of MVM to the Director of Environmental, Health, Safety and Regulatory Affairs at 3M. This letter *had been previously produced by 3M* for this case, as well as another case, and was dated February 26, 1999 ("Mount Vernon 1999 Letter").[3] The letter sought information on the "residue organic fluorine issue." Mount Vernon's 1999 Letter also requests information concerning "1) [the] Relationship between PFOA and PFOS and 2) Whether [3M has] any studies on the presence of or health effect of PFOS itself on 3M employees or the general population." [Ex. 13]. No party can deny that this letter is relevant and discoverable in this case.

As another example, in a document production from Mount Vernon Mills, a letter was disclosed, dated November 30, 2007, that was sent to Mount Vernon from the Dupont Corporation ("2007 Dupont Letter"). This letter stated, in part, "▮▮▮▮

---

[3] "The utilization of prior productions by a Producing Party will not exempt that party from having to undertake additional and/or supplemental efforts to produce further documents in order to account for additional electronic search terms, document custodians, expanded date ranges, etc., that were not taken into account in assembling and serving the prior productions and relevant information, about which the Parties shall meet and confer in good faith." [Doc. 195, at 5 §(6)(b)].

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

[Ex.14].[4] Again, neither party can deny the relevance and discoverability of this letter. If MVM limits their discovery to 2016, or severely curtails discovery as proposed in the MVM Dec. 15 Letter, this type of relevant and probative information is missed.

Other Defendants in the case, such as 3M, have not sought to hide behind an artificial date restriction, which is the only reason Plaintiffs obtained these documents which show Mount Vernon's knowledge of health issues regarding PFAS as early as 1999 through 2007. Mount Vernon has also refused to produce other documents from this timeframe showing the background of these communications about the hazards of PFAS or, what steps, if any, that Mount Vernon took as a result. This type of information does not just apply to 3M's relationship with MVM, we know that there is other discoverable information held by MVM from other

---

[4] Defendant has designated this document as confidential. Based on the content of the document, and the parties sending and receiving this document, Plaintiffs do not believe that this confidential designation is warranted.

defendant manufacturers, entities, or persons concerning the PFAS contamination in the area prior to 2016.

Legally discoverable information, such as that in the two example letters above, goes to the heart of the claims by the Plaintiff. On their face, they show the interaction between the PFAS manufacturing defendants and MVM. They also show knowledge of PFAS products at that time. This type of discoverable information also has key evidence, or may lead to key evidence, about how and where PFAS has been supplied, known threats to water contamination and to downstream supplies and water providers, actions taken (or not) to contain this contamination, care in the disposal of PFAS products, the effects on Trion's WPCP and the effects on Racoon Creek, among other issues.

We also know that these types of documents likely exist within MVM's possession due to the 30(b)(6) deposition. At this deposition, testimony was provided that MVM has a document retention policy dated to 2009 ("Retention Policy"), with versions of the Retention Policy that likely predated 2009. [Ex. 15, 19:10-21]. MVM's Retention Policy applied to documents created by MVM before 2009. [*Id*. 23:8-24:2]. Within MVM's Retention Policy, specifically spelled out, were categories of documents that contain, or may lead to, discoverable information for this case. Some of those categories are below (described generally as found in

12

the Retention Policy) The Retention Policy required that all categories of documents below be kept "indefinitely":



[Ex. 16, at 3-4, 7]. If Mount Vernon's discovery proposal is constrained to the dates and search terms as proposed in the MVM Dec. 15 Letter or to 2016, discovery of much of the relevant information and probative information for this case would be lost.

The Northern District of Georgia has repeatedly rejected discovery objections like the ones proposed by the Defendant. In *Upton v. McKerrow*, No. CIV.A.1:94-CV-353MHS, 1996 WL 193807, at *4 (N.D. Ga. Feb. 20, 1996), the court held that, "[i]n light of the liberal scope of discovery permitted under the federal rules" and because "relevant documents may have been created substantially prior to or after the proposed class period," defendant's proposed temporal limitations to discovery were unfounded. Similarly, in *Williams v. The Art Inst. of Atlanta*, No. 1:06 CV 0285 CC/AJB, 2006 WL 3694649, at *4 (N.D. Ga. Sept. 1, 2006), the court rejected defendant's discovery objections because the defendant "failed to suggest any reason why the time frame for [the requested] information [was] overbroad or burdensome

other than its argument that the only relevant events occurred during and after January 2005."

The Northern District has also held that a party's "unilateral assertion of what it considers relevant is insufficient to deny [opposing party] access to the discovery of information that could be relevant at trial." *Hallmark Ins. Co. v. Fannin*, No. 1:17-CV-04839-CAP, 2018 WL 8929810, at *3 (N.D. Ga. July 16, 2018). *See also Kipperman v. Onex Corp.*, 260 F.R.D. 682, 693 (N.D. Ga. 2009) ("Defendants wanted the court to grant them relief from producing e-mails they unilaterally determined were irrelevant or unrelated to this action. This was merely another effort by Defendants to improperly control the scope of discovery."). Likewise, the relevant temporal scope of discovery is the time period of factual allegations contained in the complaint. *See United States v. Am. Intercontinental Univ., Inc.*, No. 1:08-CV-2277-RWS-LTW, 2012 WL 12878365, at *2 (N.D. Ga. Jan. 20, 2012). Because the Second Amended Complaint concerns allegations that stretch back to at least 1992, that is the relevant timeframe to begin for purposes of discovery and proposed by the Plaintiffs. [Doc. 280]. This is a concession by the Plaintiffs. In reality, relevant, discoverable information for this case could go back to the 1980s.

The burden of producing information back to 1992 does not outweigh the benefits that this discovery would provide in determining an outcome for this case, as seen in the example letters above. And, MVM has already opened this door by

producing over 600 documents[5] that pre-dated 2016 due to inadvertent production because they "escaped a filter for 2016." [Ex 17, 263:7-15; Ex. 12, at n. 3]. This shows that production of documents within this date range is very possible; the Defendant has already proved that it can.

The other factors found in Rule 26(b)(1) also lend themselves to a search for information until at least 1992. The issues at stake in this case concern the health and welfare of the people living in Summerville and the water on which they rely. This is significant and of import for the whole area. The amount in controversy exceeds five million dollars ($5,000,000), and MVM would be the only party with access to their documents; MVM, by counsel's admission and as shown with documents already produced prior to 2016, can search for and review these documents. *See* FED. R. CIV. P. 26(b)(1) (factors determining scope of discovery).

## II.    The Clean Water Act's statute of limitations does not dictate the temporal scope of discovery in this matter.

MVM bases its discovery limitations on the statute of limitations for the Clean Water Act ("CWA") or Resource Conversation and Recovery Act ("RCRA"). "The Clean Water Act and Resource Conservation and Recovery Act are deemed to have

---

[5] Mount Vernon Mills states in the MVM Dec. 15 Letter that "slightly more than 600 documents" were inadvertently produced.  In the Nov. 16, 2021, 30(b)(6) deposition of Anthony Strickland, counsel for Mount Vernon states that at least 500 documents were produced.

statutes of limitation five years and state law claims no longer than four years."[6] This limitation is unwarranted, and the evidence already provided in this case shows that the limitations period would exclude relevant, discoverable information.

The CWA and RCRA statute of limitations has nothing to do with the relevant information discoverable in this case. First, as we have seen in section I) above, documents outside of the "limitations period" predating 2016 have a direct bearing on multiple claims in this case. Second, the statute of limitations for a claim does not dictate discovery temporal limitations, as Defendant claims. Courts have allowed discovery outside of the limitations period or controlling statutes. *See Evans v. Loc. Union 2127, Int'l Bhd. of Elec. Workers, AFL-CIO*, 313 F. Supp. 1354, 1360 (N.D. Ga. 1969) (holding that actions or practices before the effective date to Title VII of the Civil Rights Act were discoverable); *King v. Georgia Power Co.,* 50 F.R.D. 134 (N.D. Ga. 1970) (same regarding interrogatories); *Kemper v. Equity Ins. Co.*, No. 1:15-CV-2961-TCB, 2016 WL 7428215, at *3 (N.D. Ga. Apr. 29, 2016) (allowing discovery outside of the claims period and when the accident occurred).

In addition, there are other claims in this case besides those concerning the CWA and RCRA, such as nuisance, negligence, and failure to warn that refer back to differing time periods. MVM's knowledge and information going back to the

---

[6] [Ex. 12].

1992 about the harms of PFAS, application of biosolids, amounts of biosolids applied in the surrounding area, contracts with manufacturers, questions of safety, and other issues is relevant and probative of these claims. PFAS was used decades ago by MVM, and the pollution and harm caused by this use continues today, even though some forms of PFAS were phased out over 20 years ago. Information concerning on-going pollution initiated decades ago is relevant, discoverable, and cannot be denied by the Mount Vernon Mills in this case.

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiffs' Motion to Compel and order the Defendant to produce documents or other materials relevant to this lawsuit back to 1992 as outlined in the Plaintiff's Dec. 5 Letter with the custodians and terms suggested by the Plaintiff. [Ex.1]. In addition, the Defendant should also be ordered to respond to enumerated requests in the Plaintiff's Dec. 5 Letter of which a search has not been performed for information prior to 2016.

Respectfully submitted, this 2nd day of February, 2023.

*/s/ Gary A. Davis*
Gary A. Davis (*phv*)
Keith A. Johnston (*phv*)
DAVIS ATTORNEYS, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
gadavis@enviroattorney.com

17

Thomas Causby
Ga. Bar # 968006
101 E. Crawford St.
Dalton, GA 30720
tom@causbyfirm.com
Phone: 706-226-0300
Fax: 706-229-4363

*Attorneys for Plaintiff*

/s/ J. Anderson Davis
J. Anderson Davis (Ga. Bar No. 211077)
BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP
P.O. Box 5007
Rome, Georgia 30162-5007
Ph# (706) 291-8853
Fax# (706) 234-3574
adavis@brinson-askew.com

/s/ Lee T. Patterson
Jeff Friedman *(Pro Hac Vice)*
Lee Patterson (*Pro Hac Vice*)
FRIEDMAN, DAZZIO & ZULANAS, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Ph# (205) 278-7000
Fax# (205) 278-7001
jfriedman@friedman-lawyers.com

*Attorneys for Plaintiff-Intervenor*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the within and foregoing **PLAINTIFF'S MOTION TO COMPEL** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 2nd day of February, 2023.

*/s/ Gary A. Davis*