# EXHIBIT 12

Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308-2216



troutman.com

**William M Droze**
D 404.885.3468
william.droze@troutman.com

December 15, 2022

**VIA ELECTRONIC AND U.S. MAIL**

Gary A. Davis, Esq.
Davis Environmental Attorneys
21 Battery Park Avenue
Suite 206
Asheville, NC 28801

Re:   *Earl Parris v. 3M et al.*, U.S. District Court (N.D.Ga.), Civil Action No. 4:21-cv-00040-TWT

Dear Mr. Davis:

We have reviewed your correspondence dated December 5, 2022, as well as the Mount Vernon Mills ("Mount Vernon") corporate representative deposition transcript you reference, and the operative discovery requests served on behalf of your Client in this litigation.[1] Your letter, while referencing certain deposition testimony, does not identify the specific discovery request upon which you base your entitlement to supplementation.  After undertaking this comprehensive review, we have determined that a number of the items enumerated in your letter do not fall within any outstanding discovery requests, that at least one is expressly negated by the Stipulated Joint Protocol Governing Discovery of Documents and Electronically Stored Information entered June 14, 2022 (Dkt. 195)("Joint Protocol"), in this case, and that in several instances the cited testimony is either not communicative of the point asserted or is incorrectly cited.  With this in mind, we respond to the specific enumerated items in a good faith effort to resolve the asserted discovery dispute.  We remain willing to discuss these items further once you have an opportunity to review your position in light of our response.

Your letter also makes reference to ongoing discussions relative to the temporal scope of the discovery requests.   The requests that were served in most cases failed to specify a relevant time period raising burden and proportionality issues.  Our responses to the enumerated items should be deemed to include our discussion on the scope issue.  We address that issue in this letter as well.

---

[1] We have also reviewed the document requests appended to the Notice of Deposition of Mount Vernon's corporate representative served by the City of Summerville as well as Plaintiff Parris' adoption of that notice.  Mount Vernon preserves its objections to those Notices which were appended as an exhibit to that deposition.

Gary Davis, Esq.
December 15, 2022
Page 2



---

### Enumerated Discovery Items

      1.      The Mount Vernon Mills Sustainability/Environmental Policy

**Response:** **This policy was already produced, see MVM_00040938. In addition, this topic was discussed at pages 42-43 to the corporate representative deposition (Williams), not p.36. Mount Vernon preserves all objections to the cited testimony. Though not specific to this inquiry, Mount Vernon has located an additional sustainability report beyond 2018 that we will produce to Plaintiffs.**

      2.      The contract or agreement between Mount Vernon Mills, Inc., and the City (sic) of Trion for providing water from Mount Vernon Mills' Spring.

**Response:** **This purported discovery dispute item does not fall within any existing discovery request, and consequently Mount Vernon has no obligation to produce it. Moreover, even if a request had been made, there appears to be no relevance of such information to the present case given that the spring is upstream of any wastewater discharge and is a clean water source. Finally, the cited deposition testimony does not reflect a discussion about "providing water from Mount Vernon Mills' spring" but rather Mount Vernon's "ownership" rights of the spring at page 101, not the cited pages. Mount Vernon preserves all objections to the cited testimony.**

      3.      Payments made by the City (sic) of Trion to Mount Vernon Mills, Inc., for water.

**Response:** **This purported discovery dispute item does not fall within any existing discovery request, and consequently Mount Vernon has no obligation to produce it. Moreover, even if a request had been made, there appears to be no relevance of such information to the present case given that the spring is upstream of any wastewater discharge and is a clean water source.**

      4.      "Formal correspondence" between Mount Vernon Mills and the City (sic) of Trion, and particularly the Environmental Affairs Office of Mount Vernon Mills regarding any contracts or agreements for the handling of Mount Vernon Mills' wastewater, sludge or other waste products from Mount Vernon Mills' manufacturing processes.

**Response:** **Your letter does not contain any specific reference to deposition testimony on this topic. In addition, this purported discovery dispute item does not appear to fall within any existing discovery request, and consequently Mount Vernon has no obligation to produce it. To the extent that you contend that related items might fall within Request for Production 12, Mount Vernon has already made a production under that request,** *see* **MVM_00003444 - MVM_00003458. Mount Vernon incorporates all objections set forth in its response to Request for Production 12 as if originally set forth.**



5.   "Sludge management" plans.

**Response:** The cited deposition page is incorrect but the topic appears to make reference to corporate representative (Williams) deposition pages 129-130. Mount Vernon preserves all objections to the cited testimony. Further, sludge management would take place after wastewater treatment so it is unclear how this inquiry even relates to Mount Vernon. To the extent you contend that this item might fall within Request for Production 13, Mount Vernon has already made a production under that request, *see* **MVM_00037138 - MVM_00037151; MVM_00037304 - MVM_00037334. Mount Vernon incorporates all objections set forth in its response to Request for Production 13 as if originally set forth.**

6.   Any predecessor "record retention" policies.

**Response:** The cited deposition page is incorrect but the topic appears to make reference to corporate representative (Williams) deposition page 23. Mount Vernon preserves all objections to the cited testimony. On that page Mr. Williams testified that he did not believe any earlier policies existed. Mount Vernon stands by that testimony.

7.   The litigation hold letter issued in this case.

**Response:** The cited deposition page is incorrect but the topic appears to make reference to corporate representative (Williams) deposition pages 24-25. Mount Vernon preserves all objections to the cited testimony. In addition, this purported discovery dispute item does not appear to fall within any existing discovery request, and consequently Mount Vernon has no obligation of production. Finally, and most significantly, a litigation hold letter is deemed attorney work product under Fed.R.Civ.P. 26(b)(3)(A), absent a credible allegation of spoliation which does not exist in this case. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 48461, *22, 2020 WL 1321522 (N.D.Fla. March 20, 2020, Case No. 3:19-md-2885)("The prevailing view is that litigation hold notices are discoverable only if there is a preliminary showing of spoliation.").

8.   "Formal correspondence" between Mount Vernon Mills, Inc., and the City (sic) of Trion and/or the Georgia Environmental Protection Department (sic) ("EPD") concerning PFAS, perfluorochemicals and/or PFCs in Mount Vernon Mills' (sic), whether sent or received by email or mail.

**Response:** Your letter does not contain any specific reference to deposition testimony on this topic. To the extent you contend that this item might fall within Request for Production 11 and 12, Mount Vernon has already made a production under that request, *see* **MVM_00000285-303; MVM_00003074-MVM_00003075; MVM_00003079-80; MVM_00003083; MVM_00003097. Mount Vernon incorporates all objections set forth in its response to Request for Production 11 and 12 as if originally set forth.**



9.  A copy of Mount Vernon Mills' Corporate Ethics and/or Corporate Conduct Code.

**Response:    The cited deposition pages are incorrect but the topic appears to make reference to corporate representative (Williams) deposition pages 43-44.  This purported discovery dispute item does not appear to fall within any existing discovery request, and consequently Mount Vernon has no obligation to produce it.**

12.(sic)[2] Lawsuits against chemical manufacturers in the possession of Mount Vernon Mills, along with accompanying emails in the possession of Mr. Williams or Mr. Beagle (sic).

**Response:    The cited deposition pages are incorrect but the topic appears to make reference to corporate representative (Williams) deposition pages 50-51.  In addition, this purported discovery dispute item does not appear to fall within any existing discovery request, and consequently Mount Vernon has no obligation to produce it.  To the extent that you contend that related items might fall within Request for Productions 5 or 7, Mount Vernon has already made a production under that request,** see **MVM_00034018; MVM_00037019 - MVM_00037020. Mount Vernon incorporates all objections set forth in its response to Request for Productions 5 and 7 as if originally set forth.**

13.  Any and all text messages concerning PFAS containing products and the contamination of the City of Summerville water supply sent from or received by management employees with corporate mobile phones, including, but not limited to Ron Beagle (sic), Gary Williams and Edward G. Cochrane or Ned Cochrane.

**Response:    Pursuant to the Joint Protocol (Dkt. 195), the Parties mutually agreed that "The circumstances of this Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Producing Party believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources."  Joint Protocol at II(3), p.6.  "Mobile devices and ESI stored on mobile devices, including smart phone or tablets," Joint Protocol at II((3)(c), are expressly identified as "not reasonably accessible."  Mount Vernon has no belief that any information located on such a device is significantly relevant or unavailable from reasonably accessible sources.  Consequently, this item requires no action on the part of Mount Vernon and it is surprising that you raise it.  Further, Edward G. Cochrane and Ned Cochrane are the same person, and as you are aware, he served in the capacity of General Counsel to our Client.  Communications to or from him would likely be subject to attorney client or attorney work product privileges which Mount Vernon preserves here.**

---

[2] No item 10 or 11 was enumerated in your letter.

Gary Davis, Esq.
December 15, 2022
Page 5



---

**<u>Unlimited In Time Overbroad Discovery Requests</u>**

The issue of the scope of the discovery requests served upon Mount Vernon has been an ongoing topic of discussion between the parties since October 25, 2022 and has been the subject of both email and telephonic communications between counsel.[3]  In sum, Plaintiff Parris served discovery requests that in many instances contained no temporal limitation and Mount Vernon objected to that discovery and indicated that the relevant proportional temporal limitation should be January 1, 2016, a date slightly before the bar of the longest statute of limitations applicable to the Parris claims.[4]

We start with the premise that your discovery contained no temporal limitations at all. That makes them facially overbroad, and a Court acts will within its discretion in limiting them to the proper scope.  *Bagnato v. Phoebe Putney Health Sys.*, 2008 U.S. Dist. LEXIS 130009 (N.D. Ga. November 13, 2008, 1:08-cv-2114-JOF-SSC)(holding that discovery requests without temporal limitations appeared overbroad).

Rule 26 is explicit in its insistence that discovery is available for "nonprivileged matter that is relevant to any party's claim of defense . . ." Fed.R.Civ.P. 26(b)(1).  Although you have contended that the Clean Water Act statute of limitations has nothing to do with the relevant issues, nothing could be further from the truth.  No "claim" can be asserted for any conduct that is barred by the statute of limitation.  Thus, any documents that cannot be used to state a claim are by definition not relevant to the dispute. Neither are they proportional to the issues in the case.

The Northern District of Georgia has embraced just such a claim specific analysis with regard to discovery.  *Beaulieu Grp., LLC v. Mohawk Carpet Distrib., Inc.*, 2016 U.S. Dist. LEXIS 203692 (N.D. Ga. August 3, 2016, 4:15-cv-0124-HLM)("In assessing relevance, the Court must 'focus on the specific claim or defense alleged in the pleadings.'" [Cit.Om.]).  That case further notes that it is the burden of the party seeking the discovery to justify its relevance. *Id*.   Simply alleging historical conduct does not make it relevant.  Rather, Plaintiff has the burden of showing that the conduct involved in the "claim" is relevant.  Understandably, the Complaint focuses on issues within the limitations period, such as the 2019-2020 EPA sampling and EPD involvement (Am. Compl. at Paras. 74-78, 101), and permitting in 2019 (Am. Comp. Para. 106).  And Mount Vernon has produced documents, over 42,000 pages of material, within that period, at substantial cost.  However, Plaintiffs utterly fail to justify how documents pre-dating the limitations period by more than twenty years (or even in proximity to the bar date) would support their claims which amount to property devaluation and increased utility costs.

---

[3] As noted in those discussions, slightly more than 600 documents that pre-date 2016 were inadvertently produced and Plaintiffs are already in possession of those documents.

[4] As we pointed out during our discussions, the City of Summerville currently asserts no claims for relief against Mount Vernon.

Gary Davis, Esq.
December 15, 2022
Page 6



---

Though not a Northern District of Georgia case, the Northern District of Florida has succinctly noted that "Courts regularly narrow the scope of records requests that have no temporal limit or when the requested time period is too distant from the events giving rise to a plaintiff's claims." *G.H. v. Marstiller*, 2020 U.S. Dist. LEXIS 265608 (N.D. Fla. March 24, 2020, 4:19-cv-431 MW/CAS). That court further noted: "Implicit in these rulings is the understanding that there is an inverse relationship between time on one side, and relevance and proportionality on the other. That is to say, the more distant in time the information is, the less relevant it is and the more likely it is that discovering it would be disproportional to the needs of the case.") *Id.*

The Northern District of Georgia has employed in practice precisely that approach. Even in a case you previously cited, *U.S. ex rel. Powell v. Am. Intercontinental Univ., Inc.*, 2013 U.S. Dist. LEXIS 201823 (N.D. Ga. February 22, 2013, 1:08-cv-2277-RWS-LTW), in a follow on decision to your cited decision the Magistrate Judge limited discovery based upon the claim advanced. Id. (holding that documents generated prior to 2005 were not discoverable notwithstanding the existence of prior investigations from 2002-2005). And in that case it was merely 3 years, not decades as you argue for in this case. This is equally true as to the proportionality burden addressed in the Florida *Marstiller* case. See *Tillman v. Gwinnett Co. Sch. Dist.*, 2005 U.S. Dist. LEXIS 57913 (N.D. Ga. April 18, 2005, 1:04-cv1180-BBM)(holding a district court has the discretion to limit discovery if the burden placed on the producing party would outweigh the benefit conferred on the other party).

Finally, although you cite no district court or appellate authority to demonstrate that a district court errs in limiting discovery to the limitations period (and in this case longer than the limitations period for the state law claims), the Northern District of Georgia has in fact limited discovery in that fashion. See *Peacock v. Retail Credit Co.*, 302 F. Supp. 418 (N.D. Ga. 1969)('[t]he conclusions which the court has reached dictate that any further discovery, either beyond the period of the statute of limitations, or from third parties, would be irrelevant, immaterial, and to no avail under the issues before the court.")

Having this background, which we have already discussed, we turn to the proposal contained in your letter. Rather than propose a temporal limitation which befits the claims in this case, you continue to insist upon a collection date of 1992, twenty-four years before the attachment of the longest statute of limitation in this case.[5] We have already employed as a search term the names of the manufacturer defendants in this case so searching individual names that you specify as "suppliers" would not be productive. We have also already employed in our existing searches a substantial number of the same proposed search terms (over 20). Certain of the terms you propose yield broad non-responsive documents (e.g. wastewater, safety data sheet, SDS, MSDS, chemicals used), given that Mount Vernon as a textile company utilizes many chemicals and water solutions completely unrelated to any PFAS compounds. In addition, certain terms have nothing to do with Mount Vernon, for example, you reference "Licensing

---

[5] The Clean Water Act and Resource Conservation and Recovery Act claims are deemed to have statutes of limitation of five years and the state law claims no longer than four years. This action was filed on February 23, 2021 [Dkt. 1].

**Gary Davis, Esq.**
December 15, 2022
Page 7



Agreement" even though in deposition it was affirmatively testified that Mount Vernon does not participate in licensing agreements with chemical manufacturers, rather the wholesale client of Mount Vernon undertakes those agreements. *See* Corp. Rep. Dep. (Strickland), pp. 218-19, 226.

In an effort to resolve this dispute however, we would propose a supplemental production along the lines described herein; to be clear, not on the grounds that such a production is required, but rather as an effort to compromise the current disagreement between the parties and avoid burdening the Court. Mount Vernon would be amenable to producing non-privileged pre-2016 documents that implicate one of the proposed search terms you identified and a manufacturer defendant.[6] During our earlier discussions, Plaintiffs expressed interest in the terms "indemnity" and "toxicity;" notably toxicity is listed among your terms but indemnity is not. Mount Vernon is willing to make a supplemental production of non-privileged documents beyond 2016 for these terms. Plaintiffs also inquired at the corporate representative deposition of Mount Vernon, utilizing documents already in Plaintiffs' possession from other cases, about communications with 3M pre-dating 2016. Although as shown in the chart provided by Mount Vernon it has not purchased a 3M product since well before the applicable statute of limitations, because it is of apparent interest to Plaintiffs, Mount Vernon is amenable to producing non-privileged records related to communications with 3M that pre-date 2016. We believe that addressing specific issues rather than engaging in more broad-based and expensive non-proportional discovery is a reasonable accommodation here. Mount Vernon has already spent substantial sums, over $75,000, in connection with the collection, review, and production of over 42,000 pages of documents in this case. Insisting upon yet more broad-based collection, review, and production of 24 years of material is neither productive, nor proportional. Please advise if you are willing to reach a compromise in the manner proposed.

## CONCLUSION

We have spent considerable time and effort on behalf of our Client in responding to the various items that have been identified in your correspondence, many of which we believe are either not subject to a pending discovery request or require no action by Mount Vernon due to prior productions. In at least one instance, a purported discovery dispute is predicated upon an issue which is expressly controlled and defeated by the Parties' Joint Protocol. While we remain ready and willing to work with you with regard to reasonable discovery in this case, we do not take lightly insinuations that our Client has not adequately responded to existing discovery under these circumstances and respectfully urge you to confine disputes to matters of substance for which we are happy to engage in further discussion for purposes of clarification or supplementation. With regard to any items identified as lacking a pending discovery request, we will respond within the applicable rules to any additional discovery request.

---

[6] This supplemental production would be in addition to the over 600 documents already in your possession due to the inadvertent production of pre-2016 date limited documents.

**Gary Davis, Esq.**
December 15, 2022
Page 8



---

We look forward to hearing from you with regard to our proposal to compromise this dispute relative to the temporal scope of the document production.  Please note that if you agree to the proposed supplemental production we will need some time to review and produce the additional documents so that time frame should be anticipated from the point at which we receive your agreement.

    Sincerely,

    *s/William M. Droze*

    William M Droze

WMD:rf

cc:   Jeff Friedman, Esq.
      Kadeisha West, Esq.
      Matt Bailey, Esq.