IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| EARL PARRIS, JR., individually, and on behalf of a Class of persons similarly situated, ) ) ) ) | |
| *Plaintiff*, ) | Civil Action No. 4:21-cv-00040-TWT |
| ) | |
| vs ) | |
| ) | |
| 3M COMPANY, et al., ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANT MOUNT VERNON MILLS, INC.'S RESPONSE TO PLAINTIFFS' OBJECTION TO ASSERTION OF PRIVILEGE AND MOTION FOR *IN CAMERA* REVIEW

In accordance with the procedures set forth under the Court's Agreed Protective Order (Dkt. 239), Defendant Mount Vernon Mills, Inc. ("Mount Vernon") opposes the Objection to Assertion of Privilege and Motion for *In Camera* Review of Documents (the "Motion") of Plaintiff Earl Parris, Jr. ("Parris") and Intervenor-Plaintiff the City of Summerville, Georgia ("Summerville") (and collectively, "Plaintiffs").[1]

---

[1] Intervenor-Plaintiff City of Summerville on two occasions has affirmatively stated that it seeks no relief against Mount Vernon (Compl., Dkt. 137 at 4; Resp. to Mot. for More Def. Statement, Dkt. 301 at 3), and the only discovery Summerville sent to Mount Vernon was in conjunction with a corporate representative deposition

**INTRODUCTION**

Plaintiffs ask the Court to find that two inadvertently produced emails (the "Emails") that Mount Vernon sought to claw back pursuant to the Agreed Protective Order are not privileged under the attorney client privilege or work product doctrine. The emails in question, exchanged after Parris threatened litigation under the Clean Water Act, comprise a direct communication between codefendants Mount Vernon and Town of Trion, Georgia ("Trion"), pursuant to which Mount Vernon communicated questions posed by its attorney, Greg Blount, to Trion, and Trion answered those questions. Plaintiffs argue the Emails are not privileged or attorney work product because they would be subject to disclosure under Georgia's Open Records Act ("Act") and because the Emails were shared with Trion which, Plaintiffs argue, has already independently produced the emails. Plaintiffs are mistaken.

At the outset, Mount Vernon is not a public agency nor is it subject to the Act, rendering Plaintiffs' argument by analogy wholly meaningless. The determination

---

of Mount Vernon; however, that discovery did not call for the production of the disputed documents. Thus, it is unclear what basis Summerville has for insisting upon retaining the privileged documents that were produced to Parris. Likewise, Parris fails to identify in his moving papers the specific discovery request implicated preventing Mount Vernon from addressing it in this response.

of whether the disputed documents are subject to production are governed by the Federal Rules of Civil Procedure and interpreting case law, not the Act.  Disclosure of privileged communications among parties does not waive the privilege where the parties share "strong common interests." Motion, at 6 (*quoting Jones v. Tauber & Balser, P.C.*, 503 B.R. 510 (N.D. Ga. 2013)). Attorneys do not have to send or receive an email for that email to fall within the protection of the attorney-client privilege or work product doctrine. *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014).  This rule has been applied in like circumstances to this case. *See RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17 C 3595, 2020 WL 1433828, at \*10 (N.D. Ill. Mar. 24, 2020) (email exchanges between employees revealing substance of information sought by counsel privileged).

Because Plaintiffs could not seek these documents from Mount Vernon pursuant to an Open Records Act request, the Act's provisions concerning privilege and work product are irrelevant here. But even if Plaintiffs were utilizing the Open Records Act, the Act still protects the Emails while in the possession of Trion, as they qualify as attorney work product, were sent between joint defendants who share a strong common interest, and they reveal Mount Vernon's attorney's mental impressions and legal conclusions. As more fully discussed herein, the Court is respectfully urged to deny Plaintiffs' Objection.

## BACKGROUND

On November 20, 2020, Plaintiff Parris sent to Mount Vernon and Trion a notice of intent to sue letter under the Clean Water Act. (Second Am. Compl. Dkt. 280 at ⁋10.)  The Emails that are the subject of Plaintiff's Motion were exchanged between Mount Vernon and Trion twelve days later.  As alleged in the Parris Complaint, Mount Vernon is a textile manufacturer and Trion operates a wastewater treatment facility that receives process water from Mount Vernon's manufacturing processes.  (Second Am. Compl. Dkt. 280 at 5, 34).  As Trion's largest contributor of process water, Mount Vernon and Trion closely coordinate the management of wastewater at the Trion facility.  (*Id*. at 34).  Consequently, Mount Vernon and Trion share a strong common interest relative to the allegations Plaintiffs make in this litigation.

The Emails, a true and correct copy of which is attached hereto as sealed Exhibit A, were initiated on December 2, 2020 when Ronald Beegle of Mount Vernon emailed Andy Melton of Trion at the direction of counsel. Mr. Beegle asked Mr. Melton questions posed by Mr. Blount.  (*See* Exhibit A). At the bottom of Mr. Beegle's email was a list of seven bullet-point questions. (*Id.*) Several hours later, Mr. Melton provided a response that consisted entirely of seven separate paragraphs, each of which responded to one of the questions that Mr. Beegle posed earlier in the

day at the direction of counsel. (*Id.*)

The day before the Emails were sent, Mount Vernon's counsel, Gregory W. Blount, emailed Mr. Beegle, copying co-counsel and Mount Vernon's in-house counsel. A true and correct copy of Mr. Blount's December 1, 2020 email to Mr. Beegle is attached hereto as sealed Exhibit B.[2] Mr. Blount's email to Mr. Beegle provided, verbatim, the same list of questions that Mr. Beegle sent to Mr. Melton the next day. (*Id.*)

On November 16, 2022, counsel for Mount Vernon informed Plaintiff's counsel that the Emails had been inadvertently produced and requested that Plaintiff's copies be destroyed. Plaintiff disagreed, and the parties exchanged

---

[2] Mr. Blount's email, sent from counsel to client and providing legal advice on the litigation threatened by Plaintiff's counsel's notice to sue letter, is unquestionably privileged. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga. 2014). Mount Vernon attaches this document for *in camera* review and under seal only because Plaintiffs' Motion casts doubt on Mount Vernon's counsel's repeated representations that the questions conveyed and answered in the Emails came directly from counsel. *See* Motion, at 2 & n.2. Mount Vernon does not waive the privilege of this document by filing it under seal for defensive use. *See Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*, 176 F.R.D. 695, 696 (M.D. Ga. 1997) (where the Court in deciding whether an inadvertent disclosure of privileged documents waived the privilege, noted that it placed the "documents in question under seal pending a hearing and in camera review"). Nor does filing the Emails under seal waive protections from disclosure. *See* Fed. R. Civ. P. 26(b)(5)(B).

correspondence on the subject.[3] The instant Motion followed.

## ARGUMENT

## I.    The Emails Are Privileged.

The disputed Emails consist of Mount Vernon sending Trion questions posed by Mount Vernon's attorney, and Trion answering those questions which were exchanged between entities sharing a strong common interest after the threat of litigation. This is classic attorney work product as extended by the common interest/joint defense privilege:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238-239 (1975).

As Plaintiffs concede, disclosure of privileged communications among parties

---

[3] While Plaintiffs attached their letter to Mount Vernon to their Motion, *see* Motion, Ex. B, they neglected to attach Mount Vernon's response. In order that the Court can review the entirety of the correspondence Plaintiffs have placed at issue, Mount Vernon attaches as Exhibit C, a true and correct copy of its January 11, 2023 letter to Plaintiff's counsel. That letter addresses, and refutes, the exact claims that form the basis for Plaintiffs' Motion.

does not waive the privilege where the parties share "strong common interests."

(Motion, at 6)(*quoting Jones v. Tauber & Balser, P.C.*, 503 B.R. 510 (N.D. Ga.

2013)). Specifically,

> The "common interest" privilege, also known as the joint defense privilege, applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects.

*Monitronics Int'l, Inc. v. Hall, Booth, Smith, P.C.*, No. 1:15-cv-3927-WSD, 2016

WL 7030324, at *13 (N.D. Ga. Dec. 2, 2016) (quoting *McKesson Corp. v. Green*,

597 S.E.2d 447, 452 n.8 (Ga. Ct. App. 2004)). Mount Vernon and Trion

unquestionably share strong common interests: they are both defendants in the

instant litigation, and are subject to the same claims, premised on the same factual

allegations. Plaintiffs do not even attempt to rebut the clear common interest Mount

Vernon and Trion have as codefendants in this matter. (*See generally,* Motion).

Furthermore, the Emails were "designed to further" the parties' common interest in

defending against Parris's potential claims, as revealed from Plaintiff's notice of

intent to sue. As such, the sharing of the Emails between Mount Vernon and Trion

does not waive the work product privilege.

Here, the questions posed by Mr. Blount are related to the threat of litigation

with respect to Summerville and Plaintiff's counsel's notice of intent to sue. (*See* Exhibit B). Mr. Blount was seeking the answers to those questions to aid in his analysis of the threat of litigation in order that he might render legal advice on the situation. Because these communications were made "for the purpose of securing legal advice," they are privileged and protected from disclosure, unless the privilege has been destroyed or waived.

Plaintiffs argue the privilege has been waived because 1) Mount Vernon shared the Emails with Trion, a third party; and 2) Trion voluntarily produced the Emails independently. (Motion, at 6-7). As an initial matter, Trion's production was also inadvertent, and Trion sought to claw back its production. (*See* August 9, 2022 email from counsel for Trion to all counsel, a true and correct copy of which is attached hereto as Exhibit D). Plaintiffs lodged no objection to Trion's claw back request for the same documents.  Inadvertent production does not waive the privilege where "the holder of the privilege or protection took reasonable steps to prevent disclosure; and . . . the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). Moreover, the Agreed Protective Order expressly addresses the situation of inadvertent production and both Mount Vernon and Trion exercised their rights promptly under that Order. (Agreed Protective Order, Dkt. 239 at 31). Thus, Plaintiffs' argument that Trion's production defeats Mount Vernon's privilege

is simply false.

Secondarily, Plaintiffs suggest that the fact that no attorneys were included on the Emails renders the work product privilege inapplicable. (Motion, at 6 fn. 3-4). Plaintiffs are again mistaken. Federal Rule of Civil Procedure (a)(3)(A) expressly states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Attorneys do not have to send or receive an email for that email to fall within the protection of the attorney-client privilege or work product doctrine. *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014) ("[T]o the extent Plaintiffs argue that an internal corporate communication is necessarily non-privileged because it was between non-attorney employees, the Court rejects that assertion." (citation omitted)); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1323 n.1 (N.D. Ga. 2015) ("It is well settled that materials prepared by non-attorney 'investigators and other agents' may be entitled to [work product] protection if they were created in anticipation of litigation."). Indeed, counsel need not even have been retained.  See *Ruotolo v. City of New York*, 2005 U.S. Dist. LEXIS 5958, *5, 2005 WL 823015 (S.D. NY April 7.2005)("The mere

fact that the litigation had not yet commenced, or that plaintiff had not retained counsel, does not render the notes ineligible for work product protection.").

In fact, this rule has been applied in a very similar situation to this one. In *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17 C 3595, 2020 WL 1433828, at *10 (N.D. Ill. Mar. 24, 2020), the court considered, among other documents, "email exchanges between . . . employees about information requested by [employer's] attorneys." The portions of the email chain that "reveal[ed] the substance of the information sought by [employer's] attorneys," were found to be privileged and protected from disclosure. (*Id.*); *see also McCall v. Procter & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3997375, at *5 (S.D. Ohio Aug. 22, 2019) (considering communications between non-lawyers that "convey legal updates" and "implement legal advice," and holding, "The purpose of all the communications is to obtain or relay legal advice. Thus, all are covered by the attorney-client privilege, notwithstanding the fact that none lists an attorney as a sender, recipient, or copied party.").

## II.   Georgia's Open Records Act Does Not Apply Here, and, If It Did, It Affirms that the Emails Are Privileged Work Product.

Oddly, Plaintiffs' primary argument is centers on Georgia's Open Records Act, (Motion, at 3-6), not the Federal Rules. Plaintiffs argue that the Emails are records subject to Open Records Act requests, and that the provisions of the Open

Records Act pertaining to privilege and work product do not protect the emails. *See* O.C.G.A. § 50-18-72(a)(41, 42).

However, Plaintiffs have not made any request under the Act that is at issue on this Motion, none is attached to their Motion, and in any event Mount Vernon is not a public entity subject to that Act anyway. The scope of a public entity's ability to resist disclosure of its records under the Act is simply immaterial here, and Mount Vernon's obligations are governed solely by the Federal Rules of Civil Procedure, which, as discussed, protect the Emails from disclosure. Even were Plaintiffs to argue that Mount Vernon could not claim privilege as to a document that Trion could be forced to produce (if a proper records request were pending), statutory protections from disclosure for privileged communications and work product exist such that "[p]ublic disclosure shall not be required." O.C.G.A. § 50-18-72(a).

Even if the Act were implicated here, it supports Mount Vernon's clawback of the Emails. Section 50-18-72(a)(42) addresses "[c]onfidential attorney work product." Plaintiffs claim that "the attorney work product exception to Georgia's public disclosure statute was narrowly drafted to apply only to the 'factual findings' and 'legal conclusions' of an attorney." (Motion, at 5). This misreads the statute. First and foremost, Section 50-18-72(a)(42) protects "[c]onfidential attorney work product". The statute then goes on to articulate the following exception:

this paragraph shall not apply to the factual findings, but shall apply to the legal conclusions, of an attorney conducting an investigation on behalf of an agency so long as such investigation does not pertain to pending or potential litigation, settlement, claims, administrative proceedings, or other judicial actions brought or to be brought by or against the agency or any officer or employee . . . .

O.C.G.A. § 50-18-72(a)(42).

Section 50-18-72(a)(42) would plainly protect the Emails if it applied here, for a host of reasons. The questions posed implicate Mr. Blount's legal conclusions, impressions and strategy, and the answers given constitute information shared for the purpose of providing legal advice in the context of parties who have a strong common interest. As such, even if Plaintiffs' flawed reading of the statute were correct, the Emails would still fall within the protection afforded to work product under Section 50-18-72(a)(42).[4]

## CONCLUSION

In sum, the disputed Emails were exchanged by parties with a strong common interest in the defense of threatened litigation and as such plainly constitute attorney work product. The communications only occurred because counsel directed them to

---

[4] O.C.G.A. § 50-18-72(a)(41) is structured similarly and protects "records containing communications subject to the attorney-client privilege recognized by state law," with exceptions not relevant here. Plaintiffs' sole argument as to inapplicability is that no attorneys were included on the Emails. This fact does not vitiate the privilege for the reasons discussed. *See Davita, Inc.*, 301 F.R.D. at 681.

happen and even used the verbatim questions that counsel posed.  Plaintiffs' position that the Emails are not protected from disclosure because they were shared between non-attorney parties to this litigation is plainly foreclosed by applicable precedent. Moreover, Plaintiffs' reliance on Georgia's Open Records Act is misplaced, given that Mount Vernon is not a public agency, and no request under that Act is at issue. For the foregoing reasons, Mount Vernon respectfully requests that the Court deny Plaintiffs' Motion and instead order the Emails returned or destroyed pursuant to the Agreed Protective Order.

This the 3rd day of February, 2023.

/s/William M. Droze
WILLIAM M. DROZE
Georgia Bar No. 231039
T. MATTHEW BAILEY
Georgia Bar No. 194516
KADEISHA A. WEST
Georgia Bar No. 640699
Troutman Pepper Hamilton Sanders, LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
william.droze@troutman.com
matt.bailey@troutman.com
kadeisha.west@troutman.com
(404) 885-3468
(404) 885-2716

*Attorneys for Defendant Mount Vernon Mills, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the within and foregoing DEFENDANT MOUNT VERNON MILLS, INC.'S RESPONSE TO PLAINTIFFS' OBJECTION TO ASSERTION OF PRIVILEGE AND MOTION FOR *IN CAMERA* REVIEW was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This the 3rd day of February, 2023.

/s/William M. Droze
William M. Droze
Georgia Bar No. 231039
william.droze@troutman.com
*Attorney for Defendant Mount Vernon Mills, Inc.*

TROUTMAN PEPPER HAMILTON
SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216
Telephone: 404-885-3000
Facsimile: 404-885-3900