# EXHIBIT C



Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, 600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308

troutman.com

**William M. Droze**
D 404.885.3468
william.droze@troutman.com

January 11, 2023

**VIA ELECTRONIC MAIL**

Jeff Friedman, Esq.
Friedman Dazzio & Zulanas, P.C.
3800 Corporate Woods Dr.
Birmingham, AL 35242
Jfriedman@friedman-lawyers.com

Gary Davis, Esq.
Davis & Whitlock, P.C.
21 Battery Park Ave.
Asheville, NC 28801
Gadavis@enviroattorney.com

**RE:** *Earl Parris, Jr. v. 3M Company, et al.*, Case No. 4:21-cv-00040-TWT (N.D. Ga.); Correspondence Concerning Inadvertent Production Of Documents Protected By Attorney-Client Privilege And The Work Product Doctrine

Dear Mr. Friedman and Mr. Davis:

This letter responds to your January 3, 2023 correspondence, in which you contend that a document comprised of two emails between Mount Vernon Mills, Inc. ("Mount Vernon") and the Town of Trion ("Trion") and inadvertently produced by Mount Vernon (MVM_00003074-75, duplicated at MVM_0036719-20) are not protected from disclosure by the attorney-client privilege or work product doctrine.[1] Mount Vernon disagrees, and pursuant to the Agreed Protective Order reiterates its November 16, 2022 request that you delete or destroy all copies of the referenced documents.

As a preliminary matter, the context in which these communications arose is significant, if not dispositive, here. On November 20, 2020, Mr. Davis sent a notice of intent to sue letter under the Clean Water Act to both Mount Vernon and Trion. It cannot be seriously argued that litigation was not anticipated subsequent to transmittal of those letters. At the instance of counsel, the privileged communication at issue was initiated on December 2, 2020, indisputably after the date litigation was anticipated. The embedded questions are part of a direct communication between

---

[1] At the outset, we note that only Plaintiff Parris served discovery requests upon Mount Vernon and to the extent that Summerville contends that it served such requests in connection with the corporate representative deposition of Mount Vernon it is not clear that those requests would capture the disputed communications. Regardless, Mount Vernon objected on privilege grounds to all discovery.

138429607v2

MESSRS. FRIEDMAN AND DAVIS

Page 2



Greg Blount, as counsel for Mount Vernon, and Ron Beegle, on December 1, 2020, and intended to be posed to Andy Melton at Trion to ascertain facts relative to the threatened litigation. Thus, the communication seeks to gather information directly related to the subject matter of the anticipated litigation from a putative co-defendant with which Mount Vernon has strong common interests.

Your argument appears to be primarily based on the fact that "[n]o attorneys are copied on either email, and neither email mentions any privilege, confidentiality, or work product protection." On this basis, you conclude that the document is not protected by attorney-client privilege or the work product doctrine. Second, you argue that O.C.G.A. § 50-18-72(a)(41, 42) do not shield the document from disclosure as public records because you conclude the document does not include "factual findings" and "legal conclusions."

Significantly, your letter does not discuss the applicability of the joint defense / common interest privilege, pursuant to which "[p]arties who share 'strong common interests' may also share privileged or protected material without waiving the privilege or protection." *Jones v. Tauber & Balser, P.C*, 503 B.R. 510, 517 (N.D. Ga. 2013); *FTC v. Actavis (In re Androgel Antitrust Litig. (No. II))*, 2015 U.S. Dist. LEXIS 173299, *16 (N.D. Ga. Dec. 30, 2015, 1:09-MD-2084-TWT)(Thrash, J). There is no dispute that Trion and Mount Vernon had a strong common interest in connection with the litigation you threatened or that the privileged communications were made in furtherance of a joint defense. Given that Mount Vernon is the largest contributor of wastewater to the Trion WTP, as plaintiffs themselves contend, the common interest here is indisputable. Accordingly, the fact that the document in question is an email between Trion and Mount Vernon, even in the absence of counsel being copied, does not destroy privilege or work product protections that would otherwise apply, especially where the communication was at the direction of counsel. The communication was initiated at the direction of counsel for Mount Vernon.

You appear to be claiming that, despite the strong common interest Trion and Mount Vernon share in the defense of the litigation you threatened (such that communications between them remained privileged and work product), the fact that no attorneys are included on the email vitiates these protections.[2] You are incorrect. Federal Rule of Civil Procedure (a)(3)(A) expressly states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Attorneys do not have to send or receive an email for that email to fall within the protection of the attorney-client privilege or work product doctrine. *United States v. Davita, Inc.*, 301 F.R.D. 676, 681 (N.D. Ga. 2014) ("[T]o the extent Plaintiffs argue that an internal corporate communication is necessarily non-privileged because it was between non-attorney employees, the Court rejects that assertion." (citation omitted)); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1323 n.1 (N.D. Ga. 2015) ("It is well settled that materials prepared by non-attorney 'investigators and other

---

[2] You also seem to rely on the absence of labels on these communications indicating confidentiality or privilege. But the presence of such labels "makes no difference" to the elements necessary to establish privilege or work product. *United States v. Singhal*, 800 F. Supp. 2d 1, 11 (D.D.C. 2011).



agents' may be entitled to [work product] protection if they were created in anticipation of litigation.").

This rule has been applied in a very similar situation to this one. In *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, Case No. 17 C 3595, 2020 WL 1433828, at *10 (N.D. Ill. Mar. 24, 2020), the court considered, among other documents, "email exchanges between . . . employees about information requested by [employer's] attorneys." The portions of the email chain that "reveal[ed] the substance of the information sought by [employer's] attorneys," were found to be privileged and protected from disclosure. *Id.*; *see McCall v. Procter & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3997375, at *5 (S.D. Ohio Aug. 22, 2019) (considering communications between non-lawyers that "convey legal updates" and "implement legal advice," and holding "The purpose of all the communications is to obtain or relay legal advice. Thus, all are covered by the attorney-client privilege, notwithstanding the fact that none lists an attorney as a sender, recipient, or copied party.").

Here, two emails are at issue. The first involves Mount Vernon sending "questions from Greg [Blount, then-counsel for Mount Vernon]" to Trion. The second contains Trion's answers to those questions. Both emails unquestionably reveal the substance of the information sought by Mount Vernon's counsel as well as his legal conclusions and strategy. As a result, they are privileged as communications from counsel and protected work product, notwithstanding that the emails were sent and received by non-attorneys.

You next raise questions about whether the privileged communications would be subject to the Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq. (the "Act").  At the outset, you did not make an Open Records Act request and in any event Mount Vernon is not a public entity subject to that Act.  Consequently, citation to the Act with regard to Mount Vernon is simply immaterial. The disclosure of these documents *vis a vis* Mount Vernon is governed solely by the Federal Rules.  But even if the Act were to have some application here, because these emails fall within the ambit of the attorney-client privilege and work product doctrine, they are also statutorily protected from disclosure under the Act contrary to your implication. O.C.G.A. § 50-18-72(a)(41) protects "records containing communications subject to the attorney-client privilege recognized by state law" and Section 50-18-72(a)(42) is structured similarly, to broadly protect "[c]onfidential attorney work product." You write that "the attorney work product exception to Georgia's public disclosure statute only applies to the 'factual findings' and 'legal conclusions' of an attorney." This misreads the statute. First and foremost, Section 50-18-72(a)(42) protects "[c]onfidential attorney work product". The statute then goes on to suggest that there may be a limited waiver of that protection – thus you posit an exception to the exception.  Plainly, the investigation by Mr. Blount did involve potential litigation at the time of the communication (actual litigation now), and was initiated by an attorney, and his legal conclusions and strategy plainly are evident in the correspondence and fall within the exception to the Act. *Compare Fulton DeKalb Hosp. Auth. v. Miller & Billips*, 293 Ga. App. 601, 603, (2008)(holding that records were available when there was not potential litigation). Further the communications between Mr. Beegle and Mr. Melton were not "factual findings" but rather an information exchange in furtherance of the privileged inquiry from Mr. Blount involving legal strategy.

Neither of the subject matters you discuss (investigations by agency attorneys or hospital authorities) are at all relevant here, and neither suggests that the Georgia Legislature intended to



compel the disclosure of attorney client communications or work product. But even if you were correct, the emails in question *do* disclose the "legal conclusions" and strategy of Greg Blount, Mount Vernon's attorney, at a time of undisputed potential litigation. The entire purpose of those emails was to solicit and receive information on the questions posed by Mr. Blount about the litigation you threatened. Thus, the emails are protected under both relevant subsections of Section 50-18-72 and the Act does not compel their release even if it had any bearing on the current situation and relative to a private entity not subject to the Act. Neither would your argument overcome a joint defense privilege available to Trion to the extent you are suggesting that a waiver under the Act by Trion could be imputed to Mount Vernon.

For the foregoing reasons, Mount Vernon reaffirms that the communications in question are privileged and constitute protected work product. Please confirm you will destroy or delete all copies in your possession, as previously requested. Insofar as you have threatened to involve the Court in this dispute, given the absence of merit to that position, we urge you in the strongest possible terms not to burden the Court and reserve all rights should a motion be filed.

Please feel free to reach out to me if you would like to discuss this matter further.

                                                      Sincerely,

                                                     *s/William M. Droze*

                                                     William Droze

cc:     Andy Davis
        Brinson, Askew & Berry
        Adavis@brinson-askew.com

        Tom Causby
        Morris & Dean
        Tom@morrisanddean.com

        Lee Patterson
        Friedman, Dazzio & Zulanas, P.C.
        LPatterson@friedman-lawyers.com

        Kimberly Sheridan
        Gordon Rees Scully Mansukhani
        ksheridan@grsm.com