IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| EARL PARRIS, JR., individually, and on behalf of a Class of persons similarly situated,<br><br>*Plaintiff,* and<br><br>CITY OF SUMMERVILLE, GA.,<br><br>*Intervenor Plaintiff,*<br><br>v.<br><br>3M COMPANY, DAIKIN AMERICA, INC., HUNTSMAN INTERNATIONAL, LLC, PULCRA CHEMICALS, LLC, MOUNT VERNON MILLS, INC., TOWN OF TRION, GEORGIA, RYAN DEJUAN JARRETT, and E.I. DU PONT DE NEMOURS AND COMPANY; and THE CHEMOURS COMPANY;<br><br>*Defendants*. | CIVIL ACTION FILE NO.:<br>4:21-cv-00040-TWT |

**PLAINTIFF AND INTERVENOR-PLAINTIFF'S REPLY TO DEFENDANT MOUNT VERNON MILLS, INC.'S RESPONSE AND DEFENDANT TOWN OF TRION, GEORGIA'S JOINDER IN RESPONSE TO PLAINTIFFS' OBJECTION TO ASSERTION OF PRIVILEGE AND MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS**

Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff, the City of Summerville, Georgia, in Reply to Defendant Mount Vernon Mills, Inc.'s ("Mount Vernon Mills")

1

Response to Plaintiffs' Objection to Assertion of Privilege and Motion for *In Camera* Review (Doc. 333) and Defendant Town of Trion, Georgia's ("Trion") Joinder in Mount Vernon Mills' Response (Doc. 337), set forth and show the following[1]:

## ARGUMENT

The burden of proving the applicability of attorney-client privilege or work product protection falls squarely on Mount Vernon Mills and Trion (collectively "Defendants"). *See United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga.

---

[1] In its Response, Mount Vernon Mills contends that Plaintiff "fails to identify . . . the specific discovery request implicated preventing Mount Vernon from Mount Vernon from addressing it in this response." (Doc. 333, at 1 n.1.) However, there is no requirement in the Agreed Protective Order (Doc. 239) that Plaintiff identify a specific discovery request that the documents in question were produced in response to. And, in any event, the documents in question were responsive to Plaintiff's Requests for Production 3 and 12 to Mount Vernon Mills (Ex. A, Mount Vernon Mills' Responses to Plaintiff's First Requests for Production) and Plaintiff's Request for Production 8 to the Town of Trion, Georgia ("Trion") (Ex. B, Trion's Responses to Plaintiff's First Requests for Production), and the emails are public records that would be subject to disclosure under the Georgia Open Records Act, O.C.G.A. §§ 50-18-70(b)(2)–71 regardless of whether or not Plaintiff or Intervenor-Plaintiff have filed a records request. Meanwhile, in its Notice of Taking 30(b)(6) Deposition of Defendant Mount Vernon Mills (Doc. 261), Intervenor-Plaintiff requested, among other things, any and all documents from Mount Vernon Mills pertaining to purchases of PFAS or wastewater handling instructions—the emails at issue here directly mention the "PFAS situation" in Summerville caused by Mount Vernon Mills' PFAS, as well as treatment techniques to address PFAS. (Doc. 333, Ex. A.)

2

2014). Defendants fall short of this burden, and their joint assertion of privilege must therefore fail.

First and foremost, Defendants' continued reliance upon the "common interest" doctrine is irrelevant to the question of whether the emails at issue here are privileged. The "common interest" doctrine is not itself a way of *creating* attorney work product protection for a communication between two parties—even if those two parties do in fact share "strong common interests." *See Weinstein v. 440 Corp.*, No. 2:19-CV-105-RWS, 2021 WL 2653276, at *3 (N.D. Ga. Mar. 11, 2021) ("[T]he 'common interest privilege' . . . is a misnomer. The common interest doctrine is not a freestanding privilege, but instead an exception to the waiver of otherwise privileged or protected information."); *Monitronics Int'l, Inc. v. Hall, Booth, Smith, P.C.*, No. 1:15-CV-3927-WSD, 2016 WL 7030324, at *13 (N.D. Ga. Dec. 2, 2016) ("The common interest doctrine does not protect . . . otherwise unprotected documents."). Rather, the sole question is whether the emails Defendants seek to claw back, which did not involve any attorneys, were nevertheless protected by attorney work product or attorney-client privilege.

Here is the problem that Defendants face. Even if Mount Vernon Mills' email to Trion was attorney work product, and even if Mount Vernon Mills does share "strong common interests" with Trion, both of which Plaintiff and Intervenor-

Plaintiff dispute, **this still would not make Trion's response email protected**. As explained in more detail in Plaintiff's and Intervenor-Plaintiff's original motion objecting to Mount Vernon Mills' assertion of privilege (Doc. 312), neither email is protected by attorney-work product or attorney-client privilege, but especially not Trion's response email—after all, it is undisputed that the only attorney even referenced in the emails represented Mount Vernon Mills, not Trion. The "common interest" doctrine does not bestow privilege where it does not already exist, so even if Mount Vernon Mills did not waive its own privilege by emailing Trion, it does not follow that Trion's email is itself privileged. In short, Defendants fail to show that Trion's email is privileged simply because Mount Vernon Mills' then-attorney crafted questions in the email Trion responded to.[2]

Yet, the Court need not split the baby. As this Court has previously stated, the undisputed fact that the emails did not involve or include any attorneys alone warrants rejection of attorney work product protection for *both* emails. *See McSweeney v. Kahn*, No. 4:05-CV-0132-HLM, 2010 WL 11623058, at *3 n.3 (N.D. Ga. July 14, 2010) (emphasis added) ("Defendant Kahn's assertion of the work-

---

[2] Defendants argue, without any citations of law or fact in support, that "the answers given [by Trion] constitute information shared for the purpose of providing legal advice." (Doc. 333, at 12.) Defendants' unsupported assertions are insufficient to meet their burden of proving the application of a privilege for either email, but particularly not for Trion's response email.

4

product doctrine . . . included a number of documents that <u>clearly were not protected because they were not between attorneys</u>.").[3]

Moreover, the cases that Defendants cite in support are readily distinguishable. For instance, Defendants cite extensively to *United States v. Davita, Inc.*, 301 F.R.D. 676 (N.D. Ga. 2014), *RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17 C 3595, 2020 WL 1433828 (N.D. Ill. Mar. 24, 2020), and *McCall v. Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375 (S.D. Ohio Aug. 22, 2019).

First, each of these cases dealt only with the attorney-client privilege—which Defendants only assert in passing—and not attorney work product.[4] Second, the communications in *Davita*, *RTC*, and *McCall* were among representatives of a *single* entity represented by the *same* counsel. These cases did not involve the situation

---

[3] Defendants do not even attempt to address this Court's decision in *McSweeney*, instead opting to cite unreported decisions from courts in New York, Illinois, and Ohio. While Defendants do cite to *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (N.D. Ga. 2014), that case involved attorney-client privilege—not attorney work product—and the Court there said that "the lack of any lawyer involvement in any particular communication [i]s a factor tending to weigh against Defendants in showing the privileged nature of that communication."

[4] Under Georgia law, the lack of an attorney-client relationship between the communicating individuals is fatal to a claim of privilege. *See McKinnon v. Smock*, 264 Ga. 375, 376 (1994) (finding attorney-client privilege inapplicable because there was no "communication between [the client] and his attorney").

5

here, where a representative of one entity communicated with a representative of an *entirely separate* entity represented by *entirely separate* counsel.[5]

Finally, *Davita*, *RTC*, and *McCall* each involved "legal advice" from an attorney—the "ultimate touchstone" of the privilege analysis according to *Davita*. 301 F.R.D. at 682. Here, the only contribution made by an attorney—who was not actually copied on either email—was to formulate factual questions for a non-client to answer. Put simply, the emails do not "reveal[] advice from, or a request for advice made to, an attorney in [any] fashion." *Id*. Defendants' only response to this omission is the bare, uncited assertion that Mount Vernon Mills' then-attorney "was seeking the answers to those questions to aid in his analysis of the threat of litigation in order that he might render legal advice on the situation." (Doc. 333, at 8.) But simply saying so does not make it so. Defendants do not offer an affidavit from the referenced attorney or any other evidence establishing that either email contained "legal advice," nor do they point to any case law in which "legal advice" has been read so broadly as to encompass factual questions and answers.[6]

---

[5] As explained earlier, the "common interest" doctrine does not save the day for Defendants. While that doctrine can in some cases prevent waiver of attorney work product, it cannot—as Defendants seek here—create attorney work product where it would not otherwise exist. *See Weinstein*, 2021 WL 2653276, at *3.

[6] The only other case that Defendants substantially rely on is *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319 (N.D. Ga. 2015), but that case is equally unhelpful for Defendants. There, the Court stated "that materials

In the final analysis, Defendants are attempting to stretch the attorney-client privilege and attorney work product doctrine to their outer limits. Defendants have not shown that Mount Vernon Mills' email is privileged simply because it contained factual questions created by an attorney but asked by a non-attorney. But, even if the questions themselves were protected, Defendants surely have not shown that the responses sent by Trion, a separate entity represented by different counsel, are protected under the same privilege. Plaintiff and Intervenor-Plaintiff therefore respectfully reiterate their request that the Court review the contested documents *in camera* and enter an order determining that they were properly produced pursuant to Fed. R. Civ. P. 34 and the Agreed Protective Order.

Respectfully submitted this the 17th day of February, 2023.

|  |  |
|---|---|
|  | **BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP** |
| Post Office Box 5007<br>Rome, GA 30162-5007<br>Phone: (706) 291-8853<br>Fax:    (706) 234-3574<br>adavis@brinson-askew.com | */s/ J. Anderson Davis*<br>J. ANDERSON DAVIS<br>Georgia Bar No. 211077 |

---

prepared by non-attorney 'investigators and other agents' may be entitled to protection if they were created in anticipation of litigation." *Id.* at 1323 n.1 (emphasis added). But the only "materials prepared" here were two emails, one asking factual questions, the other answering them. No investigators retained by counsel sent either email, and the representative for Trion providing answers to the representative of Mount Vernon Mills can hardly be considered an "investigator" or "agent" of Mount Vernon Mills' attorney, especially when Trion is represented by separate counsel.

|  | **FRIEDMAN, DAZZIO & ZULANAS, P.C.** |
|---|---|
|  | */s/ Lee Patterson* |
| 3800 Corporate Woods Drive | JEFFREY E. FRIEDMAN |
| Birmingham, AL 35242 | LEE T. PATTERSON |
| Phone: (205) 278-7000 | *Admitted Pro Hac Vice* |
| Fax:     (205) 278-7001 |  |
|  | *Counsel for The City of Summerville, Georgia* |
|  |  |
|  | **DAVIS ATTORNEYS, P.C.** |
|  | */s/ Gary A. Davis* |
| 21 Battery Park Ave, Suite 206 | GARY A. DAVIS |
| Asheville, NC 28801 | KEITH A. JOHNSTON |
| Phone: (828) 622-0044 | *Admitted Pro Hac Vice* |
| Fax:     (828) 398-0435 |  |
|  |  |
|  | **MORRIS & DEAN, LLC** |
| 101 E. Crawford St. | JEFFREY J. DEAN |
| Dalton, GA 30720 | Georgia Bar No. 006890 |
| Phone: (706) 226-0300 | THOMAS CAUSBY |
| Fax:     (706) 229-4363 | Georgia Bar No. 968006 |
|  |  |
|  | *Attorneys for Plaintiff* |

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1.C.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 17th day of February, 2023.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

Post Office Box 5007
Rome, GA 30162-5007
Phone: (706) 291-8853
Fax:   (706) 234-3574
adavis@brinson-askew.com

*/s/ J. Anderson Davis*
J. ANDERSON DAVIS
Georgia Bar No. 211077

*Counsel for The City of Summerville, Georgia*