**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

<table>
<tr><td>

**EARL PARRIS, JR., Individually,
and on Behalf of a Class of Persons
Similarly Situated,**

       **Plaintiff,**

**City of SUMMERVILLE,
GEORGIA,**

       **Intervenor-Plaintiff,**

**v.**

**3M COMPANY,** *et al.,*

       **Defendants.**

</td><td>

**Case No.: 4:21-cv-00040-TWT**

</td></tr>
</table>

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT WITH HUNTSMAN INTERNATIONAL, LLC**

**INTRODUCTION**

Plaintiff Earl Parris, Jr., on behalf of himself and a proposed Class of City of Summerville water users, has reached a settlement with Defendant Huntsman International, LLC, which, if approved, will result in the further availability of temporary drinking water for all Class Members. The second Class Action Settlement Agreement ("Settlement Agreement"), attached to the Unopposed Motion as Exhibit 1, requires Huntsman to contribute to the Temporary Drinking Water Fund, to be established after final approval of the Pulcra Settlement

Agreement to provide temporary drinking water free of toxic per-and polyfluoroalkyl substances ("PFAS") to members of the Class of Summerville drinking water customers who request it. In exchange, Class Members will resolve their claims against Huntsman contained in the Second Amended Individual and Class Action Complaint and will release Huntsman only for those individual and class claims in accordance with the terms of the Settlement Agreement.  The Settlement Agreement will preserve all of Class Members' claims against the remaining defendants: 3M Company, Daikin America, Inc., E.I. Du Pont de Nemours and Company, and The Chemours Company.[1]

Because the proposed second Class Settlement Agreement is fair, reasonable, and adequate, the Plaintiff asks the Court to: (1) conditionally certify the Class for settlement purposes with the undersigned attorneys as Class Counsel; (2) preliminarily approve the Settlement Agreement under Rule 23(e)(1); (3) approve the proposed Notice Plan and form of the Class Action Notice, attached to the Joint Motion as Exhibit 2; (4) set a timeline for Notice and for Class Members to object

---

[1] A third Settlement Agreement among the Class, Mount Vernon Mills, Inc., and the Town of Trion, Georgia, is being proposed for preliminary approval in a separate motion. Furthermore, Parris in his individual capacity, together with Mount Vernon Mills and Trion, will soon be proposing a consent decree to the Court for resolution of the federal Clean Water Act and Resource Conservation and Recovery Act claims in the Second Amended Complaint. If the third Class Settlement and the proposed consent decree are approved, this will resolve all claims against these two Defendants.

to the Settlement Agreement; and (5) schedule a fairness hearing to finally approve the Settlement Agreement.

## FACTUAL BACKGROUND

## I. PROCEDURAL HISTORY

On February 23, 2021, Plaintiff filed an Individual and Class Action Complaint against all original Defendants, alleging that Defendants have caused and continue to cause contamination of the City of Summerville's drinking water source, Raccoon Creek, with PFAS, including toxic perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"). *See* Complaint Doc. 1. Plaintiff filed his First Amended Complaint on April 22, 2021, *see* Doc. 73, the Defendants filed motions to dismiss all the claims, and Plaintiff responded. The City of Summerville moved to intervene against the PFAS Manufacturing Defendants (but not Mount Vernon and Trion) on May 26, 2021. *See* Doc. 84.

The Court denied the motions to dismiss on March 30, 2022, preserving nearly all Plaintiff's claims, and granted Summerville's motion to intervene. *See* Doc. 136. Then on June 27, 2022, the Court denied Defendant Daikin's motion to certify questions to the Georgia Supreme Court or to grant an interlocutory appeal of the denial of its motion to dismiss. *See* Doc. 201. On September 27, 2022, the Court entered a Consent Decree under the Clean Water Act between Plaintiffs (Plaintiff and Intervenor: collectively "Plaintiffs") and Defendant Jarrett, one of

the landowners who accepted sludge from the Town of Trion, who agreed to provide access to his property for sampling and potential remediation to reduce discharges of PFAS to Raccoon Creek. *See* Doc. 243.

Plaintiffs commenced discovery in June 2022, reviewing hundreds of thousands of documents produced by Defendants, and began taking depositions of Defendants' corporate representatives and employees. Since that time, over 30 fact witnesses have been deposed. Plaintiffs served ten expert witness reports on October 15, 2024, and Defendants have taken depositions of all Plaintiffs' experts. Defendants served twenty-three expert reports on February 3, 2025, and Plaintiffs are in the process of taking their depositions. Parris filed a Motion for Class Certification on November 1, 2024, with accompanying exhibits, requesting certification of two classes of Summerville drinking water subscribers, one for injunctive relief and one for damages. *See* Doc. 688, 688-1 – 688-26, 689-1 – 689-12. Certain Defendants responded to that motion on February 14, 2025. *See* Doc. 781.[2]

Plaintiff engaged in mediation with Huntsman on October 25, 2024, resulting in an agreement in principle which has been developed into the Settlement Agreement terms. As a result of the mediation, Huntsman also reached a settlement

---

[2] Extensions were granted to Huntsman, Mount Vernon Mills and Trion until after the Court's rulings on approval of proposed class settlements with these Defendants. *See* Doc. 774, 778.

with the City of Summerville to provide funds toward Summerville's intended work to install permanent water treatment to remove PFAS. *See* Joint Motion, Exhibit 1 at 4; Declaration of Gary A. Davis, Ex. A at ¶¶ 9-11, attached to this Memorandum.

## II.    TOXIC CHEMICALS IN SUMMERVILLE'S WATER SUPPLY.

As set out in detail in Plaintiff's Motion for Class Certification, *See* Doc. 688 at 1-5, Doc. 688-1 – 688-12, 689-1 – 689-3, the City of Summerville's water supply is contaminated with toxic PFAS which continue to be discharged into Raccoon Creek as a result of contaminated sludge spread on farms in the watershed. Treating Defendant Mount Vernon Mills' industrial wastewater, which is 94% of the total wastewater received at the Trion Water Pollution Control Plant ("WPCP"), generated sludge with high levels of PFAS, which was spread on farms in the Raccoon Creek watershed upstream of Summerville's water intake for at least 28 years. Huntsman and the other PFAS producers sold PFAS containing products to Mount Vernon Mills, which were discharged in wastewater to the Summerville WPCP.

In January 2020, the Georgia Environmental Protection Division ("EPD") notified the City of Summerville that its drinking water intake in Raccoon Creek is contaminated with PFAS above the safe drinking level. In February 2020 the EPD required Summerville to warn its citizens of the health effects of drinking the

contaminated water, and Summerville responded to the emergency by creating a temporary treatment system at its water plant adding granular activated carbon ("GAC") to existing filter beds, which temporarily reduced the concentration of PFAS. However, the levels in the finished drinking water fluctuate higher because the existing filters do not hold enough GAC to adsorb all the PFOA and PFOS.

The need for a permanent drinking water treatment system for Summerville has become even more acute since this lawsuit was filed. In June 2022, EPA lowered the safe Drinking Water Health Advisory to 0.004 parts per trillion ("ppt") for PFOA and 0.02 ppt for PFOS, based on an intensive review of their toxicity. *See* 87 Fed. Reg. 36848, *et seq*. (June 21, 2022). Then, on April 10, 2024, EPA finalized a Maximum Contaminant Level ("MCL") regulation for PFOS and PFOA in drinking water at 4 ppt. *See* 89 Fed. Reg. 32532, *et seq*. (April 10, 2024). The Maximum Contaminant Level Goal ("MCLG") was set at zero based on EPA's finding that PFOS and PFOA are likely to cause cancer in humans. *Id*. at 32563-67. Unfortunately, the levels of PFOA and PFOS in Summerville's drinking water have continued to greatly exceed the MCL and the MCLG, and the Class of water users will continue to receive water that does not comply with the MCL until a permanent filtration system is designed and installed at the City's water treatment plant. Summerville recently accepted the recommendation of its engineers to build a permanent GAC system sufficiently sized to remove PFOS and PFOA to meet the

6

new MCL, which will not be completed until 2029.

## III.        THE PROPOSED RELIEF

The Settlement Agreement, if approved, will result in injunctive relief requiring Huntsman to provide temporary drinking water to Class Members through contribution to a Temporary Drinking Water Fund which will provide either bottled water or a point-of-use filter for Class Members who elect to participate. Unless the Fund is depleted before then, temporary drinking water will be provided until Summerville's permanent treatment system is constructed and operating and meeting the MCLs for PFOA and PFOS. Huntsman will contribute $750,000 to the Temporary Drinking Water Fund, out of which up to $250,000 will pay for the costs of providing notice to the Class, reimburse litigation costs, and award attorney fees as approved by the Court. *See* Unopposed Motion Ex. 1. The Temporary Drinking Water Fund will be a Qualified Settlement Fund, which can accept funds from Huntsman and any other Defendants entering similar settlements to provide temporary drinking water.

In exchange for this relief the Class will enter a settlement with Huntsman while retaining all other legal claims against the remaining Defendants in the action. The settlement will release Huntsman for the class claims and injuries included in Plaintiff's Second Amended Individual and Class Action Complaint, *see* Doc. 280, but excluding claims for manifest personal injury, which are not included in the

pending action.

## ARGUMENT

**I.    PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS WARRANTED.**

**A.    Standards for Preliminary Approval of a Class Settlement.**

Under Federal Rule of Civil Procedure 23(e)(2) the Court may approve a class settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate …; and
(D) the proposal treats class members equitably relative to each other.

"Approval is generally a two-step process in which a 'preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms' is reached." *Adams v. Sentinel Offender Services, LLC*, No. 1:17-cv-2813-WSD, 2018 WL 2148372, *7, (N.D.Ga. May 10, 2018). Rule 23(e)(1)(B) sets forth the grounds for the initial decision to send notice of a proposed settlement to the class: the moving parties must show that the court "will likely be able to (i) approve the [settlement] proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (6th ed. 2022). "Although a court need not make a final determination of the fairness, reasonableness, and adequacy of the proposed

8

settlement at this stage of the proceedings, it must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members." *In re Blue Cross Blue Shield Antitrust Litigation*, No.: 2:13-CV-20000-RDP, 2020 WL 8256366, *14 (N.D.Ala. Nov. 30, 2020).

The 2018 amendment to Rule 23(e)(2) is not meant "to displace" the factors previously identified by courts in reviewing class action settlement agreements, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. Pro 23(e)(2), Advisory Committee's Note to 2018 Amendment. The Eleventh Circuit previously identified factors that a district court should examine, including:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement [not applicable at preliminary approval]; and (6) the stage of proceedings at which the settlement was achieved.

*In re CP Ships Ltd. Securities Litigation,* 578 F.3d 1306, 1317–18 (11th Cir. 2009) (*quoting Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984)).

The Eleventh Circuit recently observed that some of the so-called *Bennett* factors, where appropriate, complement the core concerns of Rule 23(e)(2):

> For example, Bennett factors (1), (2), (4), and (6) can inform "whether the relief provided to the class is adequate" (core concern three). And Bennett factors (3) and (5) can inform "whether the proposal treats class

members equitably relative to each other" (core concern four).

*Ponzio v. Pinon*, 87 F.4th 487, 494-95 (11th Cir. 2023).

When exercising its discretion to approve a class settlement, the court should consider the public and judicial policies that strongly favor the settlement of class action lawsuits. *Id.* at 493-94; *Bennett*, 737 F.2d at 986. *See also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); William B. Rubenstein, 4 Newberg on Class Actions § 13:44 (6th ed. 2022) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). While the proposed Settlement Agreement is a partial settlement, it will conserve judicial resources by reducing the number of defendants and reducing some of the complexity of the litigation going forward.

**B.      Application of the Rule 23(e)(2) Factors.**

  1. **The Class Representative and Class Counsel Have Adequately Represented the Class.**

Both Plaintiff and his counsel have adequately represented the Class. There are no conflicts between Class Members because Plaintiff's and the Settlement Class's claims arise out of the same unifying event—decades of PFAS pollution making its way to Summerville's primary drinking water source. All seek redress for the same injury – the continued contamination of the water supply. Nor should there be any dispute that Parris and his counsel have adequately prosecuted the

action. They have devoted substantial time and resources to this case, for example: by successfully opposing the numerous motions to dismiss; taking dozens of depositions (including those who were deposed multiple days); evaluating millions of pages of documents; and overseeing the reports of nine experts and defending their depositions. Parris himself has participated in substantial discovery responding to 6 sets of interrogatories (92 total responses), 4 sets of requests for production (72 total responses), and 3 sets of requests for admission (31 total responses). He also sat for an 8-hour deposition. *See* Exhibit A at ¶ 7, attached to this Memorandum.

### 2. The Proposed Settlement Agreement was Negotiated at Arm's Length.

The proposed Settlement Agreement was negotiated at arm's length by experienced counsel after nearly four years of hard-fought litigation in which Huntsman and the Plaintiff were adversaries until the Parties negotiated the terms of the Settlement Agreement with the assistance of an experienced mediator. *See* Ex. A at ¶ 9, attached to this Memorandum.

### 3. The Relief Provided for the Class is Adequate.

The relief provided for the Class in this case is adequate taking into account:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

Here, the costs, risks and delay of trial and possible appeal are significant. The Court has not considered any evidence or expert testimony at this stage, and Huntsman has raised several substantial defenses concerning the merits of Plaintiff's claims which it would likely continue to press at the summary judgment stage and beyond, leading to costs, risks of delay, and a risk of losing either in the trial court or on appeal. Further, even if the case were to ultimately succeed against Huntsman, the proportion of any award that Huntsman might be responsible for, compared to the other remaining Defendants, is uncertain. In this partial settlement, some of the risks for the Class will continue to be present as long as the other Defendants continue to oppose relief for the Class. But, with the Settlement Agreement, the Class Members can receive meaningful partial relief without delay while the case proceeds.

The proposed method of providing relief to the Class in this Settlement Agreement is straightforward and will be effective. Once the Pulcra Settlement Agreement is finally approved, the Temporary Drinking Water Fund will be established, and Class Members will be able to contact an Administrator who will verify their eligibility and arrange for the delivery of bottled water or the installation of a point-of-use water filter. *See* Ex. A, attached. After the Huntsman Settlement Agreement is approved, there will be additional funds deposited in the Temporary Drinking Water Fund for provision of temporary drinking water to the Class.

The Settlement Agreement addresses attorney fees, which were negotiated after the terms for injunctive relief and the amount of the Fund. *See* Joint Motion, Ex. 1 at 19; Ex. A at ¶ 10, attached to this Memorandum. The Settlement Agreement provides for a reasonable amount for fees and costs, including costs of the Class Notice, of up to thirty-three and one-third percent of the amount to be paid by Huntsman for establishment of the Fund, subject to Court approval.[3] Fees would be paid after the opportunity for objections from Class Members and after final approval by the Court. *See* Ex. 1 at 19-20.

The Settlement Agreement requires Huntsman to notify appropriate state and federal officials of the proposed settlement, as required by the Class Action Fairness Act. See 28 U.S.C. § 1715. The Parties' proposed Preliminary Approval Order sets a deadline for Huntsman to provide such notice and requires Huntsman to file notice with the Court of the latest date any such notice is served. This will facilitate the Parties' and the Court's ability to ensure that any final approval of the settlement occurs no earlier than ninety (90) days after service of the notices, in accordance

---

[3] If the Court preliminarily approves the Settlement, Class Counsel will file a petition, pursuant to Fed. R. Civ. P. 23(h), seeking an award of reasonable attorneys' fees and expenses incurred in connection with representation of the Class Members. A fee of 25 percent is presumptively reasonable, and if Class Counsel seeks more than this, there will be a demonstration of reasonableness using the *Johnson* factors. *See In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, 85 F.4th 1070, 1100 (11th Cir. 2023), *citing Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011).

with 28 U.S.C. § 1715(d).

Finally, there is one confidential agreement which will be disclosed to the Court, pursuant to Rule 23(e)(3), which is only relevant if the Court decides to certify the Settlement Class under Rule 23(b)(3), instead of under Rule 23(b)(2), providing Class Members with the opportunity to opt out. In that case, the Parties have agreed to a confidential opt-out threshold, which, if exceeded, would allow Huntsman to elect to terminate the Settlement Agreement. This threshold and its confidentiality does not affect the fairness or adequacy of the Settlement Agreement.[4]

### 4. The Proposed Settlement Treats Class Members Equitably Relative to Each Other.

The proposed Settlement Agreement treats Class Members equitably relative to each other by treating all Class Members the same. Each residence or commercial establishment will be able to receive temporary drinking water from the Temporary Drinking Water Fund.

### C.    Application of the *Bennett* Factors.

### 1. The Likelihood of Success at Trial.

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court should not

---

[4] *See* 4 Newberg and Rubenstein on Class Actions § 13:6 (6th ed. 2022).

reach any ultimate conclusions with respect to issues of fact or law involved in the case. "The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise . . . [Settlements] could hardly be achieved if the test on hearing for approval means establishing success or failure to a certainty." *Knight v. Alabama,* 469 F.Supp. 2d 1016, 1033 (N.D. Ala. 2006) (quoting *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir.1981)). As previously discussed, the risks to Plaintiff of proceeding to trial against Huntsman are significant as compared to the benefits of the settlement.

2. **The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate and Reasonable.**

District courts often consider these two factors together because they are related. *See, e.g., Knight,* 469 F. Supp. 2d at 1033; *Lipuma,* 406 F.Supp. 2d at 1322; *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 541 (S.D. Fla. 1988). Analysis of these factors requires the court to compare the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Knight,* 469 F.Supp.2d at 1033. "When making this comparison, the Court should keep in mind that 'compromise is the essence of a settlement, and should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained;

inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" *Id.*  Here, as in most class actions, it is not only monetary relief that is difficult to quantify, but the range of possible recovery "'spans from a finding of non-liability through varying levels of injunctive relief.'" *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 468 (S.D. Fla. 2002). "Any settlement typically offers far less than a full recovery. Indeed, settlements, by their nature, do not yield one hundred percent recovery for plaintiffs." *Faught v. Am. Home Shield Corp.*, No. 2:07–CV–1928–RDP, 2010 WL 10959223, *14 (N.D. Ala. Apr. 27, 2010), *aff'd in part,* 668 F.3d 1233 (11th Cir. 2011).

There is no doubt that the Settlement Agreement provides real, valuable and immediate  benefits to the Class Members as a compromise of their claims for injunctive relief against Huntsman, especially when taken together with Huntman's settlement with the City of Summerville. See Ex. 1 to Joint Motion at 4.  Although a victory at trial against Huntsman might result in some additional or alternative relief for Class  Members, the proposed Settlement provides guaranteed benefits much sooner, and the Court should consider that the Class may later recover additional relief from the other non-settling Defendants.

### 3. The Complexity, Expense, and Duration of Litigation.

This inquiry overlaps in some respects with the first *Bennett* factor— likelihood of success on the merits. In assessing this factor, "[t]he Court should

16

consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma,* 406 F.Supp.2d at 1323 (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La.1993)); *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (application of the *Bennett* factors "often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation. . .""). Again, the need for the immediate relief in the form of a temporary safe water supply for the Class, as compared to the potential of another year or more of litigation to possibly achieve a permanent solution, weighs in favor of preliminary approval of the Settlement Agreement.[5]

### 4. The Stage of Proceedings at Which the Settlement Was Achieved.

This case has been pending for nearly four years, and there has been extensive discovery. *See* Ex. A at ¶ 7, attached to this Memorandum. As a result, Plaintiff has had the opportunity to thoroughly evaluate the likelihood whether his claims will succeed on the merits. Plaintiff is represented by experienced counsel who understand the time and expense that continued litigation, trial and possible appeal

---

[5] Factor 4, the substance and amount of opposition to the settlement does not apply at the preliminary approval stage. It becomes relevant after the class members receive notice of the Settlement and have an opportunity to object.

would require in this complex case. *Id.* at ¶ 4-6. Given that he has had the opportunity to evaluate these issues with experienced counsel, this factor weighs in favor of approving the Settlement Agreement.

## II. THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS.

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, 2024 WL 1554329, at *2 (S.D. Fla., 2024), citing *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). The appropriate procedure is for the Court to conditionally certify a "temporary settlement class" for the purpose of providing notice to putative members of a proposed class of the terms of the anticipated settlement and of their opportunity to object. *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 173–78 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981). The U.S. Supreme Court has emphasized that the district court may not disregard the requirements of Fed. R. Civ. P. 23(a) and (b) in certifying a settlement class. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620-622 (1997).

Because the class is potentially certifiable under the requirements of Rule 23(a) and 23(b), this Court should conditionally approve the class for purposes of notice of the Settlement Agreement and schedule a fairness hearing for final approval.

A.      **The Settlement Class Definition.**

The Settlement Class definition proposed by the Parties is as follows:

All account holders and all ratepayers of water and/or sewer service with the City of Summerville from January 1, 2020, to the time of approval of this Settlement, including but not limited to residential, commercial, and industrial ratepayers, and including all adult individuals who reside at a residence that receives water or sewer service from the City of Summerville.

This is a slight modification of the Class definition in the Second Amended Complaint in order to make it clear that, for purposes of this Settlement, the definition would apply to those class members who are water users at the time of final approval of the Settlement Agreement and to make it clear that the Settlement applies to all adult members of households that are water and sewer rate payers.

B.      **Rule 23(a) Requirements Are Satisfied.**

   1. **The Proposed Settlement Class is Adequately Defined and Clearly Ascertainable.**

The Eleventh Circuit has held that Rule 23(a) imposes an initial, implicit condition of "ascertainability," meaning that an "adequately defined and clearly ascertainable" class definition is necessary to evaluate Rule 23(a)'s explicit requirements. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021). Though some jurisdictions require consideration of "administrative feasibility" in this analysis, the Eleventh Circuit reduces ascertainability to a single question: whether a proposed class "is adequately defined such that its membership is capable

19

of determination." *Id*. at 1302, 1304.

In this case, Class Members are easily determined through records of the City of Summerville reflecting the rate payers for water and sewer service from January 2020 to the time this Settlement Class is certified. *C.f.*, *Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-cv-100-J-39JBT, 2019 WL 11093815, *3 (M.D. Fla. Apr. 4, 2019) (class members "readily ascertainable from the electronic records of a third-party").

### 2. The Proposed Class Is So Numerous That Joinder Is Impracticable.

"Numerosity" under Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, numerosity is not subject to credible dispute—the City of Summerville has approximately 4,500 water customers, which easily satisfies numerosity. *See* Doc. 688-26 at 59. *See e.g. Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (over 40 class members satisfies numerosity).

### 3. The Proposed Settlement Class Raises Common Contentions Capable of Class-Wide Resolution.

Rule 23(a)(2) "commonality" requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The standard is "qualitative rather than quantitative." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 693 (N.D. Ga. 2016). Class members must "have suffered the same injury," and there must be a "common contention" where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) ("What matters . . . [is] the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."). If it meets this qualitative threshold, "even a single common question will do." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 417-18 (N.D. Ga. 2017).

The Settlement Class clears this "low hurdle." *Id*. All class members share the same injury in the pollution of Summerville's drinking water, and all class members will benefit from the provision of temporary clean drinking water. All these class members share common contentions that:

- the City of Summerville's drinking water is contaminated with PFAS, which each of the Defendants contributed to;
- Defendants are liable for the contamination under negligence, nuisance, and other legal theories;
- the class members have and will continue to suffer damage by having PFAS contamination in their potable water.

The truth or falsity of these and other contentions affects all class members alike and will drive resolution of each class claim. *Dukes*, 564 U.S. at 350.

### 4. Parris' Claims Are Typical of Class Members' Claims.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2). Whereas "commonality refers to the group characteristics of the class as a whole, . . . typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Thus, typicality calls

for "a sufficient nexus . . . between the legal claims of the named representatives and those of the class at large." *Id*. at 1279; *see also Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

The typicality nexus exists where claims of the representative and the class "'arise from the same event or pattern or practice and are based on the same legal theory.'" *J.M. v. Crittenden*, 337 F.R.D. 434, 449 (N.D. Ga. 2019) (*quoting Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984)). That is the case here. Like all class members, Parris is a rate payer for water service with the City of Summerville at both his home and business and contends that Defendants have caused his potable water supplied by Summerville to be contaminated with toxic PFAS. *See* Ex. C, Declaration of Earl Parris, Jr., attached to the Memorandum. Parris' claims arise from the same set of facts and series of events by which Defendants contaminated the common water source for Class Members, and they assert the same legal theories of each applicable class claim *See* Doc. 280.

### 5. Parris and His Counsel Adequately Represent the Proposed Class's Interests.

This factor was addressed in Section I.B.1 of this Memorandum and weighs in favor of certification of the Settlement Class. In addition, Plaintiff has attached declarations of proposed Class Counsel and Mr. Parris to this Memorandum as

22

Exhibits A, B, and C, which further demonstrate adequate representation. Plaintiff requests the Court to appoint him as Class Representative for purposes of the Class Settlement and to appoint the undersigned attorneys, Gary A. Davis, and Thomas Causby as Class Counsel.

## C.    Rule 23(b) Requirements Have Been Satisfied.

A proposed class must also satisfy applicable provisions of Rule 23(b). *Dukes*, 564 U.S. at 361-63. Parris and the Class have sought injunctive relief and abatement of a public nuisance in Count 10 of the operative Complaint, s*ee* Doc 280, ¶¶ 217-22, and this proposed Class Settlement would award injunctive relief and partial temporary abatement of the nuisance under Rule 23(b)(2). Rule 23(b)(2) provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Certification of a class under Rule 23(b)(2) is appropriate where the remedy sought is "an indivisible injunction" that applies to all class members "at once." *Dukes,* 564 U.S. at 360.

For "generally applicable," the key is whether the party's actions affected all persons similarly situated, so that those acts apply generally to the whole class. The second prerequisite, that final injunctive or declaratory relief must be requested against the party opposing the class, embraces all forms of judicial orders, whether

23

mandatory or prohibitory. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (3rd ed. 2016).

In the instant case, all the Class Members have been affected in the same way by Defendant Huntsman's actions in refusing to act to remedy their drinking water contamination. The injunctive relief in the proposed Settlement Agreement provides benefits to all Class Members. In another case involving PFOA contamination of drinking water, a federal court in New Jersey approved a Rule 23(b)(2) injunctive relief settlement class where the defendant created an $8.3 million fund to provide home water filters to members of the class of water users. *Rowe v. E.I. DuPont de Nemours and Co.*, Nos. 06–1810, 06–3080, 2011 WL 3837106, *1 (D.N.J. October 9, 2009); *See also Agnone v. Camden Co. Ga.*, No: 2:14-cv-00024-LGW-BKE, 2018 WL 4937061, *5, (S.D. Ga. Oct. 10, 2018) (Rule 23(b)(2) settlement approved which created fund for construction of improvements to subdivision benefiting whole class).

## IV. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE TO CLASS MEMBERS.

"[R]ule 23(e) requires that absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

24

objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–812 (1985). It is well established that a district court has great discretion in determining the kind of notice to employ in alerting class members to a proposed settlement and settlement hearing, subject to "the broad reasonableness standards imposed by due process." *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir.1979); *Battle v. Liberty National Life Insurance Company*, 770 F. Supp. 1499, 1521 (N.D. Ala. 1991).

The Notice Plan and Notice for the Class Settlement with Huntsman is similar to the Notice approved by the Court for the Class Settlement with Pulcra, *see* Doc. 760, and Plaintiff requests approval on the same grounds.

## CONCLUSION

Plaintiff respectfully requests that the Court preliminarily approve the Settlement Agreement, conditionally certify the proposed Class for purposes of notice and the fairness hearing, appoint Parris as Class Representative, and appoint the undersigned attorneys as Class Counsel for purposes of the Settlement. Plaintiff also asks the Court to approve the proposed Class Notice so that it can be mailed to Class Members. Finally, Plaintiffs ask the Court to set dates for the final Fairness Hearing and for the deadline for Class Members to file any objections to the Settlement. A proposed Order is attached as Exhibit 3 to the Joint Motion.

Respectfully submitted.

/s/ Gary A. Davis
Gary A. Davis (*phv*)
Keith A. Johnston (*phv*)
Louis W. Ringger, III (*phv*)
Davis, Johnston, & Ringger, PC
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
Fax: 828-398-0435
gadavis@enviroattorney.com
kjohnston@enviroattorney.com
bringger@enviroattorney.com

Thomas Causby
Ga. Bar # 968006
101 E. Crawford St.
Dalton, GA 30720
tom@causbyfirm.com
Phone: 706-226-0300
Fax: 706-229-4363

*Attorneys for Plaintiff Earl Parris, Jr., and the Proposed Settlement Class*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Civil Local Rule 7.1(D), the undersigned counsel certifies that the foregoing filing is prepared in Times New Roman point font, as mandated in Local Rule 5.1(C).

/s/ Gary A. Davis
Gary A. Davis
Attorney for Plaintiff

26

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 28th day of February 2025.

/s/ Gary A. Davis
Gary A. Davis
Attorney for Plaintiff

27

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **EARL PARRIS, JR., Individually, and on Behalf of a Class of Persons Similarly Situated,** | |
| **Plaintiff,** | **Case No.: 4:21-cv-00040-TWT** |
| **City of SUMMERVILLE, GEORGIA,** | |
| **Intervenor-Plaintiff,** | |
| **v.** | |
| **3M COMPANY, *et al.,*** | |
| **Defendants.** | |

**DECLARATION OF GARY A. DAVIS**

I, Gary A. Davis, being competent to provide this Declaration, do declare as follows:

1.     That I make this Declaration pursuant to the Federal Rules of Civil Procedure, Rule 23 (g)(3), in support of my appointment as class counsel for the Partial Class Action Settlement.

2.     Since the inception of this case, I have been in the lead counsel role in developing strategy, preparing and implementing a litigation plan, coordinating the successful response to Defendants' dispositive motions, coordinating and conducting discovery, including drafting written discovery and attending

depositions. I have also played a key role in developing the evidence necessary to certify this case as a class action.

3.    I hereby submit this Declaration to satisfy the requirements of Rule 23(g).

4.    I have been practicing environmental law for 41 years. I am currently the principal shareholder of Davis, Johnston, & Ringger, PC, located in Asheville, North Carolina. I am admitted to practice in the State Courts of Tennessee, North Carolina, and California (inactive status). I am also admitted to the United States District Court for the Eastern, Middle, and Western Districts of Tennessee, for the Western, Middle, and Eastern Districts of North Carolina, and for the Northern District of California. In addition to State Courts in Alabama, Arkansas, Georgia, and Florida, I have been admitted to practice, pro hac vice, in the following federal jurisdictions: Northern District of Alabama, Eastern District of Arkansas, Middle and Southern Districts of Florida, Northern District of Georgia, Eastern District of Louisiana, and the District of Vermont. I have also admitted in the Fourth, Sixth, Seventh, Eighth, and Eleventh Circuit Courts of Appeals.

5.    A summary of my education and experience is as follows. I attended the University of Cincinnati where I graduated with a B.S. in Chemical Engineering. Thereafter, I earned my J.D. from the University of Tennessee College of Law. Prior to attending law school, I worked as an environmental engineer with an

2

environmental consulting firm in Knoxville, Tennessee. After law school I was employed in an environmental policy position with the California Governor's Office. Upon returning to Knoxville, I founded an environmental law practice and have represented individuals and businesses impacted by pollution, in addition to governmental, environmental and community organizations, for over forty years. I also founded and directed an environmental research center at the University of Tennessee, the Center for Clean Products and Clean Technologies, and taught environmental law as an adjunct professor in the UT College of Law. Since 2005, my main office has been in North Carolina, from which my firm specializes in complex environmental litigation nationwide.

6.      The following is a partial list of prior cases wherein I have gained the necessary experience, knowledge, skill, and resources to commit to the prosecution of cases similar to the case at bar: *Sullivan, et al., v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-cv-00125 (D. Vt.) (appointed class counsel representing two classes of over 8,000 residents and property owners with well and property contamination by per-and polyfluoroalkyl substances ("PFAS") — case settled for two classes for $34 million); *West Morgan-East Lawrence Water and Sewer Authority, et al., v. 3M Company, et al.*, No. 5:15-cv-01750 (N.D. Ala.) (appointed class counsel for settlement class of water users approved by the Court, but later overturned on appeal, and represented drinking water utility for PFAS contamination

3

of water supply for 100,000 people — settlement of $35 million to fund new water treatment plant); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179 (E.D. La.) (represented over 800 businesses and individuals for economic and property losses in the BP Oil Spill Litigation, in which I was appointed by the Plaintiffs' Steering Committee to serve on two Workgroups — ultimately, economic damages claims settled as class action for over $10 billion); *In re Tennessee Valley Authority Ash Spill Litigation*, No. 3:09-CV-009 (E.D. Tenn.) (served as co-lead trial counsel in month-long bench trial for hundreds of property owners after massive coal ash release in in Kingston, Tennessee — case ultimately settled for property owners as mass action for $27.8 million).

7.     In the case at bar, I have been and continue to be fully and sufficiently engaged and informed about the material aspects of this case so as to ensure vigorous advocacy on behalf of the putative class. I and my firm have successfully opposed multiple motions to dismiss; propounded discovery on Defendants and responded to their discovery propounded to Plaintiff (6 sets of interrogatories with 92 total responses, 4 sets of requests for production with 72 total responses, and 3 sets of requests for admission with 31 total responses); taken dozens of depositions (including those who were deposed multiple days); evaluated millions of pages of documents; and coordinated the reports of nine expert witnesses retained by Plaintiff. Plaintiff Parris himself has participated in substantial discovery, responding

to 6 sets of interrogatories (92 total responses), 4 sets of requests for production (72 total responses), and 3 sets of requests for admission (31 total responses). He also sat for an 8-hour deposition.

8.      Based on the foregoing, I have the expertise, knowledge and experience necessary to fairly and adequately represent the interests of the proposed Settlement Class. I have the necessary experience in handling class actions, other complex litigation and claims of the type asserted in this action. I also have knowledge of the applicable law and have and continue to commit resources necessary to represent the proposed class. Further, my experienced and able co-counsel remain heavily involved in the prosecution of this action, and we will continue in this capacity until its conclusion.

9.      After nearly four years of litigation in this case, Plaintiff Parris and Intervening Plaintiff City of Summerville agreed to engage in mediation with two of the Defendants, including Huntsman International, LLC. Mediation was held on October 25, 2024, in Birmingham, Alabama, with Mr. J. Allen Schreiber of Schreiber ADR, a certified mediator and member of the American College of Civil Trial Mediators, who has 25 years of experience as a mediator. The mediation resulted in an agreement in principle with Plaintiff Parris, on behalf of the class, and Huntsman. Since that time the parties have finalized the final Class Settlement Agreement and other documents for approval of the Class Action Settlement, which are being filed

5

with the Court. The City of Summerville also reached an agreement in principle with Huntsman in the mediation, which has also been finalized. This agreement will provide funds toward Summerville's intended work to install permanent water treatment to remove PFAS.

10.    The resulting Class Action Settlement Agreement is the result of arm's-length negotiations between adversaries. It was negotiated separately on behalf of the Class, and there was no discussion of attorney fees until after the agreement for Huntsman to contribute the agreed-upon amount to the Temporary Drinking Water Fund.

11.    The settlement by Huntsman with the City of Summerville will also benefit the Class Members, because it will be used for permanent water treatment to remove PFAS from the Class Members' drinking water. The Partial Class Settlement will be used to provide temporary drinking water to Class Members now, while the City of Summerville focuses on the permanent solution.

12.    Based upon my experience with complex litigation and my knowledge of the facts and law upon which this case is being prosecuted, it is my opinion that the Class Settlement Agreement with Huntsman is fair, reasonable, and adequate for the Class Members.

13.    Plaintiff is proposing to use an experienced Settlement Administrator to administer this Settlement. Edgar C. Gentle III, is the founder of Gentle Turner &

Benson, LLC, in Birmingham, Alabama, and has over twenty years of mass tort and class action settlement administration experience. To date, his firm has administered over $2.5 Billion in Settlements, including class settlements concerning PFAS in drinking water. His background and experience can be reviewed at https://www.gtandslaw.com/9-2/edgar-c-gentle-iii/. Plaintiff will seek appointment of Mr. Gentle in the motion for final approval of the Settlement Agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

_____
Gary A. Davis

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| **EARL PARRIS, JR., Individually, and on Behalf of a Class of Persons Similarly Situated,** | |
| **Plaintiff,** | **Case No.: 4:21-cv-00040-TWT** |
| **City of SUMMERVILLE, GEORGIA,** | **TRIAL BY JURY REQUESTED** |
| **Intervenor-Plaintiff,** | |
| **v.** | |
| **3M COMPANY, *et al.*,** | |
| **Defendants.** | |

## DECLARATION OF THOMAS C. CAUSBY

I, Thomas C. Causby, being competent to provide this Declaration, do declare as follows:

1.    That I make this Declaration pursuant to the Federal Rules of Civil Procedure, Rule 23 (g)(3), in support of my appointment as class counsel.

2.    Since the inception of this case, I have served as local counsel supporting the litigation team with knowledge of Georgia law and familiarity with the Court and the Local Rules. I have also maintained close communication with the Plaintiff and have assisted expert witnesses in sampling for PFAS on the farms where wastewater sludge was land applied and in the Raccoon Creek watershed. I

have also represented Plaintiff and the proposed class in numerous depositions of City of Summerville officials and other local witnesses.

3.    I hereby submit this Declaration to satisfy the requirements of Rule 23(g).

4.    I have been practicing law continuously since 2017 in Georgia State Court and in the United States District Court for the Northern District of Georgia, first as an associate and then a Partner at Little, Bates, Keleher & Toland, P.C., then as a Partner at Morris & Dean, LLC, and now as a sole practitioner when I opened my own firm, Causby Firm, LLC, of which I am the sole owner. I am admitted to practice in the Court of Appeals of the State of Georgia.

5.    A summary of my education and experience is as follows. I attended Dalton State College and graduated with a B.A. in history in 2012. Thereafter, I earned my J.D. from the University of Alabama School of Law in 2016. I have represented individuals and entities across North Georgia as a "Country Lawyer" riding the circuits and practicing in nearly every field of the law save for bankruptcy and intellectual property.

6.    This is the first case in which I have engaged in the prosecution of an environmental mass tort/class action. Since the commencement of my representation of Mr. Parris and the proposed class, I have gained the necessary experience, knowledge and skill to devote to the prosecution of this matter, and

indeed have devoted a substantial portion of my practice to it, and to similar matters in North Georgia. In addition to it, I am currently lead counsel for the Plaintiffs in *Moss Land Company, LLC, Et al v City of Calhoun, Georgia; 3M Company; et al. 24-CV-73929* (Gordon County Georgia Superior Court) (concerning property contamination by per- and polyfluoroalkyl substances "PFAS".)

7.      In the case at bar, I have been and continue to be fully and sufficiently engaged and informed about the material aspects of this case so as to ensure vigorous advocacy on behalf of the putative class.

8.      Based on the foregoing, I have the expertise, knowledge and experience necessary to fairly and adequately represent the interests of the proposed class. I have the necessary experience to serve as liaison counsel in handling complex litigation and claims of the type asserted in this action. I also have knowledge of the applicable law and have and continue to commit resources necessary to represent the proposed class. Further, my experienced and able co-counsel remain heavily involved in the prosecution of this action, and we will continue in this capacity until its conclusion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Thomas C. Causby

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **EARL PARRIS, JR., Individually, and on Behalf of a Class of Persons Similarly Situated,** | |
| **Plaintiff,** | **Case No.: 4:21-cv-00040-TWT** |
| **City of SUMMERVILLE, GEORGIA,** | **TRIAL BY JURY REQUESTED** |
| **Intervenor-Plaintiff,** | |
| **v.** | |
| **3M COMPANY, *et al.,*** | |
| **Defendants.** | |

## <u>DECLARATION OF EARL PARRIS, JR.</u>

I, Earl Parris, Jr., being competent to make this declaration, do hereby declare the following:

1.      I am a named plaintiff in the Second Amended Complaint filed in these proceedings and seek to be appointed as the Class Representative by the Court.

2.      I reside at 31 North Washington Street, Summerville, GA, 30747,  and own this property jointly with my wife. I have lived at this location for 39 years. I receive water at this address for drinking water and other uses from the City of

Summerville, Georgia, Public Works & Utilities Department. I receive and pay monthly bills for water and sewer services for the water used at this address.

3.      I also own an office and workshop at 55 Union Street, Summerville, GA 30747, which I have owned since 2000, and which I have used and continue to use for business purposes. I receive water at this address for drinking water and other uses from the City of Summerville, Georgia, Public Works & Utilities Department. I receive and pay monthly bills for water and sewer services for the water used at this address.

4.      As a result of learning about the contamination of the City's drinking water with perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and other per-and polyfluoroalkyl substances ("PFAS") in 2020, I stopped drinking the City's water at either address without using filters which I have purchased myself. I also drink bottled water instead of tap water.

5.      Since 2020 I and all the City's water users have paid increased water fees as a result of the City's efforts to reduce the contamination of the drinking water. The City has approved multiple rate increases. The increased fees have been calculated for all the City's water and sewer rate payers by Mr. William Zieburtz, an expert economist.

6.      I am bringing this lawsuit on my own behalf and on behalf of a class of all the City's water rate payers. My primary interest in this case is to secure

2

clean drinking water for the class of water users and to ensure that the water users are reimbursed for the increased water charges they have paid and will pay as a result of the PFAS contamination.

7.     I have served the City of Summerville and its citizens as an elected member of the City Council in the 1990's and again from 2016 to the end of 2019. I was honored for my service by the Mayor and City Council and received a resolution honoring my service from the Georgia General Assembly.

8.     I have no known conflicts of interest with other members of the proposed class.

9.     I have no expectation of remuneration beyond the damages incurred by me.

10.    I have retained the services of competent counsel to prosecute this lawsuit on my behalf and on behalf of the entire class.

11.    I, in consultation with counsel, have participated and will continue to actively participate in the prosecution of this lawsuit in the best interests of the class and will do everything necessary to resolve this lawsuit favorably for the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of November, 2024, in Chattooga County, Georgia.

3

Earl Parris, Jr.

4