IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR.
Individually, and on behalf of a Class of
persons similarly situated,

    Plaintiff,

       v.

3M COMPANY, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 4:21-CV-40-TWT

## OPINION AND ORDER

This is an action under the Clean Water Act. It is before the Court on Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff City of Summerville's (collectively, "the Plaintiffs") Motion to Exclude the Expert Testimony of Laurentius Marais [Doc. 859]. For the reasons set forth below, the Court DENIES the Plaintiffs' Motion to Exclude the Expert Testimony of Laurentius Marais [Doc. 859].

## I.  Background

This case arises out of the contamination of surface waters and drinking water in Chattooga County, Georgia, with per- and polyfluoroalkyl substances known as "PFAS." (2d Am. Compl. ¶ 1 [Doc. 280].) The facts of this case are well known to the parties by this point, so the Court will not belabor them here. In essence, Plaintiff Earl Parris, Jr., alleges that the Defendants have contaminated his city's water supply and thus his household water with PFAS.

Parris is a resident of Summerville, Georgia, who receives running, potable water to his home from the Summerville Public Works and Utilities Department. (*Id.* ¶ 21.) The City of Summerville, which has intervened in this case, uses Raccoon Creek as the main source of its municipal water supply. (*Id.*) The Defendants are the following companies, which allegedly manufactured and supplied the PFAS discharged into Raccoon Creek: 3M Company, Daikin America, Inc., E.I. du Pont de Nemours and Company, and The Chemours Company. PFAS can allegedly cause adverse health effects such as kidney and testicular cancer. (*Id.* ¶¶ 42, 44, 48.) At present, Parris and Summerville jointly move to exclude the opinion testimony of defense expert Laurentius Marais under Federal Rules of Evidence 702 and 403.[1]

## II.   Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under that rule, "expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (citation

---

[1] The parties have collectively filed a total of seventeen motions to exclude, the remainder of which are not presently before the Court.

modified). Courts perform a "gatekeeping role" in excluding expert testimony that does not satisfy these qualification, reliability, and helpfulness requirements. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury" in determining the persuasiveness of an expert's testimony. *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citation modified). Rather, the goal is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "The proponent of the expert testimony always bears the burden" of establishing qualification, reliability, and helpfulness. *Id.* (citation modified).

A court may exclude evidence under Rule 403 "if its probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Because 403 allows a trial court to exclude probative evidence, it is an "extraordinary remedy" and "should be used only sparingly"; "[t]he balance under the Rule, therefore, should be struck in favor of admissibility." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2022).

3

### III.   Discussion

Marais is a consultant specializing in applied mathematical and statistical analysis. (Pls.' Mot. to Exclude Marais, Ex. A ("Marais Report"), at 3 [Doc. 859-1].) His expert report examines kidney and testicular cancer rates in counties with and without high PFAS levels in the water supply,[2] including in Chattooga County, and concludes there is "no statistically detectable, empirically significant indication of an association" between those cancer rates and PFAS exposure. (*Id.* at 5.) The Plaintiffs challenge Marais's opinions on the grounds that they are irrelevant and unreliable under Rule 702 and prejudicial to the jury under Rule 403. The Court addresses each in turn.

### A. Relevance

An expert's opinions must be helpful to a trier of fact. Fed. R. Evid. 702(a). The helpfulness of an expert's opinions to a trier of fact speaks "primarily to relevance," which is a "liberal" standard. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted).

---

[2] Marais specifically compares counties with PFAS levels exceeding the Environmental Protection Agency's ("EPA") "Minimum Reporting Levels" under the Safe Drinking Water Act and those that do not. (Marais Report, at 5.)

The Plaintiffs contend that Marais's conclusions regarding the lack of association between PFAS and cancer are irrelevant because this lawsuit is based on the city's drinking water being out of compliance with the EPA's PFAS limits, not based on personal injury damages from health costs. (Pls.' Mot. to Exclude Marais, at 10–11 [Doc. 859].) The Plaintiffs claim evidence regarding whether PFAS actually increased cancer incidence in Summerville residents is irrelevant, though they admit that evidence regarding whether PFAS "can" in general cause cancer is relevant. (Reply Br. in Supp. of Pls.' Mot. to Exclude Marais, at 4–6 [Doc. 1013].) The Defendants respond that the Plaintiffs have put PFAS' cancer risks at the forefront of their theories of liability[3] and that Marais's report tackles this subject. (Defs.' Resp. Br. to Pls.' Mot. to Exclude Marais, at 15–18 [Doc. 963].) The Defendants further point out that the Plaintiffs "intend to introduce their own evidence at trial that PFAS cause cancer and other health risks," allege several times throughout their Complaint that PFAS cause human health risks, and have not sought leave to amend to remove such allegations. (*Id.* at 19–22.)

---

[3] The Defendants also claim that the Plaintiffs have put PFAS' health risks at the center of their request for declaratory judgment, but the Defendants cite Parris's now-irrelevant request for declaratory judgment against Defendants that have already been dismissed from this case—Mount Vernon and Trion. (*See* Defs.' Resp. in Opp'n to Pls.' Mot. to Exclude Marais, at 17.)

Here, the Court agrees with the Defendants that Marais's opinions are relevant. First, the Plaintiffs concede that evidence regarding whether PFAS "can" cause cancer is relevant to this litigation, and Marais's opinions may help a jury answer this question. Marais's opinions compare cancer and PFAS statistics across counties in the United States, not just in Chattooga County. The Court is not persuaded by the Plaintiffs' distinction between "general causation" evidence and "specific causation" evidence. That Marais's opinions on PFAS and cancer include data from Chattooga County, where Summerville residents reside, is not grounds for excluding the opinions altogether. Second, the Plaintiffs' extensive allegations of PFAS' health risks are material to the relevance question. The Plaintiffs explicitly rely on such allegations in their claims for negligence (Counts V, VII), wanton conduct and punitive damages (Count VIII), and public nuisance (Count IX). Evidence that that health risk never materialized is therefore relevant to the Defendants' liability on those claims. For example, weighing testimony about the nonexistent association between PFAS and cancer in the Plaintiffs' geographic area may help a jury evaluate whether the Defendants were negligent for manufacturing or failing to warn about PFAS in the first place.

## B. Reliability

In determining whether an expert witness's testimony is reliable under Rule 702, the Court must evaluate "whether the reasoning or methodology

6

underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. *Daubert* sets forth a number of factors relevant to this inquiry, including (1) whether an expert's theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a scientific technique; and (4) whether a known technique has achieved widespread acceptance in the scientific community. *Id.* at 593–94. These factors are not intended to be a "definitive checklist," *id.* at 593; rather, "the law grants the trial judge broad latitude to determine . . . whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *Kumho Tire Co., Ltd.*, 526 U.S. at 153.

The Plaintiffs take issue with four aspects of Marais's testimony: (1) it misinterprets the underlying data, which the Plaintiffs argue shows above average testicular cancer rates despite below average rates for all other types of cancer; (2) it compares county-level cancer data with city-level PFAS exposure data, which weakens the PFAS-cancer association link in the case of Summerville because Chattooga County receives only about 20% of its drinking water from Summerville; (3) it is underinclusive because it does not account for latency effects such as when a Summerville resident moves to a different county and develops cancer decades later; and (4) it is underinclusive

7

because it does not contain data from neighboring states where Summerville residents may have sought cancer treatment (e.g., at a Tennessee cancer center less than one hour's drive away). (Pls.' Mot. to Exclude Marais, at 12–14.) The Defendants respond with a variety of points about why Marais's dataset is the "gold standard" for this type of analysis and, in fact, accounts for latency and residency. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. to Exclude Marais, at 6–14.)

The Court holds that the methodology underlying Marais's testimony is reliable. First, any issues with the content of Marais's conclusions in interpreting his own data are improper considerations at the admissibility stage. The focus of the reliability inquiry is on the expert's "principles and methodology," rather than his or her ultimate conclusions. *D.H. Pace Co. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1367 (N.D. Ga. 2021) (quoting *Daubert*, 509 U.S. at 595).

Second, the county-city mismatch argument that the Plaintiffs identify is better suited for cross-examination than an admissibility challenge. The datasets on which Marais relies are produced by reputable organizations. The cancer data is produced at a county level from the National Center Institute, National Institute of Health, and Centers for Disease Control, and the PFAS data is produced at the public water district level by the EPA. To compare cancer and PFAS data at a county-by-county level, Marais mapped each public water district to its associated county. (Marais Report, at 21–22.) While it is

8

true that the only public water district in Chattooga County is the Summerville water district, which may place some limits on conclusions that can be drawn about Chattooga County's cancer incidence rate, this lone fact does not render Marais's methodology unreliable in its entirety. Marais has conducted a national statistical analysis on the association between kidney and testicular cancer and PFAS exposure in water supply, and some limits at the individual county level are expected.

Lastly, regarding the possibility that Marais's dataset is underinclusive due to latency and residency problems, this argument too is more appropriate for cross-examination. Datasets may be imperfect at times, but that is not grounds to render an entire analysis unreliable. The purpose of *Daubert* is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. And that appears to be the case here. Marais has testified that the two cancer datasets are published by reputable federal agencies and are "used in published, peer-reviewed literature" to study regional variation in cancer rates. (Defs.' Resp. Br. in Opp'n to Pls.' Mot. to Exclude Marais, Ex. 1 ("Marais Dep."), at 103:20–104:7 [Doc. 963-1]; *id.* at 17:19–18:6 (describing the SEER dataset as the "premier national registry of cancer incidence data"); *see also* Defs.' Resp. Br. in Opp'n to Pls.' Mot. to Exclude Marais, at 10 (citing evidence that a variety of industries rely on the same datasets that Marais

9

analyzed).) Other than attempting to identify hypotheticals, the Plaintiffs have not pointed to any evidence that suggests Marais's datasets depart from standard industry practice. It is understood that some people may not develop cancer for decades and that others may inevitably move. Moreover, the Defendants explain that the datasets account for the place of residence and not the place of diagnosis, (Defs.' Resp. Br. in Opp'n to Pls.' Mot. to Exclude, at 7–8 (collecting sources)), and that any cancer latency issues are likely baked into the data given that PFAS has been used across the United States for decades, (id. at 9–11; *see also* Marais Dep. at 17:5–18:14 (explaining that one cancer dataset covers 2015–2019 and the other covers 2000–2019)).

For these reasons, the Court declines to exclude Marais's testimony as unreliable. Marais has shown his methodology is sufficiently sound and that it is "properly grounded, well-reasoned, and not speculative." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (en banc) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

## C. Prejudice

The Plaintiffs ask this Court to take the "extraordinary" remedy of excluding Marais's testimony as evidence whose "probative value is substantially outweighed by a danger of . . . confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; *Smith*, 459 F.3d at 1295. They contend that Marais's testimony will confuse the jury because it would question

10

"(1) where his testimony fits into the City's case, and (2) why the City has not offered any rebuttal evidence." (Pls.' Mot. to Exclude Marais, at 15–16.) This argument has no merit. Any jury would understand the importance of introducing evidence on the health consequences of an alleged pollutant in a water pollution case, and the lack of rebuttal evidence is plainly not grounds for exclusion under Rule 403.

### IV.    Conclusion

For the reasons set forth above, the Court DENIES Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff City of Summerville's Motion to Exclude the Expert Testimony of Laurentius Marais [Doc. 859].

SO ORDERED, this ___13th___ day of March, 2026.


                                        THOMAS W. THRASH, JR.
                                        United States District Judge

11