IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR.,
individually, and on behalf of a Class of
persons similarly situated,

      Plaintiff,

        v.

3M COMPANY, et al.,

      Defendants.

CIVIL ACTION FILE
NO. 4:21-CV-40-TWT

### OPINION AND ORDER

This is an action under the Clean Water Act. It is before the Court on

the Defendants 3M Company, E.I. du Pont de Nemours and Company

("EIDP"), and the Chemours Company's ("Chemours") (collectively, "the

Manufacturing Defendants") Joint Motion to Exclude the Expert Testimony of

Dr. Kristen Hansen [Doc. 886], EIDP and Chemours's Motion to Exclude the

Expert Testimony of Kris Hansen [Doc. 887], and the Defendant Daikin

America Inc.'s ("Daikin") Motion to Exclude the Expert Testimony of Dr.

Kristen Hansen [Doc. 891].

### I.    Background

This case arises out of the contamination of surface waters and drinking

water in Chattooga County, Georgia, with per- and polyfluoroalkyl substances

known as "PFAS." (2d Am. Compl. ¶ 1 [Doc. 280]). The facts of this case are

well known to the parties by this point, and the Court will not belabor them

here. In essence, Plaintiff Earl Parris, Jr., alleges that the Defendants have contaminated his water with PFAS. Parris is a resident of Summerville, Georgia, who receives running, potable water to his home from the Summerville Public Works and Utilities Department. (*Id.* ¶ 21.) The City of Summerville—which has intervened in this case—uses Raccoon Creek, a tributary of the Chattooga River, as the main source of its municipal water supply. (*Id.*) Parris alleges that Raccoon Creek and—consequently, his household water—have been contaminated with PFAS by the Defendants. (*Id.*) At present, the Manufacturing Defendants and Daikin each move to exclude the expert testimony of Dr. Kristen Hansen.

## II.  Legal Standards

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under that rule, "expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (quotation marks and citation omitted). The Federal Rules of Evidence require a district judge to undertake a gatekeeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "This

2

gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury" in determining the persuasiveness of an expert's testimony. *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citation modified). "In considering the proffered expert testimony, a trial judge is mindful the burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Chapman*, 766 F.3d at 1304 (citation modified).

## III. Discussion

The Manufacturing Defendants and Daikin raise independent challenges to Dr. Hansen's testimony. Because Daikin's arguments go the threshold issues of qualification and reliability, the Court will address its arguments first before turning to the Manufacturing Defendants' challenges to the content of Dr. Hansen's testimony.

### A. Daikin's Motion to Exclude [Doc. 891]

#### a. Qualification

In its Motion to Exclude, Daikin first argues that Hansen is not qualified to testify about issues outside of her area of expertise, which is analytical and environmental chemistry. (Daikin's Mot. to Exclude, at 3-4). It asserts that Hansen's opinions related to corporate knowledge, telomer chemistry, business history, medical effects, and regulatory affairs should thus be excluded. (*Id.* at 3-9). The Plaintiffs respond that Hansen is imminently qualified to opine on the subjects of her testimony based on her education, personal knowledge of

the inner workings of 3M and the fluorochemical industry. (Pls.' Resp. in Opp'n, [Doc. 924], at 4-9). They also contend that Hansen can testify about what information and knowledge was available to Daikin based on her knowledge of the industry and can apply her knowledge to interpret that information for the jury, and that such testimony is not speculative. (*Id.* at 9-16). Additionally, the Plaintiffs argue that Daikin mischaracterizes several subjects of Hansen's testimony. (*Id.* at 13-16).

Rule 702 provides that a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. When assessing a witness's qualifications, the district court must focus on "the matter to which the expert seeks to testify—i.e., 'to the task at hand.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 854 (11th Cir. 2021) (quoting *Daubert*, 509 U.S. at 597). While a witness may be "well-trained, highly educated, and experienced" with an "impressive professional track record," Rule 702 contemplates "a more thorough analysis of whether [the witness] is qualified and competent to testify as an expert *as to the subject matter of his proposed testimony*." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1315-16 (N.D. Ga. 2002) (emphasis added). "It is for that reason that 'expertise in one field does not qualify a witness to testify about others.'" *Moore*, 995 F.3d at 854 (quoting *Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1368 (11th Cir. 2014)). The question whether a proposed witness is qualified to testify as an expert rests within the district court's discretion. *Jack*, 239 F.

4

Supp. 2d at 1314 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).

The Court agrees with the Plaintiffs that Hansen is qualified to testify on the matters she opines on in her expert report with regard to Daikin. First, Daikin does not dispute Hansen's expert qualifications in analytical and environmental chemistry. (*See* Daikin's Mot. to Exclude, at 3-4). In attacking Hansen's qualifications, Daikin mischaracterizes her expert opinions and the grounds on which they are based. For example, Daikin asserts that Hansen speculates that she "knew" of various aspects of Daikin's production of relevant products and that such testimony equates to testimony on Daikin's state of mind. (*See id.* at 4-7). In reality, Hansen was retained to testify about the knowledge and technology available to the Defendants, including Daikin, to "assess the analytical tools relevant to identifying PFAS in humans and the environment," and "to address the timeliness of certain disclosures by . . . Daikin America pertaining to PFAS in light of the technology available to these companies and their documented knowledge." (Hansen Expert Report, [Doc. 925-1], at 1). Hansen's report is essentially a thorough literature review based on publicly available litigation documents, studies, and regulatory documents that she distills into a summarized, easier-to-understand format based on her 26 years of experience as a chemist for 3M. (*Id.* at 2-4, 49-52, 60-68, 70-80).

With regard to Hansen's purported "state of mind", "business history", and "regulatory affairs" opinions, Hansen's report merely cites these publicly

available documents that plainly indicate that Daikin at least had access to documents and studies demonstrating certain purported dangers associated with PFAS and marketed certain PFAS products notwithstanding such information. (*See, e.g., id.* at 60-66). Thus, Hansen is not "speculating" on Daikin's state of mind or motives but is instead summarizing the available documentary evidence based on her experience in the chemical industry and her expertise in analytical and environmental chemistry. In essence, her opinions give an overview of the "state of the science" at issue. These challenges, like Daikin's other challenges to Hansen's qualifications, go to the weight of the testimony she offers and are thus more appropriately suited for cross-examination. *See Ala. Power Co.*, 730 F.3d at 1282 (noting that Rule 702 is not intended to supplant "vigorous cross-examination" and the "presentation of contrary evidence). Daikin is free to ask Hansen at trial about the limits of her knowledge of Daikin's inner workings and regulatory affairs, but these concerns have no bearing on whether she is qualified at this stage to conduct a literature and document review on the topics identified in her report.

Likewise, Daikin's challenges to Hansen's knowledge of telomer chemistry are not well taken. Contrary to Daikin's position, Hansen does not have to be an expert in the production of telomers to summarize scholarly articles and documentary evidence outlining Daikin's use of the telomer process to manufacture PFAS-based coatings; she is qualified based on her education and experience as an analytical and environmental chemist to opine

6

on Daikin's analytical capabilities with regard to its use of this process. Daikin's concerns about Hansen's lack of first-hand familiarity with the telomer process it used may bear on the reliability of those opinions, but it does not bear on her qualifications to explain the process Daikin used. *Moore*, 995 F.3d at 851 ("Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express.").

Additionally, Daikin's challenges to Hansen's opinions about purported medical effects of PFAS lack merit. First, Hansen's experience with 3M included researching global PFOS contamination and collaborating with 3M's medical division as part of that work. (*See* Hansen's Expert Report at 3). But Hansen does not opine as to "how Daikin should have responded to purported medical testing involving PFAS," as Daikin alleges. (Daikin's Mot. to Exclude, at 7). All Hansen states is that (1) Daikin knew of the dangers of PFAS and PFOS posed, (2) a dataset provided to Daikin demonstrated widespread PFOA contamination of human blood that "should have been cause for concern within Daikin," and (3) the EPA listed the potential association between PFOAs and systemic toxicity in humans. (Hansen's Expert Report, at 61-63). Again, Hansen makes these statements based on a review of publicly available documents and studies that were either shared directly with Daikin, created by Daikin, or provided on the EPA's regulatory docket. (*See id.*). The only

7

statement Hansen makes that comes close to opining on how Daikin "should have responded" is her statement that its awareness of the demonstrated widespread PFOA contamination of human blood "should have been cause for concern." (*Id.* at 63). But in the Court's view, it does not take an expert to say that data showing the widespread accumulation of a foreign chemical compound in human blood is concerning. *See, e.g., Cooper v. Marten Transport, Ltd.*, 539 F. App'x 963, 967-68 (11th Cir. 2013) (indicating that expert testimony is not always required to determine causation where the jury can rely on its common knowledge; for example, "whether an automobile collision caused a backache later the same day" did not require expert testimony). For all of these reasons, the Court finds Hansen qualified to give the opinions she shares in her expert report as to Daikin. *See Jack*, 239 F. Supp. 2d at 1314.

### b. Reliability

Daikin also argues that Hansen lacks a reliable methodology underlying her expert testimony because she failed to test Daikin's products for the presence of PFAS before offering her opinions, she has no firsthand experience with the company, and she offered no explanation for which Daikin documents she chose to include in her report. (Daikin's Mot. to Exclude, at 9-13). The Plaintiffs respond that Daikin's arguments ignore "the record and discount[] the level of deep research and detail that went into preparing her report," contending that Hansen reviewed 1,539 documents to prepare her report. (Pls.' Resp. in Opp'n, [Doc. 925], at 17). They further assert that Hansen began

8

conducting her research before this litigation ever began and that she has first-hand knowledge of the events she would testify to. (*Id.* at 18-19).

Expert testimony is admissible under Rule 702 if, *inter alia*, (1) "the testimony is based upon sufficient facts or data"; (2) "the testimony is the product of reliable principles and methods"; and (3) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. To that end, the district court is tasked with evaluating "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. *Daubert* sets forth a number of factors relevant to this inquiry, including (1) whether an expert's theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a scientific technique; and (4) whether a known technique has achieved widespread acceptance in the scientific community. *Id.* at 593-94. These factors are not, the Supreme Court has emphasized, intended to be a "definitive checklist," *id.* at 593; rather, "the law grants the trial judge broad latitude to determine . . . whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case[.]" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

In response to questioning by Daikin's counsel, Hansen testified that she did not apply the scientific method in creating her report "because there is

9

no experimental data, it's a compilation, it's an analysis, and it's conclusions . . . ," but went on to say that she "would say that [she] used the principles of [the] scientific method to construct [her] report." (Hansen Dec. 12, 2024 Dep., [Doc. 925-3], at 226:9-17). She also said that applying the scientific method would have been an inappropriate method for producing her report, since she was not analyzing experimental data. (*Id.* at 226:18-227:11). In sum, she said, she "provide[d] [her] opinions . . . [she] then provided the data that supported them and [she] . . . provided discussion and analysis of those." (*Id.* at 227:12-20). With this backdrop in mind, the Court acknowledges that although

> there are instances in which a district court may determine the reliability prong under *Daubert* based primarily upon an expert's experience and general knowledge in the field . . . at all times the district court must still determine the reliability of the opinion, not merely the qualifications of the expert who offers it.

*Kilpatrick v. Breg., Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010).

Having reviewed the expert report, the Court concludes Hansen is not "speculating" on Daikin's state of mind or motives but is instead summarizing the available documentary evidence based on her experience in the chemical industry and her expertise in analytical and environmental chemistry. In essence, her opinions give an overview of the "state of the science" at issue. Her testimony is not unreliable just because she conducted a literature review rather than scientific testing on Daikin's products or because she did not discuss every one of the 1, 539 documents she purportedly reviewed. This challenge, like Daikin's other challenges to Hansen's qualifications, goes to the

weight of the testimony she offers and is thus more appropriately suited for cross-examination. The Court will address any objections to Hansen's testimony that the parties wish to make on an issue-by-issue basis at trial. But at this time, Daikin has not shown her testimony to be unreliable so, Daikin's Motion to Exclude [Doc. 891] is DENIED.

### B. EIDP and Chemours's Motion to Exclude [Doc. 887]

EIDP and Chemours also move to exclude Hansen's expert testimony and opinions about their companies. They raise similar arguments to Daikin's challenging Hansen's qualifications and the reliability, relevance, and helpfulness of her testimony.[1] EIDP and Chemours's arguments with regard to qualification collapse the reliability and qualifications inquiries, something which the Eleventh Circuit expressly prohibits. *See, e.g.*, *Kilpatrick*, 613 F.3d at 1336. EIDP and Chemours's own case law citations illustrate this point. To that end, EIDP and Chemours's assertion that "under Georgia law, expert testimony regarding the knowledge, intent, or state of mind is not a proper subject for expert testimony at all" is an inaccurate statement of both the law and the holdings of some of the cases on which this statement relies.

For example, in *Cason v. C.R. Bard, Inc.*, the court excluded expert testimony on reliability grounds where the expert conducted a medical literature review and relied on his "existing knowledge of FDA regulations and

---

[1] The Plaintiffs' Response Brief also largely mirrors its response brief to Daikin's Motion to Exclude. (*See* Pls.' Resp. in Opp'n, [Doc. 927]).

medical device design and safety" to analyze the defendant's corporate documents and opine on what the defendant should have known and should have done differently. *Cason v. C.R. Bard., Inc.*, 2015 WL 9913809, at * 11-12 (N.D. Ga. Feb. 9, 2015). In so holding, the court did not hold that this testimony was barred as improper "knowledge" testimony but instead held, that the expert was qualified but had failed to provide a proper basis for his opinions beyond his "own subjective belief[s]." *Id.* at *12. Moreover, EIDP and Chemours do not point to any of Hansen's opinions where she opines on their "intent" or "motive,"; again, she merely cites and summarizes a compilation of documents that plainly indicate these companies at least had access to documents and studies demonstrate certain purported dangers associated with PFAS and marketed certain PFAS products notwithstanding such information. (*See* Hansen Expert Report at 52-60). The Court reiterates that the fact that Hansen may have lacked personal knowledge of these companies' inner workings and instead compiled and summarized relevant documentary evidence bears not on her qualifications but on the reliability and credibility of her testimony. *See Ala. Power Co.*, 730 F.3d at 1282 (noting that Rule 702 is not intended to supplant "vigorous cross-examination" and the "presentation of contrary evidence). As with Daiken, EIDP and Chemours have not shown that Hansen's testimony is per se unreliable just because she did not test their products herself and did not work for their companies; they are free to cross-examine Hansen at trial and to object to her testimony on an

issue-by-issue basis. EIDP and Chemours's Motion to Exclude [Doc. 887]is

DENIED.

### C. The Manufacturing Defendants Motion to Exclude [Doc. 886]

Finally, the Manufacturing Defendants (3M, EIDP, and Chemours) jointly move to exclude Hansen's testimony on related grounds.  The Manufacturing Defendants argue that Hansen's expert testimony and opinions should be excluded because she cannot opine on its state of mind and her opinions are "mere summaries of the evidentiary record." (Manufacturing Defs.' Mot. to Exclude, [Doc. 900-6], at 1, 5-15). They do not challenge Hansen's qualifications or the reliability of her opinions.[2] With regard to the first challenge, the manufacturing defendants contend that each of Hansen's opinions constitute impermissible speculation as to their states of mind, which invades the province of the jury. (*Id.* at 5-10). In response, the Plaintiffs argue that Hansen's opinions are actually "state of the science" opinions rather than state of mind and that she "simply assessed the scientific information and data available to the defendants to reach her conclusions." (Pls.' Resp. in Opp'n, [Doc. 923], at 9-12).[3]

---

[2] Objections that are not made at the appropriate time are waived. *Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 111 F.4th 1182, 1186 (11th Cir. 2024); *see also Alliance Laundry Sys., LLC v. Adams*, 2024 WL 3831409, at *3 (N.D. Fla., Aug. 15, 2024) ("It is not the Court's job to figure out what specific objections could have or should have been made and then to rule as if those objections had been made. It is the Court's job to look at the objections that were made.").

[3] Again, the Plaintiffs' response brief largely mirrors its briefs filed in

"An expert cannot speculate as to an individual's state of mind. Speculative state of mind statements are not admissible as expert testimony because they are legal conclusions as to another person's state of mind and thus are not of the type of evidence that a jury needs the assistance of an expert to understand." *Kelley v. C.R. Bard., Inc.*, 644 F. Supp. 3d 1316, 1343 (N.D. Ga. 2022). Instead, "the jury should hear and/or see firsthand any relevant evidence pertaining to the Defendant's intent. Then the jury . . . should consider the facts and make its own determination regarding [the] [d]efendant's intent." *Ocasio v. C.R. Bard., Inc.*, 2015 WL 2062611, at *4 (M.D. Fla. May 4, 2015).

The tone of Hansen's opinions with regard to 3M differ from her opinions of the other defendant companies, likely given her firsthand experience as a 3M employee. The Court agrees with the Plaintiffs that much of Hansen's opinions do not touch on the Manufacturing Defendants' "state[s] of mind", intent, or knowledge, but instead analyze the state of the science at the relevant times and explain what data and tools these Defendants had access to. And as the Court has already ruled, this does not make her testimony per se unreliable. For example, in Opinion 6, Hansen explains the PFOS and PFOA measurements Dr. Henion was able to perform in the mid-1990's but notes that 3M contracted with Dr. Henion to perform less comprehensive testing of these

---

response to Daikin's and EIDP and Chemours's Motions to Exclude.

compounds in its workers' blood. (*See* Henson Report, at 29-30). Her opinion, that 3M "could have" comprehensively measured PFOS in individual blood samples at that time, is therefore not an assessment of 3M's intent or state of mind but rather an explanation of what analytical tools were available to 3M with regard to PFOS and PFOA testing at that time. To the extent Hansen makes these types of opinions, as the Court assessed with regard to the first two Motions to Exclude, they are admissible because they are not speculative but instead informative and not something that the jury could easily determine on its own. *See Kelley*, 644 F. Supp. 3d at 1343.

However, some of Hansen's opinions as to 3M do step into state of mind and intent territory. As 3M points out, in Opinion 2, Hansen notes that 3M did not ask a scientist to conduct certain research because the results of that study would likely answer "a question that 3M decided [it] would rather not ask." (Hansen Expert Report, at 28). In Opinion 4, Hansen states that 3M's decision not to hire Dr. Henion reflects its "unwilling[ness] to fully in engage in characterization of the public health issue of widespread fluorine in blood." (*Id.*). And in Opinion 6, Hansen opines that 3M increased the PFOS detection limit in its lab testing with the intent of "discourag[ed]" reporting of PFOS levels in the general population. (*Id.* at 29-34); (Manufacturing Defs.' Resp. in Opp'n, Ex. B [Doc. 888-3] at 65:17-14). These types of opinions constitute legal conclusions as to 3M's state of mind and are inadmissible. The Plaintiffs are free to introduce at trial the documents Hansen relied on, subject to any

15

objections, as well as the unexcluded portions of her expert report, so that the jury may make its own determination as to 3M's intent. At trial, 3M may make objections to portions of Hansen's testimony based on this ruling.

The Manufacturing Defendants also challenge Hansen's testimony on the ground that it is an impermissible narrative study of the evidence. (Manufacturing Defs.' Mot. to Exclude, at 10-15). They contend that such summary evidence is not helpful to the jury, invites inadmissible hearsay, and may be given undue significance "in the eyes of lay jurors." (*Id.* at 11-12). The Plaintiffs argue that Hansen's report "distills highly complex, technical, and scientific concepts in a way that will provide invaluable context for the jury." (Pls.' Resp. in Opp'n, at 21-22). The Court agrees with the Plaintiffs. As Hansen testified during her deposition, the documents she reviewed are "fairly technical" and would not be examined in the same way by someone without her training as an analytical chemist. (*See* Hansen Dec. 12, 2024 Dep., at 217:17-218:11 ("I'm not saying that I'm smarter than anybody else, but there [were] definitely some . . . documents that I think someone who was trained as an analytical chemist might read in a different way from somebody who didn't have that training, yes.").

The Court itself has had difficulty understanding the advanced chemistry concepts at play in this case. At its core, Rule 702 requires an expert's testimony to "assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman*, 766 F.3d at 1304. The Court has no

16

doubt that Hansen's testimony will assist the jury by offering instruction and explanation of the chemistry and analytical tools involved that are "beyond the understanding and experience of the average citizen." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022); *United States v. Rouco*, 765 F.2d 983, 985 (11th Cir. 1985). The Manufacturing Defendants' reliance on cases where an expert witness simply read materials and testified as to their contents are distinguishable for this reason. (*See, e.g.*, Manufacturing Defendants' Mot. to Exclude, at 12-13). As to the Manufacturing Defendants' blanket concerns about hearsay, the Court will address such objections on a case-by-case basis as they are raised at trial. For these reasons, the Manufacturing Defendants' Motion to Exclude [Doc. 886] is DENIED.

## IV. Conclusion

For the foregoing reasons, the Defendants 3M Company, E.I. du Pont de Nemours and Company, and the Chemours Company's Joint Motion to Exclude the Expert Testimony of Dr. Kristen Hansen [Doc. 886] is DENIED. The Defendants EIDP and Chemours's Motion to Exclude the Expert Testimony of Kris Hansen [Doc. 887] and the Defendant Daikin's Motion to Exclude the Expert Testimony of Dr. Kristen Hansen [Doc. 891] are also DENIED.

SO ORDERED, this ___24th___ day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge

17