IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR.
Individually, and on behalf of a Class of
persons similarly situated,

    Plaintiff,

      v.

3M COMPANY, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 4:21-CV-40-TWT

## OPINION AND ORDER

This is an action under the Clean Water Act. It is before the Court on

Defendants 3M Company ("3M"), E.I. du Pont de Nemours and Company ("du

Pont"), and the Chemours Company's ("Chemours") Motion to Exclude Certain

Opinions of Charles Andrews [Doc. 893]. For the reasons stated below, the

Defendants' Motion to Exclude Certain Opinions of Charles Andrews [Doc.

893] is DENIED.

### I.   Background

This case arises out of the contamination of surface waters and drinking

water in Chattooga County, Georgia, with per- and polyfluoroalkyl substances

known as "PFAS." (2d Am. Compl. ¶ 1 [Doc. 280]). The facts of this case are

well known to the parties by this point, and the Court will not belabor them

here. In essence, Plaintiff Earl Parris, Jr., alleges that the Defendants have

contaminated his water with PFAS. Parris is a resident of Summerville, Georgia, who receives running, potable water to his home from the Summerville Public Works and Utilities Department. (*Id.* ¶ 21.) The City of Summerville—which has intervened in this case—uses Raccoon Creek, a tributary of the Chattooga River, as the main source of its municipal water supply. (*Id.*) Parris alleges that Raccoon Creek and—consequently, his household water—have been contaminated with PFAS by the Defendants. (*Id.*) At present, Defendants 3M, Daikin, and du Pont jointly move to exclude the opinion testimony of the Plaintiffs' expert, Dr. Charles Andrews.

Andrews is a registered Professional Geologist in Georgia and has over thirty-five years of professional experience in groundwater and surface water consulting including the investigation and design of remedial actions for numerous contaminated sites. (Br. in Supp. of Defs.' Mot. to Exclude Certain Opinions of Charles Andrews, Ex. 1 ("Andrews Expert Report"), at 1 [Doc. 893-1]). He has a Ph.D. in geology from the University of Wisconsin and a Bachelor of Arts from Carleton College. (*Id.*).

Andrews is a Senior Principal at S.S. Papadopulos & Associates, Inc. ("SSP&A") and also a visiting professor in the School of Environmental Science and Engineering at the South University of Science and Technology in Shenzen, China. (*Id.*). His clients have included major corporations, the U.S. Department of Justice, and various state and federal agencies.. Throughout his professional career, Andrews has published numerous technical papers. (*Id.*).

2

Additionally, he is the executive editor of the professional journal, *Groundwater.* (*Id.*). To his litigation experience, Andrews has worked on behalf of both plaintiffs and defendants in environmental litigation matters. (*Id.*).

## II.    Legal Standard

"Under Federal Rule of Evidence 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (citation modified). Courts perform a "gatekeeping role" in excluding expert testimony that does not satisfy these qualification, reliability, and helpfulness requirements. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury" in determining the persuasiveness of an expert's testimony. *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citation modified). Rather, the goal is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

3

"The proponent of the expert testimony always bears the burden" of establishing qualification, reliability, and helpfulness. *Id.* (citation modified). An expert's qualification may be based on "knowledge, skill, experience, training, or education." *Id.* at 1261 (emphasis omitted) (quoting Fed. R. Evid. 702). Regarding reliability, a variety of factors may be relevant, but, "in *all* cases," the Court must find the testimony "properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* at 1262 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). The focus of the reliability inquiry is on the expert's "principles and methodology," rather than his or her ultimate conclusions. *D.H. Pace Co. v. Aaron Overhead Door Atlanta LLC*, 526 F. Supp. 3d 1360, 1367 (N.D. Ga. 2021) (quoting *Daubert*, 509 U.S. at 595). Lastly, the helpfulness of an expert's opinions to a trier of fact speaks "primarily to relevance," which is a "liberal" standard. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted).

### III.    Discussion

The Defendants do not challenge Andrews's qualifications as an expert witness. But the Defendants still argue for the exclusion of certain affirmative and rebuttal opinions within Andrew's expert report. The Court addresses each set of arguments separately.

4

### A. Affirmative Opinions

The Defendants seek to exclude two sets of opinions laid out in Andrews's expert report as unreliable. First, they ask the Court to exclude opinions relating to the fate and transport of the PFAS chemicals. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 5-16 [Doc. 893]). Second, they ask the Court to exclude Andrews's opinions pertaining to the remediation of the PFAS chemicals. (*See id.* at 16).

### 1.  Fate and Transport of the PFAS Chemicals

### a.  Source of the PFAS Chemicals

Andrews's expert report contains assertions that the five nearby sludge farms are the source of the PFAS chemicals in Raccoon Creek. The Defendants argue that these opinions must be excluded as unreliable for three reasons. First, the Defendants argue that Andrews's principles and methods fail to follow the Remedial Investigation step (the "RI Step") of the Remedial Investigation/Feasibility Study ("RI/FS") process established by the Environmental Protection Agency within their National Contingency Plan. (Br. in Supp. of Defs.' Mot. to Exclude, at 6 (citing 40 C.F.R. § 300.430)). Second, the Defendants argue that Andrews's opinions are based on speculation and insufficient data when data was readily available. (*Id.* at 7).   Third, the Defendants argue that Andrews's opinions fail to address relevant data contrary to his views. (*Id.* at 8).

Addressing the Defendants' first argument, the Defendants specifically argue that Andrews failed to collect any site-specific data to assess the relevant contribution of sources other than the sludge farms as required by the RI Step. (*Id.* at 6-7). The Defendants emphasize that this step is important in any reliable expert report because, in another context, a party seeking cost recovery for its investigation and remedial actions is barred from recovery of response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). (*Id.* at 6 (citing *Union Pac. R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 835 (8th Cir. 2000), then citing *Dickerson v. Adm'r, Env't Prot. Agency*, 834 F.2d 974, 978 (11th Cir. 1987))).

This argument is dead-on-arrival for two reasons. First, the Defendants' cases are irrelevant to the instant action as the requirement to follow the RI Step within the RI/FS is statutorily required under CERCLA to recover removal costs, as explicitly discussed in both cases cited by the Defendants. *Union Pac. R.R. Co.*, 215 F.3d at 839 (discussing 42 U.S.C. § 9607(a)(4) as to private parties); *Dickerson*, 834 F.2d at 978 (discussing 42 U.S.C. § 9604(a)(1) as to the government). Here, the Plaintiffs' claims against the Defendants arise out of the Clean Water Act, conditions set within a National Pollutant Discharge Elimination System permit, the Georgia Water Quality Control Act, the Resource Conservation and Recovery Act, and common and state law. (*See* 2d. Am. Compl. ¶¶ 103-222). None of these causes of action require a plaintiff

to conduct an investigation in accordance with the RI/FS as a precondition to recovering damages.

Second, even assuming that such a requirement exists within the Plaintiffs' causes of action, nothing requires the Court to exclude testimony that fails to include the RI Step. Indeed, every case cited by the Defendants did not concern the exclusion of expert testimony and instead evaluated CERCLA claims on the merits. *See Union Pac. R.R. Co.*, 215 F.3d at 834-39 (reviewing CERCLA on summary judgment); *Dickerson*, 834 F.2d at 977-78 (reviewing CERCLA on a motion to dismiss); *Channel Master Satellite Sys., Inc. v. JFD Elecs. Corp.*, 748 F. Supp. 373, 387-88 (discussing CERCLA and RI/FS on a motion for partial summary judgment). In sum, the Court is inclined to agree with the Plaintiffs that this argument "is nothing more than a red-herring." (Pls.' Br. in Opp'n to Defs.' Mot. to Exclude, at 7).

Moving to the Defendants' remaining arguments, the Defendants argue that Andrews's opinions are based on speculation and insufficient data because his opinions that the five farms are the source of the PFAS chemicals are only based on data from two of those farms. (*See* Br. in Supp. of Defs.' Mot. to Exclude Certain Opinions of Charles Andrews, at 7 (citing and quoting Andrews Dep. ¶¶ 39:9-39:15 [Doc. 893-3])). The Defendants further argue that such shortcomings cannot be explained away by a lack of data because of the "copious records" that reveal other potential sources of the PFAS chemicals beyond the five sludge farms. (*See id.*). On this point, the Defendants argue

7

that Andrews's attempts to disclaim other sources of PFAS chemicals are based on insufficient reasoning. (*See id.* at 8-9).

This argument is more persuasive. Federal Rule of Evidence 702 requires that expert testimony be based upon sufficient facts or data. Fed. R. Evid. 702(b). When considering whether to exclude proffered expert testimony, a trial court's gatekeeping function requires it to apply more scrutiny to expert opinions than simply "taking the expert's word for it." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1201 (11th Cir. 2010) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). For testimony to be reliable, "an expert's method need not be perfect, nor must he apply it perfectly." *Navelski v. Int'l Paper Co.* 244 F. Supp. 3d 1275, 1298 (N.D. Fla. 2017) (citation modified). "Generally, criticisms of an expert's decision to include or exclude particular data points and variables affect the probative value of the methodology, not its admissibility." *Id.* at 1301 (citing *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)). But "where a 'flaw is large enough that the expert lacks 'good grounds' for his or her conclusions,' the expert's opinion should be excluded." *Id.* at 1301 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). A trial court has discretion to exclude expert testimony where such testimony is based on an incomplete evaluation and fails to reject alternative hypotheses using scientific methods and procedures. *Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 966-67 (11th Cir. 2013); *Hendrix*, 609 F.3d at 1201-02; *see Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342

(11th Cir. 2010); *Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1369-70 (S.D. Ga. 2016).

But the Plaintiffs reject the assertion that Andrews could have reviewed more information within his expert report. (Pls.' Br. in Opp'n to Defs.' Mot. to Exclude Certain Opinions of Charles Andrews, at 8). The Plaintiffs allege that Andrews reviewed all the sludge management plans made available by the Town of Trion from 1992, when the town started keeping records. (*See id.* (citing Andrews Expert Report, Attachment D)). Further, the Plaintiffs allege that, where the Defendants' experts presented evidence not available to Andrews previously, he engaged with the evidence within his rebuttal report. (*See id.* at 8-9 (citing Br. in Supp. of Defs.' Mot. to Exclude, Ex. 5 ("Andrews Rebuttal Expert Report"), at 4-12, Attachment B)).

Acknowledging that a gap exists within Andrews's expert report, the Court nonetheless concludes that such testimony need not be excluded and that the deficiencies identified by the Defendants go to the probative value of the testimony rather than its admissibility under Rule 702. *See Navelski*, 244 F. Supp. 3d at 1301. Andrews's reliance on the sludge management plans made available by the Town of Trion is not fatal to his testimony because prior to 1992, the Town of Trion dumped biosolids informally and formal data was only available from 1992 on. (*See* Hutchins Depo. ¶¶ 147:9-148:6 [Doc. 970-5]). This is not hidden knowledge, as Andrews acknowledges this shortcoming within his report. (*See* Andrews Expert Report at 12). Along with sampling conducted

at the two sludge fields, Andrews also took water samples from Raccoon Creek to make and extrapolate his findings as to all five fields. (*See id.* at 14-16).

Still, the fundamental issue the Defendants appear to have is the fact that Andrews did not acknowledge other possible sources of PFAS chemicals. This is implicitly acknowledged by the Defendants' briefing to this Court, as the available information discussed by the Defendants as available to Andrews reveals "other potential sources of the PFAS [chemicals] beyond the five sludge farms," not any of the three remaining sludge farms that the Defendants contend that Andrews failed to analyze. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 7).

But Andrews does ultimately address these as well. When such sources were raised by the Defendants' experts, Andrews addressed them within his rebuttal report. (*See* Andrews Rebuttal Expert Report, Attachment B). To this addendum, the Defendants make two points. First, they argue that an expert cannot prop up their affirmative opinions in a rebuttal report. (Br. in Supp. of Defs.' Mot. to Exclude, at 8 (citing *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1331 (N.D. Ga. 2017)). Second, they argue that, even if such opinions are permitted, his opinions are not based on any actual investigation. (*Id.*).

To the Defendants' first point, their reliance on *Coward* is misplaced. *Coward* involves a scenario where the plaintiffs failed to disclose a supplemental report from an expert and presented it ten months later when information for the report was readily available earlier. *See Coward*, 282 F.

10

Supp. 3d at 1330. While it is true that the court in *Coward* stated that supplemental reports cannot rewrite an expert report or present new opinions, *id.* at 1329, Andrews's opinions here are not new and there is no risk of surprise for the Defendants. Andrews's rebuttal report addresses information already presented within the Defendants' expert report and addresses how such other potential sources cannot contribute significantly to the buildup of PFAS chemicals in Raccoon Creek. (*See* Andrews Rebuttal Expert Report, Attachment B). Thus, these opinions can be considered in evaluating Andrews's reliability.

The Defendants' second argument appears to contradict their first argument. The Defendants take issue with Andrews bolstering the testimony's reliability by addressing alternative sources provided by the Defendants' experts, but then argue that the methodology he uses to do so is not based off of any primary investigation. But the entirety of Andrews's testimony to this point takes issue with a number of fundamental assumptions used by various experts in coming to this conclusion. And Andrews has already conducted his primary investigation by sampling from the sludge farms. Ultimately, each issue the Defendants have with Andrews's report boils down to issues with the probative value of the expert opinion, not its admissibility. *See Navelski*, 244 F. Supp. 3d at 1301. Such issues are to be determined by the trier of fact. Thus, the Court will not exclude any portion of Andrews's testimony on this matter.

### b. Transport of the PFAS Chemicals

Andrews's expert report also contains assertions that the PFAS chemicals are leaching to groundwater from the sludge farms and subsequently discharging in dissolved form to the surface water of Raccoon Creek. The Defendants argue that these opinions must be excluded as unreliable for three similar reasons as the ones argued above. The Defendants criticize the methodology and processes used by Andrews as unreliable because (1) Andrews failed to use the RI/FS process to lead to this conclusion, (2) his findings were based on insufficient facts and data, and (3) he did not consider relevant and available data contrary to his proffered opinions. (Br. in Supp. of Defs.' Mot. to Exclude Certain Opinions of Charles Andrews, 10-12). The Court has already rejected the first argument and proceeds to the remaining two.

The Defendants argue that Andrews's findings are based on insufficient facts and data because he relies on samples taken by another expert, Andrew Stahl, which aren't representative of the PFAS chemicals that have dissolved and moved through the groundwater. (*See id.* at 11-12). But this Court has already held that Stahl's own reliance on his groundwater samples does not make his methodology unreliable. (*See* Mot. to Exclude Andrew Stahl Op. & Or., at 11-14 [Doc. 1088]). There, the Court held that any issues the Defendants may have with the validity of the groundwater samples should be raised on cross-examination and are not a reason for exclusion of Stahl's testimony. (*Id.*). The Court reaches the same conclusion here. Andrews's reliance on Stahl's

groundwater data alone does not make Andrews's testimony on the transport of the PFAS chemicals through groundwater per se unreliable. Rather, such a challenge goes to the weight of Andrews's testimony. Accordingly, the Defendants' second argument is unpersuasive.

The Defendants' third argument concerning a failure to consider alternative opinions relates to Andrews's revised report. There, Andrews corrects an inconsistency with another expert, Dr. Erica DiFilippo, and acknowledges that seasonal variations exist with regard to PFAS chemical concentrations. (*See* Br. in Supp. of Defs.' Mot. to Exclude, Ex. 9 ("Andrews Revised Report"), at 2 [Doc. 893-11]). But this correction ultimately does not change the final conclusion. (*See id.*). The Defendants argue that this amounts to a failure by Andrews to directly address contrary opinions and therefore his opinions on this topic should be excluded. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 12-13). The Court disagrees.

In his revised report, Andrews takes the contrary opinions raised in his deposition and in turn uses them to enforce his original report. (*See* Andrews Revised Report, at 2). Andrews does not treat such opinions as purely contrary opinions but revises his report to account for the supposed inconsistency. (*See id.*). Thus, Andrews adequately engages with this new information. Accordingly, the Court will not exclude any opinions by Andrews relating to the transport of PFAS chemicals.

### c. Amount of PFAS Chemicals

Finally, the Defendants challenge Andrews's findings on the amount of the PFAS at the Summerville Water Treatment Plant. Specifically, the Defendants take issue with purported internal inconsistencies within Andrews's own opinions as well as inconsistencies with DiFilippo's opinions.

The Court addresses the internal inconsistencies first. A court has the discretion to exclude an expert's opinions if relevant inconsistencies within the opinion render it unreliable. *See Kumho Tire Co.*, 526 U.S. at 142-46; *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1265, 1293 (M.D. Ala. 2001). Here, the Defendants point to differences in calculations between Andrews's expert report, revised report, and rebuttal report and argue that Andrews's persistence with his ultimate conclusion makes little sense when changes exist across each of the reports. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 13-14).

The Court disagrees. Each of the calculations made by Andrews considers sources not evaluated in previous reports. In his rebuttal report, Andrews takes into account alternative sources of PFAS chemicals to ultimately make the final conclusion that PFAS chemicals can still be attributable to the Defendants. (*See* Andrews Rebuttal Expert Report, Attachment B). In his revised report, Andrews reconciles the inconsistencies with DiFilippo's report but still comes to the same conclusion. (Andrews Revised Report, at 2). Such variations in his calculations do not show internal inconsistencies but rather demonstrate various scenarios in which his

14

methodology still results in the same result. The Defendants are free to cross-examine Andrews on these inconsistencies at trial, but the Court holds that the identified testimonies do not warrant exclusion.

Next, the Court considers the Defendants' argument that Andrews report contains inconsistencies with DiFilippo's report. The Defendants' argument is wholly unsupported. The Court finds no basis to exclude portions of an expert report simply because two experts are inconsistent with each other. In contrast, the Eleventh Circuit is clear that "a district court may not exclude an expert because it believes one expert is more persuasive than another expert." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005). Such questions of persuasiveness are for a jury and "[v]igorous cross-examination ensures that these issues of general credibility are properly presented for consideration by the trier of fact." *Id.* (citing *Daubert*, 509 U.S. at 596).

Still, the Defendants argue that inconsistencies between experts is a sufficient basis of exclusion for expert testimony, referring to *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075 (S.D. Fla. 2022), in support of their proposition. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 15). But the Defendants plainly misread the holding of *In re Zantac*. There, the Court excluded the expert opinions of two experts because they "appl[ied] internally inconsistent principles to analyze the data [ ]; each selectively extract[ed] data points from the studies while disregarding other data points

15

from the same studies without justification; and each deviate[d] from the study authors' conclusions." *Id.* at 1273. The Defendants interpreted this sentence to mean that the court excluded the opinions of the experts for being inconsistent with each other. The Defendants err. The court in *In re Zantac* noted that the opinions of *both* experts were "internally inconsistent," not that they were inconsistent with each other's opinions. *See id.* at 1273. And as this Court has acknowledged, an internally inconsistent opinion is a basis for exclusion of expert testimony. In the face of the Eleventh Circuit's prohibition against exclusion on the basis of competing expert testimony, the Court is not willing to break new ground by excluding Andrews's testimony because of alleged inconsistencies with DiFilippo's expert testimony. Accordingly, the Court will not exclude any of Andrews's testimony with regard to the fate and transport of the PFAS chemicals.

### 2. Remediation of the PFAS Chemicals

Andrews's expert report contains opinions concerning how the PFAS chemicals should be remediated from Raccoon Creek. Once again, the Defendants argue for the exclusion of these opinions because of a failure to apply the NCP, rendering the testimony unreliable. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 16). As the Court discussed earlier, this is not a necessary requirement for expert testimony to be reliable and is not a basis for exclusion. Thus, the Court will not exclude Andrews's testimony on this basis.

16

## B. Rebuttal Opinions

The Defendants seek to exclude certain rebuttal opinions offered by Andrews. First, they seek to exclude Andrews's opinions that relate to the groundwater model proposed by David Hagen, Defendant Daikin's expert. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 17-21). Second, they seek to exclude Andrews's opinions relating to alternative sources of PFAS in the Raccoon Creek watershed in rebuttal to 3M's expert, Andy Davis. (*See id.* at 21-24).

### 1. Hagen's Groundwater Model

Hagen's groundwater model purports to establish that the Knox Group Aquifer within the Raccoon Creek watershed is capable of a sustained groundwater yield at a rate that is the current permitted Raccoon Creek water withdrawal rate at the City of Summerville Water Treatment Plant. (*See* Br. in Supp. of Defs.' Mot. to Exclude, Ex. 4 ("Hagen Expert Report"), at 13 [Doc. 893-4]). In response, Andrews argues that the groundwater model is not useful because the simulated conditions deviate wildly from existing conditions. (*See* Andrews Rebuttal Expert Report, at 16).

The Defendants wish to exclude this rebuttal opinion for three reasons. First, they argue that Andrews is unqualified to offer opinions pertaining to groundwater modeling. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 17-18). Second, they argue that Andrews relies on the opinions of an undisclosed purported expert, which warrants exclusion. (*See id.* at 18-19). Third, they argue that Andrews's opinions are unreliable. (*See id.* at 19-21).

17

The Court addresses the qualification issue first. A trial court must determine whether an expert is qualified on each topic they discuss. *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 854 (11th Cir. 2021). "[E]xpertise in one field does not qualify a witness to testify about others." *Id.* "Experts may be qualified in various ways." *Frazier*, 387 F.3d at 1260. When looking to whether an expert is qualified to testify to a certain subject area, "courts generally look to evidence of the witness's education and experience and ask whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

The Defendants do not dispute that Andrews is qualified to offer his affirmative opinions. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 17). But they do dispute whether he is qualified to offer rebuttal testimony on groundwater models. They point to two sets of deposition testimony given by Andrews: (1) in another litigation, Andrews admitted that he is unfamiliar with various forms of groundwater modeling, (State Court Andrews Dep. at 181:18-182:7 [Doc. 893-16]); and (2) in this litigation, when asked whether Andrews could develop a groundwater model like Hagen, Andrews stated that he would most likely give the task to another individual, (Andrews Dep. at 31:1-31:22 [Doc. 893-16]). (Br. in Supp. of Defs.' Mot. to Exclude, at 17-18).

18

The Court is not convinced by this argument. Andrews has published numerous peer-reviewed articles on the development and use of groundwater models. (*See* Andrews Expert Report, at 1). Throughout his thirty-five-year professional career in groundwater and surface water consulting, Andrews has had ample experience working adjacent, at the least, to groundwater modeling. (*See id.*). The cited portions of deposition testimony do not defeat this viewpoint. In the deposition testimony taken from another litigation, counsel asked only if Andrews was familiar with a set of groundwater modeling forms, to which Andrews responded that he was not familiar. (State Court Andrews Dep. at 181:18-182:7). But when asked if Andrews would have used a computer model to characterize the flows of groundwater, Andrews admitted that he considered the use of such a model but ultimately chose not to use it. (*Id.* at 182:8-182:14). This fact is further bolstered by the deposition taken in this litigation. When asked whether he would have developed a groundwater model, Andrews stated that it depended on how much time he was given. (Andrews Dep. at 31:1-31:8). While Andrews states that he would have given it to other "very competent groundwater modelers at [his] firm," nothing within the deposition testimony shows that he is unfamiliar with the mechanisms and processes of groundwater modeling. (*See id.* at 31:3-31:22). "A witness need not be the best or most qualified authority in a field to be admitted as an expert." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1349 (N.D. Fla. 2018). Accordingly, the Court will not exclude Andrews's testimony on

19

groundwater modeling on this basis. Further, because the rule disallowing an expert to be the "mouthpiece" of another "undisclosed expert" pertains to situations where the expert is unqualified to opine about the topic in the first place, *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368-69 (11th Cir. 2014), the Defendants' second argument fails on this determination as well. *See also Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, 2021 WL 2185699, at *7 (N.D. Ga. May 28, 2021) ("'It is well settled that an expert may rely on the work of assistants when formulating an expert's opinion, but may not simply parrot the work actually done by another expert, who is not offered for testimony and cross-examination.'" (citation omitted)).

The Court turns to the Defendants' final argument on the reliability of Andrews's methodology. This argument is facially invalid. The Defendants argue that, because Hagen's model is more well-thought out than any investigation conducted by Andrews, Andrews's rebuttal opinion is necessarily unreliable. (*See* Br. in Supp. of Defs.' Mot. to Exclude, at 19-21). This is not an issue for the Court to decide. As already discussed, "a district court may not exclude an expert because it believes one expert is more persuasive than another expert." *Rink*, 400 F.3d at 1293 n.7. Thus, the Court will not exclude any of Andrews's rebuttal opinions to Hagen.[1]

---

[1] The Defendants also make an argument, in a footnote, for exclusion of certain parts of Andrews's testimony for failure to disclose all of the information Andrews has considered throughout the making of his reports. (Br. in Supp. of Defs.' Mot. to Exclude, at 21 n.3). The Eleventh Circuit has made it clear that a court has discretion not to consider arguments made by a party in

20

### 2. Davis's Alternative Sources of PFAS Chemicals

Davis's expert report purports to demonstrate that there are alternative sources of PFAS chemicals within the Raccoon Creek watershed. (*See* Br. in Supp. of Defs.' Mot. to Exclude, Ex. 18 ("Davis Expert Report"), at 4 [Doc. 893-20]). In rebuttal, Andrews takes issue with the premise that no undocumented biosolids were present in the Raccoon Creek watershed. (*See* Andrews Rebuttal Expert Report, at 25-26).

The Defendants wish to exclude Andrews's rebuttal testimony on this topic, arguing that he failed to provide his reasoning for rejecting alternative hypotheses. (*See* Br. in Supp. of Defs.' Mot. to Exclude s, at 22-24). The Court disagrees. Andrews provides his foundation for why he rejected Davis's conclusions through several paragraphs. (*See* Andrews Rebuttal Expert Report, at 25-26). All the Defendants' arguments to this point simply restate Davis's opinions in a legal form. The fact that the Defendants prefer Davis's opinions over Andrews's opinions is not sufficient reason to remove the issue of credibility from the trier of fact. *See Rink*, 400 F.3d at 1293 n.7. Accordingly, the Court will not exclude any of Andrews's rebuttal opinions against Davis.

### IV.    Conclusion

For the foregoing reasons, the Defendants' Motion to Exclude Certain Opinions of Charles Andrews [Doc. 893] is DENIED.

---

passing. *See, e.g., Nat'l Mining Assoc. v. United Steel Workers*, 985 F.3d 1309, 1326 n.15 (11th Cir. 2021). The Court exercises this discretion here and will not consider such an argument made by footnote.

SO ORDERED, this  30th  day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge