IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

EARL PARRIS, JR.
Individually, and on behalf of a Class of
persons similarly situated,

    Plaintiff,

      v.

                                  CIVIL ACTION FILE
                                  NO. 4:21-CV-40-TWT

3M COMPANY, et al.,

    Defendants.

### OPINION AND ORDER

This is an action under the Clean Water Act. It is before the Court on Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff the City of Summerville's (collectively, "the Plaintiffs") Motion to Exclude the Expert Testimony of Stephanie Benight [Doc. 869]. For the following reasons, GRANTS in part and DENIES in part Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff the City of Summerville's Motion to Exclude the Expert Testimony of Stephanie Benight [Doc. 869].

### I.   Background

This case arises out of the contamination of surface waters and drinking water in Chattooga County, Georgia, with per- and polyfluoroalkyl substances known as "PFAS." (2d Am. Compl. ¶ 1 [Doc. 280].) The facts of this case are well known to the parties by this point, so the Court will not belabor them here. In essence, Plaintiff Earl Parris, Jr., alleges that the Defendants have

contaminated his city's water supply and thus his household water with PFAS. Parris is a resident of Summerville, Georgia, who receives running, potable water to his home from the Summerville Public Works and Utilities Department. (*Id.* ¶ 21.) The City of Summerville, which has intervened in this case, uses Raccoon Creek as the main source of its municipal water supply. (*Id.*) The Defendants are the following companies, which allegedly manufactured and supplied the PFAS discharged into Raccoon Creek: 3M Company ("3M"), Daikin America, Inc., E.I. du Pont de Nemours and Company, and The Chemours Company. At present, the Plaintiffs move to exclude the testimony of expert witness Stephanie Benight.

## II.   Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under that rule, "expert testimony is admissible if (1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (citation modified). Courts perform a "gatekeeping role" in excluding expert testimony that does not satisfy these qualification, reliability, and helpfulness requirements. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

2

"This gatekeeping role, however, is not intended to supplant the adversary system or the role of the jury" in determining the persuasiveness of an expert's testimony. *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citation modified). Rather, the goal is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "The proponent of the expert testimony always bears the burden" of establishing qualification, reliability, and helpfulness. *Id.* (citation modified).

### III.    Discussion

Stephanie Benight holds a Ph.D. in chemistry and nanotechnology and "ha[s] been practicing and conducting research in the field of chemistry and materials for 20 years." (Pls.' Mot. to Exclude Benight, Ex. 1 ("Benight Report"), [1] at 8 [Doc. 870-1].) Her research focuses on "polymers, other macromolecules, small molecules, and the characterization of material properties" and has included projects on the "determination of whether PFAS compounds are present in consumer products" and the "degradation of polymers, macromolecules, and small molecules." (*Id.*) A portion of her recent research "has involved investigating photopolymer resins" and "close

---

[1] The pagination of this exhibit reflects the PDF pagination.

collaboration with chemical companies to tune their formulations for desirable end properties." (*Id.*)

Benight's expert report rebuts the expert report of Plaintiffs' expert Erica DiFilippo, a hydrologist with expertise in the "fate and transport of organic and inorganic chemicals in the environment." (Pls.' Mot. to Exclude Benight, Ex. 4,[2] at 8 [Doc. 870-4].) As relevant here, DiFilippo opines on the transport and fate of PFAS, from their presence in a textile mill's polymer-based products to their presence in the Town of Trion's wastewater treatment facility and finally Raccoon Creek. (*Id.* at 10.) Benight's report rebuts DiFilippo's report in two chief respects. First, Benight opines that DiFilippo's half-life estimates for side-chain fluorinated polymers are unreliable because they rely on studies performed in controlled laboratory settings and do not account other factors that "affect the rate and scale of degradation." (Benight Report, at 11–12.) Second, Benight opines that DiFilippo's opinions regarding "ongoing degradation of PFAS-containing polymers" are unfounded because they rely on 2020 sampling data from the Town of Trion's Water Pollution Control Plant but not data from other locations or points in time. (*Id.* at 12.)

The Plaintiffs primarily challenge Benight's qualifications and the reliability of her methodology. The Court discusses each below.

---

[2] The pagination of this exhibit reflects the PDF pagination.

4

## A. Qualifications

Rule 702 provides that a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. When assessing a witness's qualifications, the district court must focus on "the matter to which the expert seeks to testify—i.e., 'to the task at hand.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 854 (11th Cir. 2021) (quoting *Daubert*, 509 U.S. at 597). While a witness may be "well-trained, highly educated, and experienced" with an "impressive professional track record," Rule 702 contemplates "a more thorough analysis of whether [the witness] is qualified and competent to testify as an expert *as to the subject matter of his proposed testimony*." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp. 2d 1308, 1315–16 (N.D. Ga. 2002) (emphasis added). "It is for that reason that 'expertise in one field does not qualify a witness to testify about others.'" *Moore*, 995 F.3d at 854 (quoting *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014)). The question whether a proposed witness is qualified to testify as an expert rests within the district court's discretion. *Jack*, 239 F. Supp. 2d at 1314 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).

The Plaintiffs acknowledge that Benight is a highly educated individual with expertise in manufacturing and plastic materials but contend that she has no qualifications to offer "highly specific" opinions on the degradation of

5

PFAS in the environment—the "main subject matter" of her testimony. (Pls.' Mot. to Exclude Benight, at 4–5 [Doc. 869].) They point out that the polymers Benight has studied (e.g., 3-D printed polymer dental appliances, polymer mesh for the pelvis) are "completely different" from the polymers in this case that allegedly degrade into PFAS. (*Id.* at 5.) According to the Plaintiffs, Benight's "only PFAS experience . . . is her engagement with the 3M Company for undisclosed litigation matters and one instance in which she was retained by an unnamed client to contract with a laboratory to test food packaging for total organic fluorine." (*Id.* at 4–5.) Due to this limited experience, the Plaintiffs claim that Benight is not qualified to identify factors that DiFilippo's degradation opinions missed, such as the environmental conditions in Raccoon Creek, the particular processes used at the textile mill and wastewater treatment plant, the amount of PFAS from the textile mill compared to other sources, and other issues affecting the integrity and relevance of certain data samples. (*Id.* at 11–14.)

This case presents a close call. Benight's report primarily takes the form of summarizing relevant processes, citing studies identifying various factors that could affect PFAS degradation in the environment, citing DiFilippo's deposition testimony in which she disclaims having analyzed those factors, and asserting that those omissions render DiFilippo's opinions unreliable. While Benight has expertise in polymer chemistry, the Plaintiffs are correct that

Benight has no prior experience analyzing the degradation of PFAS in the environment—despite attempting to analyze the topic for the entirety of her report—and very little experience with PFAS at all. A witness cannot qualify "as an expert in an entirely different field or discipline" merely by "reading and preparation." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citation modified).

That being said, the Court ultimately holds that Benight is qualified to testify about the matters discussed in her report, with two exceptions noted further below. The qualification standard is liberal. *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006); *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citation modified) (describing the standard as "not stringent"). "So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Clena*, 280 F.R.D. at 661; *Leathers*, 233 F.R.D. at 692 ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony not its admissibility.").

Benight has shown that she is at least "minimally qualified" to offer her present opinions in this case. According to Rule 702, a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Here, Benight has a background in polymer chemistry and has previously studied the degradation of certain polymers in the human body.

(*See* Benight Report, at 8–9; *see also* Def.'s Resp. Br. in Opp'n to Pls.' Mot. to Exclude Benight, Ex. 1 ("Def.'s Benight Dep. Excerpts"), at 39:11–13 [Doc. 977-1] ("I have looked a lot at the degradation of different polymers and material characterization and properties.").) This background enables Benight to understand the chemical compositions, properties, analytical tools, and degradation pathways of the specific polymers studied in DiFilippo's report and the scientific literature on which she relies. *See Trilink*, 583 F. Supp. 2d at 1304 (citations omitted). In this sense, her polymer chemistry and degradation background is not "an entirely different field or discipline" from the field in which Benight opines, though the Court acknowledges that the degradation of polymers in the environment will differ from that in the human body. Contrary to the Plaintiffs' position, (*see* Reply Br. in Supp. of Pls.' Mot. to Exclude, at 7 [Doc. 1007]), it is not as if Benight is any generally trained scientist or chemist seeking to opine on PFAS degradation. And as another court in this district noted:

> [A]n expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case. Indeed, an expert with 'the education or background to permit him to analyze a given set of circumstances can through reading, calculations, and reasoning from known scientific principles make himself very much an expert in regard to the particular product even though he has not had actual experience' with the product.

*Trilink Saw Chain, LLC*, 583 F. Supp. 2d at 1304. (citations omitted). Such is the case here. *But see United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999)

8

("[The expert's] skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles.").

The Court is satisfied that Benight is minimally familiar with PFAS as well. Her report appears to demonstrate a competent understanding of PFAS in the environment, and she has testified as to a few other prior experiences with PFAS. Specifically, she testified that she (1) previously undertook a project to assess whether PFAS compounds were present in food packaging, (2) occasionally advises clients on whether their compounds may be classified as PFAS and on other PFAS "disposal and safety" issues, and (3) has been retained on "a few other" unspecified PFAS litigation matters on behalf of 3M. (Def.'s Benight Dep. Excerpts, at 35:11–15, 38:4–39:2, 51:2–20, 62:6–63:24, 91:8–17.) The Court stresses that this experience is limited, but it is minimally sufficient in this case. *See Trilink*, 583 F. Supp. at 1304 ("[C]ourts have excluded expert testimony that might implicate the expert's field or discipline if the expert has no specific experience or background with the topic in dispute and has not satisfied the court that he has obtained expertise in regard to the topic in preparation for litigation.").

Lastly, regarding Benight's discussion of literature on water treatment, data sampling, and textile processing, the Court agrees with the Plaintiffs that some of Benight's opinions are inadmissible on qualification grounds. As an

9

initial matter, the Court agrees with the Defendants that her opinions are admissible to the extent she references literature on these topics to identify various factors that may affect the polymer degradation process but which DiFilippo did not analyze. The Court described her qualifications for doing so above.

However, the Court agrees with the Plaintiffs that Benight's opinions are inadmissible to the extent she attempts to apply specific literature on water treatment and data sampling to (1) identify the water treatment processes used by Trion's wastewater treatment plant and opine that they are distinct from traditional processes, (Benight Report, at 96)[3], and (2) identify the techniques used by the firm GEL Engineering, LLC ("GEL") to collect surface water, groundwater, soil, and sediment samples and opine that proper techniques in this case were not used, (*id.* at 109–12).[4] These two opinions extend beyond the reach of Benight's qualifications and cannot be fairly characterized as merely identifying factors addressed in the literature that affect polymer degradation. Benight's background as a chemist who has

---

[3] For example, Benight specifically opined—without apparent citation—that the Trion wastewater treatment plant uses "a unique process that perhaps is not analogous to other WWTP that treat household water, given the industrial waste coming in from Mt. Vernon Mills." (Benight Report, at 97.)

[4] After offering an initial summary of GEL's techniques, Benight opined that "[i]t is not clear an EPA method was adhered to or used as a guideline for the Enthalpy report results that Dr. DiFilippo relies on." (Benight Report, at 110.)

10

generally "work[ed] with samples collected by others" is no defense here, where specific environmental sampling techniques were employed. (*But see* Def.'s Resp. Br. in Opp'n to Pls.' Mot. to Exclude Benight, at 16 [Doc. 953] ("Chemists like Dr. Benight primarily work with samples collected by others. The fact that she has not independently collected samples is immaterial to her credentials to rebut Dr. DiFilippo's degradation opinion.").) Regarding Benight's opinions concerning textile processing, the Court agrees that Benight has not opined on matters that exceed her qualifications, as she merely identifies different factors that may impact degradation. (*See* Benight Report, at 118.)

## B. Reliability

In determining whether an expert witness's testimony is reliable under Rule 702, the Court must evaluate "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. *Daubert* sets forth a number of factors relevant to this inquiry, including (1) whether an expert's theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a scientific technique; and (4) whether a known technique has achieved widespread acceptance in the scientific community. *Id.* at 593–94. These factors are not intended to be a "definitive checklist," *id.* at 593; rather, "the law grants the trial judge broad

latitude to determine . . . whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *Kumho Tire Co., Ltd.*, 526 U.S. at 153. Ultimately, the district court's objective under *Daubert* is to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. To this end, a district court may not admit opinions that "[are] connected to existing data only by the *ipse dixit* of the expert" or leave "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Plaintiffs advance three primary reliability arguments. First, they argue that Benight did not provide a methodology because, among other things, she did not "say how she determined whether Dr. DiFilippo's methodology was reliable, how she reviewed the literature cited by Dr. DiFilippo, what research she performed, or how, if at all, that research supported her own opinions." (Pls.' Mot. to Exclude Benight, at 16.) Second, they cite Benight's deposition testimony to argue that she admitted she did not review all the materials on which she purported to rely in her expert report. (*Id.* at 19–20.) Third, they claim that Benight's opinions are speculative and thus unreliable because she attempted to identify potential sources of PFAS in the environment without sufficient support showing that those potential sources were relevant in this case. (*See id.* at 21–23.)

12

The Plaintiffs are grasping at straws here. First, Benight sufficiently explains the methodology behind her report. Her report states that she reviewed peer-reviewed literature, 3M documents, DiFilippo's expert report, and the materials on which DiFilippo relied. (Benight Report, at 11.) Throughout her report, she cites the literature she relies upon and adequately explains for *Daubert* purposes why it supports her opinions that there are a variety of degradation factors that DiFilippo did not evaluate. The Plaintiffs are free to poke holes in Benight's analysis on cross-examination to the extent they believe Benight's opinions are unsupported. Second, the Court agrees with the Defendants that the Plaintiffs misconstrue Benight's deposition testimony in which she states she did not recall certain manufacturing documents; she has adequately testified as to the materials on which she relied. (*See* Def.'s Resp. Br. in Opp'n to Pls.' Mot. to Exclude Benight, at 23.) Third, Benight's report is not unreliable merely because she has identified possible sources of PFAS other than the PFAS alleged to belong to the Defendants. DiFilippo opines that the PFAS in Raccoon Creek originated from the Defendants' polymers, and Benight attempts to weaken this argument in rebuttal by identifying other sources of PFAS that DiFilippo supposedly did not consider. She need not prove more. For these reasons, the Court denies the Plaintiffs' Motion to Exclude Benight's testimony on reliability grounds.

13

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff Earl Parris, Jr., and Intervenor-Plaintiff the City of Summerville's Motion to Exclude the Expert Testimony of Stephanie Benight [Doc. 869]. The Motion is granted as to Stephanie Benight's application of literature on water treatment and data sampling to (1) identify the water treatment processes used by Trion's wastewater treatment plant and opine that they are distinct from traditional processes and (2) identify the techniques used by the firm GEL Engineering, LLC to collect surface water, groundwater, soil, and sediment samples and opine that proper techniques in this case were not used. The Motion is denied as to all other relief requested therein.

SO ORDERED, this ___30th___ day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge

14